# EXHIBIT P

**Report of Susan E. Tittl**

*Picatinny Federal Credit Union v. Federal National Mortgage Association*,
**Civil Action No.  09-1295**

## I. Background and Experience

I, Susan E. Tittl, am a Supervisor/Vice President at Branch Banking & Trust Company ("BB&T") and the head of BB&T's Document Custody Department which is located in Charlotte North Carolina. I have worked in the field of document custody for eighteen years and have been the head of BB&T's Document Custody Department since 1998. For the purposes of this report, all references to BB&T refer to BB&T's Document Custody Department, unless otherwise indicated.

The Document Custody Department of BB&T is responsible for certifying loans for purchase by clients including the Federal Home Loan Mortgage Corporation ("Freddie Mac"), the Federal National Mortgage Association ("Fannie Mae"), and the Government National Association ("Ginnie Mae"). Freddie Mac, Fannie Mae, and Ginnie Mae are collectively referred to as the "Agencies." My specific responsibilities have included, among other things, initial and/or final certification of loan files, review of trailing documentation, release and reinstatement of loan files, writing and updating department review procedures, and serving as the contact person for agency and client audits.

I have been a member of Freddie Mac's Custodian Advisory Committee since March 2006. The committee, which meets via conference call on a quarterly basis, includes document custodians from a variety of seller/servicers including ReconTrust Company, MetLife Home Loans, Ally Bank, PNC Bank, CitiMortgage, US Bank, Flagstar Bank, Fifth Third Bank, and Wells Fargo. The purpose of the committee is to discuss Freddie Mac's document custody practices. In the course of its work the committee has also discussed developments, practices and policies pertaining to the document custodian industry generally. I also stay apprised of industry policies and procedures through BB&T's subscription to AllRegs, which provides e-mail alerts whenever one of the Agencies updates or changes its policies or procedures.

Freddie Mac, Fannie Mae and Ginnie Mae each audit BB&T's Document Custody Department on an annual basis to assess BB&T's compliance with the respective agency's document certification policies and procedures. BB&T has never failed an agency audit, further confirming my familiarity and expertise with the standard customs, practices and policies applicable in the document custodian industry.

A copy of my Curriculum Vitae is attached as Exhibit A

## II. Opinions

I have been asked by Latham & Watkins, LLP, counsel for Federal National Mortgage Association ("Fannie Mae"), to analyze whether Picatinny Federal Credit Union's ("Picatinny") document custody practices with respect to original notes that it owned were consistent with industry customs and standards. I have also been asked to analyze whether Fannie Mae's mortgage note certification polices and procedures adhere to the industry customs and standards. I am being compensated at an hourly rate of $200.00.

1

In conducting my analysis, the following documents informed my opinions in this matter: Fannie Mae's, Freddie Mac's, and Ginnie Mae's Document Custody and Certification Policy and Procedures; the transcript of the February 12, 2010 deposition of William Darling; and the following examples of Picatinny disputed notes: FNMA-USM000000948, FNMA-USM000000605, FNMA-USM000000612, FNMA-USM000000619, FNMA-USM000000626, FNMA-USM000000633, FNMA-USM000000640, FNMA-USM000000647, FNMA-USM000000654, and FNMA-USM000000662.

Based on my analysis, I conclude that Picatinny's document custody practices fell far below the industry standards. I further conclude that Fannie Mae's mortgage note certification policies and procedures are consistent with, and adhere to, the industry custom and standard.

### A.  Opinions Relating to Picatinny Document Custody Practices

Because original mortgage notes are negotiable instruments, it is standard custom and practice in the industry for note owners to require document custodians to adhere to certain minimum standards, or safeguards, including the following:

1.  Original Loan Documents (the note, any allonges and modifications) are maintained by the owner of those notes or by a third-party document custodian;

2.  If maintained by a document custodian, the maintenance of original loan documents is governed by a written contract (separate and apart from any contract relating to the servicing of the mortgage, if the company providing document custodian services also provides mortgage servicing functions);

3.  Loan documents are housed in fire resistant safes, filing cabinets, or vaults;

4.  Access to the loan documents is restricted, often with dual access controls (i.e., key card access and only a limited number of authorized personnel are permitted access to the loan documents); and

5.  Document custodians are required to purchase annually and maintain insurance such as an errors and omissions policy and a financial institution bond.

It is my understanding that Picatinny permitted its mortgage loan servicer, CU National, to hold Picatinny's original mortgage notes but failed to require CU National to adhere to any of the above safeguards that are common practice in the industry. It is my understanding, for example, that Picatinny allowed CU National to retain the original mortgage notes after closing, rather then returning the original mortgage notes to Picatinny or sending them to a designated third-party document custodian. Nor did Picatinny require CU National to maintain the original mortgage note under a separate contractual custodial agreement (or compensate CU National for providing document custodian services). To the contrary, Picatinny did not enter into, and did not require, any written custodial agreement with CU National as a condition of allowing CU National to hold Picatinny's original mortgage notes. Further, is my understanding that Picatinny

did not require CU National to maintain a financial institution bond or other similar insurance to protect Picatinny's original notes. It is also my understanding that there was no separation between the storage of original notes at CU National and the servicing division of CU National that serviced Picatinny's loans. *See* (W. Darling dep. tr. at 185-186). Finally, it is my understanding that CU National also did not limit access to Picatinny's original notes by keeping the original notes in a locked vault or in a similar safekeeping device.

In my opinion, Picatinny's failure to require CU National to adhere to or implement the above-mentioned safeguards as a prerequisite to holding Picatinny's original mortgage notes fell far below industry standards. The safeguards serve to protect against losses that may occur due to physical theft, loss, or destruction of the mortgage notes, including to prevent against a fraudulent scheme such as the one perpetrated by CU National against Picatinny. If Picatinny or a separate document custodian had maintained Picatinny's original mortgage notes in accordance with industry standards, CU National would have been required to ask for the original note before selling it to Fannie Mae, which would have alerted Picatinny or the custodian to the sale. (Alternatively, if unable to obtain the original note, the entity tasked with certifying the loan in order to complete the sale – whether BB&T, Fannie Mae, Freddie Mac, or another purchaser or certifier – would not certify it and would fail the loan due to the lack of original documentation.)

It is standard custom and practice in the industry for mortgage note owners to maintain original loan documents (the note, allonges, and modifications) themselves or have them maintained by a third-party custodian (pursuant to a written document custodial contract setting forth specific criteria the document custodian must adhere to) such as BB&T's Document Custody Department. Furthermore, pursuant to standard custom practice in the industry, in the event that a servicer also provides formal document custody services, those services are segregated from the servicing function, and the original notes are maintained separately from the loan files, under the control of different personnel. With respect to BB&T for example, the origination and servicing departments are separate from the document custody department and maintain separate employees and independent computer systems. Specifically, the servicing department for BB&T is located in Greenville South Carolina while the Document Custody Department is located in Charlotte, North Carolina. In any event, industry standards do not require (or, in my experience, even permit) the servicer to maintain the original note in the loan servicing file. In fact, in the mortgage industry there are only three primary reasons for the owner of an original note to provide the original note to a third-party: (1) to deliver the notes to the loan servicer on a loan that is in foreclosure or has been paid off, so that the servicer can complete the satisfaction process, (2) to give the note to a formal custodian of documents for storage and safekeeping, or (3) to deliver the original notes to a purchaser in connection with a sale.

**B. Opinions Relating to Fannie Mae's Document Certification Practices**

Fannie Mae's document certification policies and procedures are generally consistent with Freddie Mac's and Ginnie Mae's document certification policies and procedures. I am

aware of this because BB&T's Document Custody Department is an approved Fannie Mae, Freddie Mac and Ginnie Mae custodian. The Agencies are the largest purchasers of mortgage loans in the United States. Consequently, as a practical matter, their document certification policies and procedures set the standard for custom and practice in the industry.

### 1. Industry Custom and Practice Relating to Mortgage Note Certification

BB&T's Document Custody Department employs nine people (including myself) and maintains approximately 450,000 loan files for twelve clients, including BB&T. 64% of the loan files are owned by Freddie Mac, 16% are owned by Ginnie Mae, 11% are private loans, and the remaining 9% are owned by Fannie Mae.

BB&T's Document Custody Department maintains departmental and certification procedures that are intended to encapsulate all the requirements of the Agencies. Procedures are reviewed quarterly by me, as supervisor, and updated as needed. In addition to loan certification, the BB&T Document Custody Department provides services such as loan inventory, loan tracking and loan safekeeping to private investors and to issuers selling mortgage loans to the Agencies.[1]

In the course of its business as a document custodian, BB&T regularly reviews mortgage notes for purposes of certification. BB&T performs mortgage note certification on approximately 9,000 mortgage notes monthly. BB&T's certification procedures, which are based on the Agencies' certification procedures, are consistent with accepted procedures in the industry. In my four years of service on the Freddie Mac Custodian Advisory Committee, I have not become aware of any document custodian with certification procedures that differ significantly with those of the Agencies or BB&T.

When BB&T certifies notes for purchase, regardless of whether the notes are being sold to Fannie Mae, Freddie Mac, or Ginnie Mae, BB&T reviews the notes to confirm that it (1) is an original signed note; and (2) includes the complete endorsement chain (meaning there is no open gap in the chain of title) on the original note or on allonges appended to the note. In general, the Document Custody Department reviews the notes for the following:

- Tag lines (the line at the bottom of the note which indicates that the form is an approved Fannie Mae, Freddie Mac, or Ginnie Mae form);
- Borrower initials;
- Borrower signature - does not contradict printed name underneath;
- Intervening endorsement (if required) is original, endorsed from original lender to the next, signed, contains the printed name and title of the signer, and the printed name of the company endorsing the note;

---

[1] Loan inventory is the verification of documentation maintained within the note file. Loan tracking is the electronic tracking of the receipt and/or release of documents or files, the tracking of the physical location of documents or files and the ability to provide reporting. Loan safekeeping is ensuring the safety and security of loan documents by storing note files in a secure, fire-resistant storage facility.

- Final endorsement is original, endorsed to "blank," signed, contains the printed name and title of the signer, and the printed name of the company endorsing the note.

As the mortgage note certifier BB&T is not responsible for verifying whether the signatory who executed the intervening endorsement is authorized to do so. Pursuant to industry custom and practice, a mortgage note certifier is only required to confirm that the signature(s) appearing on the note and any endorsements are present and are original (i.e., not photocopied). In my eighteen years of practice in the industry and in my four years of service on the Freddie Mac Document Custody Review Board, I have never heard or learned of any entity that requires a mortgage note certifier to verify whether the signatory of an intervening endorsement had the authority to do so. BB&T's Document Custody Department does not maintain a list of authorized signatories for correspondent lenders. Maintaining a list or calling each correspondent to verify signatories is not possible because BB&T does business with several hundred correspondent lenders.

It is my understanding that Picatinny has claimed that Fannie Mae should have known that certain Picatinny notes were not authorized to be sold because they were signed by Michael McGrath as AVP of Picatinny and not by a Picatinny employee. Picatinny contends that Fannie Mae should have verified whether Michael McGrath had the authority to execute certain endorsements on behalf of Picatinny. Fannie Mae is not unique in the fact that it does not require verification of a signatory's authority to execute an intervening endorsement. Neither Freddie Mac nor Ginnie Mae have such a requirement. I am not aware of any entity providing mortgage note certification services that verifies whether a signatory to an intervening endorsement has authority to do so.

Once the note is verified BB&T reviews it to ensure the characteristics of the note match the electronic data that was submitted as part of the sale. The electronic data is compared with the note to confirm that the following items are consistent:

- Note date
- Property Address
- Original Loan amount
- Original Lender
- Interest rate
- Principal & Interest
- First and final payment dates

## 2. Opinion Concerning Disputed Notes

I have reviewed several notes[2] provided to me by Latham & Watkins that I understand

---

[2] Latham & Watkins also informed me that I was free to review, and that it would make available to me upon request, all of Picatinny's disputed loans. Based on my review of the sample provided to me and my understanding that the remaining notes did not bear any distinct differences, I determined that there was no benefit in my reviewing the remainder of the disputed loans.

5

are "disputed loans." *See* Section II, p. 2. These loans were sold by U.S. Mortgage, on behalf of Picatinny and various other credit unions, to Fannie Mae. Each note contained an intervening endorsement signed by Michael McGrath as AVP of Picatinny or as AVP of one of the various other credit unions and an endorsement to "blank," signed by an officer of U.S. Mortgage. Using the certification procedures that BB&T employs, BB&T would have certified each of the loans shown, regardless of the Agency purchasing the loan. The fact that Mr. McGrath signed on behalf of multiple credit unions would not have raised a red flag. Because of the large number of loans that BB&T certifies, BB&T checks only for the existence of a name and signature on an intervening endorsement. BB&T does not scrutinize or question the name appearing on an intervening endorsement. Furthermore, I would not have found it troubling even if I had noticed that Mr. McGrath had signed multiple endorsements as AVP of Picatinny (or any other credit union). In my experience, it is not uncommon that an agent of a mortgage lender would be designated in order to sign intervening endorsements.

The opinions provided within this report are based on my experience in the industry, knowledge of industry standards and of the written guidelines of Freddie Mac, Fannie Mae, and Ginnie Mae.

I reserve the right to modify, amend or supplement this report in the event that new or additional information becomes available to me.

Susan E. Tittl

Dated: November 8, 2010

6

# *Exhibit A*

# *SUSAN E. TITTL*

6345 Royal Pines Drive

Clover, SC 29710

## WORK EXPERIENCE:

### *BRANCH BANKING & TRUST COMPANY* - (January 2007 - Present)

Document Custodian Supervisor/Vice President - Responsible for the everyday operation of the Document Custodian Department. Coordinate with multiple Issuers to ensure they conform to Agency guidelines. Coordinate the work flow to ensure the proper completion within the set time frame. Attend seminars and workshops, as able, to stay up to date on the latest changes in the Document Custodial field. The on-site supervisor who supervises the Document Custodian Department is familiar with all GNMA, FNMA, FHLMC, and FHLB guidelines as well as the guidelines established by BB&T, and any guidelines submitted by an issuer of private mortgages. The on-site supervisor is responsible for the hiring and letting go of employees, scheduling and verification of work hours, and preparing a personal development plan on a six and twelve month basis.

### *BRANCH BANKING & TRUST COMPANY* - (April 2004 – January 2007)

Document Custodian Supervisor/Assistant Vice President - Responsible for the everyday operation of the Document Custodian Department. Coordinate with multiple Issuers to ensure they conform to Agency guidelines. Coordinate the work flow to ensure the proper completion within the set time frame. Attend seminars and workshops, as able, to stay up to date on the latest changes in the Document Custodial field. The on-site supervisor who supervises the Document Custodian Department is familiar with all GNMA, FNMA, FHLMC, and FHLB guidelines as well as the guidelines established by BB&T, and any guidelines submitted by an issuer of private mortgages. The on-site supervisor is responsible for the hiring and letting go of employees, scheduling and verification of work hours, and preparing a personal development plan on a six and twelve month basis.

*BRANCH BANKING & TRUST COMPANY* - (September 1998 – April 2004)

Document Custodian Supervisor/Trust Officer - Responsible for the everyday operation of the Document Custodian Department. Coordinate with multiple Issuers to ensure they conform to Agency guidelines. Coordinate the work flow to ensure the proper completion within the set time frame. Attend seminars and workshops, as able, to stay up to date on the latest changes in the Document Custodial field. The on-site supervisor who supervises the Document Custodian Department is familiar with all GNMA, FNMA, and FHLMC guidelines as well as the guidelines established by BB&T, and any guidelines submitted by an issuer of private mortgages.

*BRANCH BANKING & TRUST COMPANY* - (November 1996 - September 1998)

Administrative Assistant for the Vice President/Manager of the Mortgage Custody Department - Administrative Assistant provided support to the Manager of the department by performing general administrative duties with minimal guidance such as billing, answering the phones, and distributing to internal and external clients reports and memos on a timely basis. Aside from the duties of Administrative Assistant, I was also responsible for completing the duties of a Document Custodian.

*BRANCH BANKING & TRUST COMPANY* - (November 1992 - November 1996)

Document Custodian - Receives original documents pertaining to GNMA, FNMA, FMAC, and Private pooled loans. Determines and certifies that all documents satisfy GNMA, FNMA, FHLMC, and Private Loan guidelines. Completes initial, final, and re-certifications in a timely manner. Releases documents in accordance with regulations. Maintains a thorough knowledge of GNMA, FNMA, FHLMC, and Private Loan guidelines.

*BUSINESS CARDS TOMORROW* - (October 1988 - February 1992)

Paste Up Artist - responsible for proof reading and adding any required artwork to layout being prepared for printing. Also responsible for various office duties such as filing, answering the phone, and inventory.

*FRANKLIN'S PRINTING & OFFICE SUPPLIES* - (October 1987 - October 1988)

Part time Paste Up Artist - responsible for proof reading and adding any required artwork to a layout being prepared for printing. Also responsible for various office duties such as filing, answering the phone, and annual inventory.

8

## EDUCATION:

Basic Telephone Skills, Beginning Windows, Interim Excel 4.0, Intro. to Excel, Intro. to Word, Kaset Training, Leadership 1, Leadership 2, Managing Diversity, Managing Interpersonal Relationships, Personal Perception & Productivity, Power Point 3.0, TQM, Time Management, and Windows 95 - all were classes offered through BB&T University

Central Piedmont Community College - 1 year of a 2 year Graphic Arts Management course

West Mecklenburg High School

## REFERENCES:

Available upon request

### CONTACT INFORMATION:

I can be reached by phone at the numbers listed below.

704-747-1118 (cell)

803-831-1315 (home)

704-954-1852 (office)

Or by e-mail at the e-mail address listed below.

susanetittl@yahoo.com (home)

susan.tittl@bbandt.com (work)

9