| | |
|---|---|
| PICATINNY FEDERAL CREDIT UNION,<br><br>    Plaintiff,<br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>    Defendant. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>Hon. Garrett E. Brown<br><br>Consolidated Civil Action<br>No. 09-01295 (GEB) |
| SPERRY ASSOCIATES FEDERAL CREDIT UNION,<br><br>    Plaintiff,<br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>    Defendant. | AFFIDAVIT OF BILL DARLING IN SUPPORT OF MOTION OF PLAINTIFF PICATINNY FEDERAL CREDIT UNION FOR PARTIAL SUMMARY JUDGMENT |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>    Plaintiff,<br>v.<br><br>PROPONENT FEDERAL CREDIT UNION,<br><br>    Defendant. | |
| SUFFOLK FEDERAL CREDIT UNION,<br><br>    Plaintiff,<br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>    Defendant. | |

{00644333.DOC}

STATE OF NEW JERSEY )
                    ) ss.:
COUNTY OF MORRIS    )

BILL DARLING, of full age, being duly sworn according to law, upon his oath deposes and says:

1. I am the Chief Executive Officer of plaintiff Picatinny Federal Credit Union ("Picatinny") and submit this Affidavit in support of Picatinny's motion for partial summary judgment in this matter. I have personal knowledge of some of the matters set forth herein and, as to those matters of which I do not have personal knowledge, I have obtained the information from documents, data and other records that Picatinny maintains in the regular course of its business activities and that it was Picatinny's regular practice to create.

2. Picatinny is a federally chartered credit union with total current assets of approximately $250 million. It was established in 1939 at Picatinny Arsenal in Morris County, New Jersey. Picatinny is headquartered in Dover, New Jersey and has three branches located in Dover, Mount Olive and at the Picatinny Arsenal. Its members consist of military and other personnel stationed and/or working at the Picatinny Arsenal, other residents of the Morris County area, and local businesses.

3. As a federally charter credit union, Picatinny is a not-for-profit, cooperative financial institution that is owned and run by its members. The members pool their funds together by purchasing Share Accounts, the proceeds of which are used to make loans to the members of Picatinny. The interest income from these loans is used to pay Picatinny's expenses and cover its capital reserve requirements with the remaining income returned to the members as dividends on their Share Accounts and other services provided by Picatinny.

{00644333.DOC}                                    2

4.       Unlike banks and other financial institutions, Picatinny is governed by a Board of Directors solely consisting of its members. Members of Picatinny's Board of Directors do not receive payment for their services; rather, they are volunteers who are elected to the Board by other members of the credit union.

5.       As of July 1, 1999, Picatinny and CU National entered into the Credit Union Support Services and Correspondent Lending Agreement (the "Agreement") under which CU National agreed to provide Loan Production Services, i.e., loan origination, and Loan Servicing to Picatinny. Under the Agreement, CU National provided loan services that were integral to Picatinny's residential mortgage lending program, including the performance of all duties necessary or incidental to the servicing of all first mortgage loans on behalf of Picatinny. (Agreement, at p. 13). These services included the collection of payments of principal, interest, prepayments, escrows and any related charges from Picatinny loan customers and the remittance of those payments to Picatinny after CU National deducted its servicing fees. A copy of the Agreement is attached as Exhibit A.

6.       The National Credit Union Administration ("NCUA") is the entity that has federal oversight over federal credit unions such as Picatinny has conducted annual risk-focused examinations of Picatinny. During those examinations, NCUA was made aware by Picatinny that CU National was holding the original loan files and promissory notes for Picatinny. NCUA did not object to this practice.

7.       Under the Agreement, CU National agreed to assist Picatinny if it desired to sell its first mortgage loans to the secondary market. (Exhibit A, at 15). The Agreement, however, did not authorize CU National or its parent company, U.S. Mortgage, to indorse the promissory notes underlying Picatinny's mortgage loans or to execute assignments of mortgage,

or to sell any loans. CU National never had any authority to indorse Picatinny's promissory notes or execute assignments of mortgage.

8. In January 2009, Picatinny learned from sources other than CU National that CU National had sold certain Picatinny loans to Fannie Mae without Picatinny's knowledge or authorization, and did not remit the loan proceeds to Picatinny.

9. By letter dated January 30, 2009, Picatinny's counsel advised CU National that Picatinny had learned about the sale of Picatinny loans to Fannie Mae and demanded that CU National identify the specific Picatinny loans CU National had attempted to sell to Fannie Mae, make its books and records relating to such loans available for inspection, and immediately remit the January payment that was due to Picatinny under the Agreement. A copy of Picatinny's counsel's letter dated January 30, 2009 is attached as Exhibit B.

10. In an e-mail response dated February 9, 2009, a copy of which is attached as Exhibit C, CU National advised Picatinny that, because of unstated "issues," CU National could no longer effectively process loan applications for Picatinny and requested that Picatinny find an alternate service provider. Subsequently, in a February 12, 2009 letter attached as Exhibit D, U.S. Mortgage confirmed that it had sold at least forty Picatinny loans without Picatinny's authorization and that "a total of $9,491,133.85 in sales proceeds were diverted."

11. Picatinny then undertook its own investigation to determine the number of loans that U.S. Mortgage had sold without Picatinny's knowledge or authorization. Picatinny's initial investigation initially revealed that U.S. Mortgage may have unlawfully sold as many as 58 Picatinny mortgage loans totaling approximately $14.1 million. The 58 loans that Picatinny initially believed were stolen included the 52 loans that are the subject of Picatinny's Amended Complaint and six additional loans that Picatinny was unable to track because it was not

receiving cooperation from U.S Mortgage and CU National. These 58 loans are reflected on the spreadsheet that Picatinny prepared and Picatinny's counsel sent to Fannie Mae on February 18, 2009. A copy of Picatinny's counsel's e-mail enclosing the spreadsheet and the spreadsheet itself is attached as Exhibit F to the accompanying Affidavit of James H. Forte.

12. I have reviewed Mr. McGrath's signature on each of the allonges and assignments of mortgage underlying 51 of the 52 loans that are the subject of Picatinny's Amended Complaint (Fannie Mae has not produced the allonges and assignments of mortgage underlying a 52 loan that Picatinny made to a borrower named Bonte). I state unequivocally that Picatinny did not authorize Mr. McGrath, CU National or U.S. Mortgage to sign those allonges and assignments of mortgage, and that Mr. McGrath was not an "AVP" of Picatinny, officer or employee of Picatinny. Mr. McGrath signed these documents and sold these loans without Picatinny's knowledge and authorization, and without paying Picatinny the proceeds U.S. Mortgage obtained from the sale. The same hold true for the Bonte loan which Picatinny did not authorize anyone to sell and, if it were sold, it was done without Picatinny's knowledge or authority.

_____
BILL DARLING

Sworn and subscribed to before me
on this 14th day of December, 2010

_____
NOTARY PUBLIC

ROBYN ELIZABETH PAIVA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires March 7, 2012

{00644333.DOC}

5