# EXHIBIT 1

SAIBER LLC
One Gateway Center, 13th Floor
Newark, New Jersey 07102
(973) 622-3333
Attorneys for Plaintiff
Picatinny Federal Credit Union

| | |
|---|---|
| PICATINNY FEDERAL CREDIT UNION, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MORRIS COUNTY DOCKET NO. L-713-09 |
| Plaintiff, | Civil Action |
| v. | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | COMPLAINT AND JURY DEMAND |
| Defendant. | |

Plaintiff Picatinny Federal Credit Union ("Picatinny"), by way of Complaint against defendant Federal National Mortgage Association ("Fannie Mae"), says:

## SUMMARY OF ACTION

1.  This action arises from Fannie Mae's unlawful and unjustified refusal to return to Picatinny 58 mortgage loans totaling $14,104,384.18 that were fraudulently assigned to Fannie Mae, and to remit to Picatinny the payments that Fannie Mae and its loan servicer received from the borrowers.

2.  Fannie Mae came into possession of these loans through a massive fraud perpetrated upon Picatinny and Fannie Mae by Picatinny's former loan servicers, CU National Mortgage, LLC ("CU National") and U.S. Mortgage Corp. ("U.S. Mortgage"),

{00557565.DOC}

SAIBER LLC
One Gateway Center, 13th Floor
Newark, New Jersey 07102
(973) 622-3333
Attorneys for Plaintiff
Picatinny Federal Credit Union

| | |
|---|---|
| PICATINNY FEDERAL CREDIT UNION, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MORRIS COUNTY DOCKET NO. |
| Plaintiff, | Civil Action |
| v. | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | COMPLAINT AND JURY DEMAND |
| Defendant. | |

Plaintiff Picatinny Federal Credit Union

("Picatinny"), by way of Complaint against defendant Federal

National Mortgage Association ("Fannie Mae"), says:

## SUMMARY OF ACTION

1.    This action arises from Fannie Mae's unlawful and

unjustified refusal to return to Picatinny 58 mortgage loans

totaling $14,104,384.18 that were fraudulently assigned to

Fannie Mae, and to remit to Picatinny the payments that Fannie

Mae and its loan servicer received from the borrowers.

2.    Fannie Mae came into possession of these loans

through a massive fraud perpetrated upon Picatinny and Fannie

Mae by Picatinny's former loan servicers, CU National Mortgage,

LLC ("CU National") and U.S. Mortgage Corp. ("U.S. Mortgage"),

{00557565.DOC}

which sold and assigned these loans to Fannie Mae without Picatinny's knowledge or authorization and without paying the proceeds of the sale to Picatinny.  Picatinny's claims against CU National and U.S. Mortgage, among others, are the subject of the related action pending before this Court entitled Picatinny Federal Credit Union v. CU National, et al., Docket No. L-612-09.  Because CU National and U.S. Mortgage filed for Chapter 11 bankruptcy protection on February 23, 2009, Picatinny's claims against these entities are stayed.

   3.   CU National and U.S. Mortgage, among others, perpetrated this fraud by preparing and executing in favor of U.S. Mortgage an allonge to the Picatinny notes and assignments of the corresponding Picatinny mortgages.  U.S Mortgage then sold the notes and mortgages to Fannie Mae.  Michael J. McGrath, the President and Chief Executive Officer of U.S. Mortgage, executed the allonges and assignments from Picatinny to U.S. Mortgage, purportedly as an Assistant Vice President of Picatinny.  At no time was Mr. McGrath an Assistant Vice President of Picatinny or authorized to execute allonges or assignments on behalf of Picatinny.

   4.   CU National and U.S. Mortgage have admitted that they indorsed these allonges and executed these assignments of mortgages without Picatinny's knowledge or authorization.  They further have admitted that they concealed their fraud from

Picatinny by falsely representing to Picatinny that these 58 loans remained in Picatinny's loan portfolio when, in fact, they had purported to sell them to Fannie Mae.

5.   As a result of CU National's and U.S. Mortgage's admitted fraudulent acts, Picatinny has demanded that Fannie Mae return to Picatinny the notes and mortgages.  In its demand, Picatinny explained to Fannie Mae that, under well-settled law, Fannie Mae is not a holder of the notes because it received them over Picatinny's unauthorized indorsement and therefore is not entitled to obtain payment thereunder.  Without explanation, Fannie Mae has refused.

6.   As a result, Picatinny brings this action to obtain, *inter alia*, compensatory, consequential and punitive damages arising from Fannie Mae's continuing and wrongful exercise of dominion and control over Picatinny's property, *i.e.*, the notes and mortgages underlying the Picatinny loans that were assigned without Picatinny's authorization and all payments made in connection therewith, and a judgment declaring that Fannie Mae is not a holder of the notes underlying the Picatinny notes and, as a result, has no right to receive payment thereon.

## PARTIES

7.   Plaintiff Picatinny is a federal credit union organized under the laws of the United States and maintains a

{00557565.DOC}                          3

principal place of business at 100 Mineral Springs Road, Dover, New Jersey. Picatinny was established in 1939 at Picatinny Arsenal in Dover, New Jersey and currently has 15,659 members.

8.   Defendant Fannie Mae is a government-sponsored enterprise chartered by Congress in 1968 as a private shareholder owned corporation. Its mission is to provide liquidity and stability to the U.S. housing and mortgage markets. It maintains its principal place of business at 3900 Wisconsin Avenue, N.W., Washington, DC.

<div align="center"><strong>FACTUAL BACKGROUND</strong></div>

**CU National's Loan Servicing Obligations**

9.   Effective July 1, 1999, Picatinny and CU National, then a limited liability company, entered into a Credit Union Support Services and Correspondent Mortgage Lending Agreement (hereinafter "the Agreement").

10.   Pursuant to the Agreement, CU National agreed to provide Loan Servicing to Picatinny, which included the following services:

> (i)   CU NATIONAL shall service the loans in accordance with the same practices that prudent mortgage servicers would follow who service mortgage loans of the same type, or, if applicable, in accordance with the Credit Union's policies and procedure manual, regardless of when the loans were produced or when the CU NATIONAL acquired its servicing rights to the loans.

> (ii)   CU NATIONAL shall remit to the Credit Union all principal and interest, principal prepayment

and loan payoffs collected which apply to the mortgage and note held by the Credit Union less CU NATIONAL's servicing fee.  CU NATIONAL will be entitled to collect and retain all applicable late fees, bounced check charges, overline account fees assessed and any other applicable fees obtained in the course of servicing loans for the Credit Union pursuant to its ownership in the loan servicing rights.

(iii)  CU NATIONAL's remittance to the Credit Union shall be by electronic funds transferred or by check on the twentieth (20th) calendar day of each month or on a certain date as otherwise agreed upon by the parties.

(iv)   CU NATIONAL shall keep full and complete records pertaining to each loan, the collection made and disbursements made for the distribution of principal, interest, principal prepayment or loan payoffs.  During the period of this Agreement, CU NATIONAL shall give reasonable access to all books and records pertain to the applicable mortgage loan to the Credit Union or their authorized representative.

11.   The Agreement did not authorize CU National to sell any Picatinny loans or to execute on Picatinny's behalf allonges to notes, assignments of mortgages or other agreements.

12.   From on or about July 1, 1999 through December 31, 2008, CU National provided Picatinny with a monthly trial balance which identified each of the Picatinny loans that Picatinny funded and that CU National held in Picatinny's portfolio.  The monthly trial balance identified each Picatinny loan by a loan number assigned by CU National, the name of the Picatinny borrower, current principal balance due, the term of

the loan, maturity date, current escrow balance maintained by CU National, property address and original loan amount.

13.   CU National's trial balance as of December 31, 2008 reflected that it was then servicing approximately 281 Picatinny loans with an aggregate balance of $47,244,364.70.

**CU National's and U.S. Mortgage's Fraud**

14.   From time to time, Picatinny sent messengers to CU National to pick up files on which CU National provided underwriting services.

15.   On January 27, 2009, Picatinny's messenger arrived at CU National's place of business.  Upon arrival, the messenger noticed that police and other law enforcement officials had encircled the building in which CU National was located.  When the messenger approached the building, law enforcement officials advised her that no one was permitted to leave CU National or enter its business premises.  The Picatinny messenger also saw law enforcement officials exiting the building with documents obtained from CU National's offices. Law enforcement officials asked Picatinny's messenger whether she worked for CU National or U.S. Mortgage; she responded that she worked for Picatinny and was there to pick up loan files. Law enforcement officials responded "not today" and that she should leave the premises.

16.   Upon learning that information, Picatinny attempted to reach CU National by telephone and e-mail to determine why law enforcement officials had cordoned off CU National's premises.   No one, however, answered Picatinny's calls or e-mail.

17.   On February 5, 2009, Fannie Mae advised Picatinny that certain Picatinny loans had been assigned to it by CU National and provided the underlying loan documents with respect to eight fraudulently assigned loans.   A copy of these underlying loan documents for the eight fraudulently assigned loans is attached collectively as Exhibit A.

18.   To assign these loans without Picatinny's knowledge or authorization, CU National prepared an allonge to the notes and assignments of mortgages in favor of U.S Mortgage, which then indorsed the notes and assigned them to Fannie Mae. McGrath, as a purported Assistant Vice President of Picatinny, executed the allonges and assignments to U.S. Mortgage, which then executed allonges and assignments in favor of Fannie Mae.

19.   At no time was McGrath an Assistant Vice President of Picatinny or authorized to execute allonges, assignments or other agreements on behalf of Picatinny.

20.   To determine whether these unauthorized and fraudulent assignments of mortgages had been recorded, Picatinny had title searches performed on the properties securing these

loans.   The title searches revealed that the fraudulent assignments of mortgages by CU National and U.S. Mortgage in favor of Fannie Mae had not, as of the date of the searches, been recorded.

21.  On February 13, 2009, Picatinny received a letter from Andrew Liput, general counsel of U.S Mortgage, in which he acknowledged at least some of the fraud CU National and U.S. Mortgage had perpetrated upon Picatinny.  Mr. Liput's letter stated in pertinent part:

> We regret to inform you that we have discovered that our servicing system has been producing erroneous servicing portfolio reports to your credit union.  The exact time period in question is still under investigation.  At this point in our continuing investigation we believe that the actual number of loans were [sic] have held for servicing for you are 228 loans totaling $34,174,179.09.  A trial balance as of today is attached with complete details.
>
> Any loan not on this trial balance you believe you owned appears to have been sold without your authority to Fannie Mae and the sales proceeds were subsequently diverted.  At this point in our investigation we believe that 40 loans were sold without your authorization.  Thus it appears that a total of $9,491.133.85 in sales proceeds were diverted.  Please provide us with a detailed listing of the loans you feel are missing from the enclosed trial balance so we can cross reference your records with our and verify the information.
>
> The reason that you were unable to detect this event was the creation of duplicate servicing records that provided for servicing payments to both your credit union and Fannie Mae.

A copy of Mr. Liput's letter is attached as Exhibit B.

22.   Picatinny has compared the U.S Mortgage trial balance as of February 12, 2009 with Picatinny's own funding records and determined that U.S. Mortgage has grossly understated the number of loans sold without Picatinny's knowledge or authorization.   According to Picatinny's records, there are 58 loans that should be, but are not, in its loan portfolio held by CU National and the total dollar amount outstanding on those loans is $14,104.384.14.   A spreadsheet identifying each of the loans that defendants sold without Picatinny's knowledge or authorization (hereinafter "Picatinny Loans") is attached as Exhibit C.

23.   After receiving U.S. Mortgage's letter confirming at least some of its fraud, Picatinny advised Fannie Mae in writing that CU National and U.S. Mortgage had admitted that they had sold the Picatinny Loans without Picatinny's knowledge or authorization, explained in detail why Fannie Mae was not a holder of the notes and mortgages underlying the Picatinny Loans, and demanded that Fannie Mae execute in favor of Picatinny allonges to the notes and assignments of mortgages, and account for and return all monies collected on the notes. Fannie Mae refused.   A copy of Picatinny's demand letter dated February 24, 2009 is attached as Exhibit D.

## FIRST COUNT

### (Conversion)

24.   It repeats and realleges each of the allegations contained in paragraphs 1 through 23 of the Complaint as if fully set forth herein.

25.   The notes underlying the Picatinny Loans were issued to the order of Picatinny and purportedly transferred from Picatinny to U.S. Mortgage based upon the unauthorized indorsement of Michael J. McGrath, Jr., allegedly on behalf of Picatinny, on an allonge to the notes.  U.S. Mortgage then indorsed in favor of Fannie Mae an allonge to the notes.

26.   The mortgages underlying the Picatinny Loans were executed in favor of Picatinny and purportedly transferred from Picatinny to U.S. Mortgage based upon the unauthorized signature of Michael J. McGrath, Jr., allegedly on behalf of Picatinny, on an assignment of the mortgages.  U.S. Mortgage then executed in favor of Fannie Mae an assignment of the mortgages.

27.   Michael J. McGrath was not an officer, director or employee of Picatinny and was not authorized to execute allonges to notes or assignments of mortgages on behalf of Picatinny.

28.   Pursuant to Section 3-403(a) of the Uniform Commercial Code ("UCC"), _i.e._, _N.J.S.A._ 12A:3-403(a), "an unauthorized signature is ineffective except as the signature

except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value."

29.   Because Picatinny did not authorize Michael J. McGrath to sign allonges to notes and assignments of mortgages underlying the Picatinny Loans, his signature was ineffective under the UCC to transfer Picatinny's rights thereunder.  As a result, Fannie Mae received from that transfer only the rights that its transferor, U.S. Mortgage, had in the Picatinny Loans and, because U.S. Mortgage had no such rights, Fannie Mae does not have any rights to the Picatinny Loans.

30.   Before filing this action, on February 24, 2009, Picatinny demanded that Fannie Mae return Picatinny's property by executing in favor of Picatinny allonges to the notes and assignments of the mortgages, and account for and disgorge payments made in connection with the Picatinny Loans.  Fannie Mae failed and refused to honor Picatinny's demand.

31.   The failure of Fannie Mae to return Picatinny's notes and mortgages and disgorge payments made in connection therewith constitutes the wrongful exercise of dominion and control of Picatinny's property to Picatinny's exclusion and detriment.

WHEREFORE, Picatinny demands judgment in its favor and against Fannie Mae for compensatory damages in an amount not

less than the outstanding balance on the Picatinny Loans, which is $14,104,384.18, plus all payments Fannie Mae received in connection with the Picatinny Loans, an accounting of the amounts received in connection with the Picatinny Loans, consequential damages, punitive damages, reasonable attorneys' fees, costs of suit and such other and further relief as the Court deems just and proper.

## SECOND COUNT

**(New Jersey Declaratory Judgment Act, N.J.S.A. 12A:16-50)**

32.   It repeats and realleges the allegations contained in paragraphs 1 through 31 of the Complaint as if fully set forth herein.

33.   Picatinny contends that the signature of Michael J. McGrath, purportedly on Picatinny's behalf, on the allonges to the notes and assignments of mortgages was unauthorized and that, as a result thereof, Fannie Mae is not a holder of its notes and mortgages or a person entitled to enforce them.

34.   Without offering any facts or law in support of its position, Fannie Mae contends that it is a holder in due course of the notes and mortgages and, as a result, took them free from Picatinny's claims and defenses.

35.   Given the refusal of Fannie Mae to return the notes and mortgages underlying the Picatinny Loans and the payments received in connection therewith, an actual and

{00557565.DOC}                           12

justifiable controversy exists and a declaratory judgment is necessary and proper to set forth and determine the rights, obligations and liabilities that exist between the parties.

WHEREFORE, Picatinny demands judgment in its favor and against defendant Fannie Mae declaring that Fannie Mae does not have any right to enforce the notes and mortgages underlying the Picatinny Loans or receive any payments thereon and requiring Fannie Mae to execute allonges to these notes and assignments to these mortgages conveying them to Picatinny and to provide an accounting of all sums received in connection with the Picatinny Loans, costs of suit and such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 4:35-1, plaintiff Picatinny hereby demands a trial by jury of all issues triable of right by a jury.

SAIBER LLC
Attorneys for Plaintiff
Picatinny Federal Credit
Union

By: _____
        JAMES H. FORTE
    A Member of the Firm

Dated:  February 27, 2009

## CERTIFICATION PURSUANT TO RULE 4:5-1

I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and that no such other action or arbitration proceeding is currently contemplated. I further certify that, subject to continuing investigation and discovery, there are no other parties who should be joined in this action.

_____
JAMES H. FORTE

Dated:   February 27, 2009

# EXHIBIT A

# NOTE

**ORIGINAL**

| | | |
|---|---|---|
| September 12, 2008 | Springfield | New Jersey |
| [Date] | [City] | [State] |

**88 WILDER STREET
HILLSIDE, NJ 07205**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $234,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Picatinny Federal Credit Union, A Federal Credit Union.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.7500%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on November 01, 2008 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on October 01, 2038 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO Box 682, Pine Brook, NJ 07058

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $1,367.21

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

MULTISTATE
ITEM 1646L1 (011008)

Form 3200 1/01

GreatDocs™
(Page 1 of 3)

MFCD3082

3330008103

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of      **15**      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      **5.0000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as

this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
RICHARD S. PAYNE                -Borrower

_____ (Seal)
CHERYL D. PAYNE                 -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

[Sign Original Only]

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

MAINFORM
ITEM 4646.3 (0009)
MFCD3092

Form 3200 1/01

GreatDocs™
(Page 3 of 3)
3330005163

## ALLONGE TO PROMISSORY NOTE

**LOAN INFORMATION**

Loan Number: 3330005103

Borrower(s)   RICHARD S. PAYNE, CHERYL D. PAYNE

Property Address: 86 WILDER STREET, HILLSIDE, NJ 07205

Note Amount: 224,000.00

Note Date:   September 12, 2008

Pay to the order of:
U.S. MORTGAGE CORPORATION

Without Recourse

Picatinny Federal Credit Union

Name   MICHAEL J. MCGRATH, JR.

Title   AVP

US4057

PAY TO THE ORDER OF

WITHOUT RECOURSE
U.S. MORTGAGE CORPORATION

JOHN RUSKIN
VICE PRESIDENT

**RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE**
The assignee is not acting as a nominee of the mortgagor and that the mortgage continues to secure a bona fide obligation

**Recording RequestedBy/ReturnTo:**   MORTGAGE DEPT
19D CHAPIN ROAD, PO BOX 2014. PINE BROOK, NJ 07058

Loan Number:  3330000103

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
100 MINERAL SPRINGS ROAD, DOVER, 07801
does hereby grant, sell, assign, transfer and convey, unto   US MORTGAGE CORP.

existing under the laws of          **New Jersey**                  , a corporation organized and
(herein "Assignee"), whose address is
19D CHAPIN ROAD, PINE BROOK, NJ 07058

a certain Mortgage dated  September 12, 2005          , made and executed by

RICHARD S PAYNE AND CHERYL D PAYNE, HUSBAND AND WIFE

to and in favor of   PICATINNY FEDERAL CREDIT UNION                          and given to secure

payment of   , ( 224,000.00          ) Two Hundred Twenty Four Thousand
(include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.                   , at page             (or as

No.            ) of the                          Records of   UNION

County, State of   NJ            , recorded on               , together with the note(s) and obligations
therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.
IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on   October 6, 2005

|  |  |
|---|---|
|  | PICATINNY FEDERAL CREDIT UNION |
|  | BY: |
| Witness | MICHAEL T. MCGRATH, JR. |
|  | AVP |
| Witness |  |
|  |  |
| Attest |  |
| Seal: |  |

This Instrument Prepared By:  PICATINNY FEDERAL CREDIT UNION
address: 100 MINERAL SPRINGS ROAD, DOVER, 07801
STATE OF   New Jersey          , COUNTY OF      Morris

I CERTIFY THAT ON October 6, 2005
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)     WAS THE MAKER OF THIS INSTRUMENT
(B)     WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
AS   AVP                          OF  PICATINNY FEDERAL CREDIT UNION

(C)     EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT

NOTARY
SUZANNE MARIA CAVALLUZZO
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 7-22-2010

US4200

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

<u>Recording RequestedBy/ReturnTo:</u>   MORTGAGE DEPT
                                19D CHAPIN ROAD, PO BOX 2014, PINE BROOK, NJ 07058

Loan Number:  3330000003

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
**19D Chapin Road, Pine Brook, New Jersey 07058**
does hereby grant, sell, assign, transfer and convey, unto

**Federal National Mortgage Association**

existing under the laws of                                        , a corporation organized and
                                                (herein "Assignee"), whose address is

**3900 Washington Avenue NW, Washington, DC 20016**

a certain Mortgage dated **September 12, 2008**            , made and executed by

        RICHARD S PAYNE AND CHERYL D PAYNE, HUSBAND AND WIFE

to and in favor of  US Mortgage Corp.                                        and given to secure

payment of  .  ( 234,000.00        ) Two Hundred Twenty Four Thousand
                                    (include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.            , at page            (or as

No.            ) of the                            Records of   UNION

County, State of   NJ                    , recorded on                    , together with the note(s) and obligations therein
described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

    TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
    IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on   October 6, 2008

                                                US Mortgage Corp.

                                                BY:

Witness                                         **JOHN KUSKIN**

                                                AVP
Witness

Attest

Seal:

This Instrument Prepared By:
address:  19D Chapin Road, Pine Brook, NJ 07058

STATE OF NEW JERSEY,   COUNTY OF MORRIS

I CERTIFY THAT ON October 6, 2008
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)   WAS THE MAKER OF THIS INSTRUMENT
(B)   WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
      AS                            OF   US Mortgage Corp.
(C)   EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT

                                                NOTARY

US4290                                          SUZANNE MARIA CAVALLUZZO
                                                NOTARY PUBLIC OF NEW JERSEY
                                                Commission Expires 7-22-2013



# NOTE

| October 08, 2008 | Mt Olive | New Jersey |
|---|---|---|
| [Date] | [City] | [State] |

**282 KERRS CORNER ROAD**
**FRELINGHUYSEN AKA BLAIRSTOWN, NJ 07825**

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $306,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Picatinny Federal Credit Union, A Federal Credit Union

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.7500%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on December 01, 2008 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on November 01, 2038 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO Box 682, Pine Brook, NJ 07058

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,779.90

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                       Form 3200 1/01

MULTISTATE
ITEM 1641L (0011)

GreatDocs™
(Page 1 of 3)

MFCD3002                                                                                                                3330005404

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

MULTISTATE
ITEM 1846L2 (0011)
MFCD3002

Form 3200 1/01

GreatDocs™
(Page 2 of 3)
333000540404

this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JOHN U. WEED                    -Borrower

_____ (Seal)
CYNTHIA A. WEED                 -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

[Sign Original Only]

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200 1/01

MULTISTATE
(ITEM 1846L3 (0011))
MFCD3002                                                                        GreatDocs™
                                                                                Page 3 of 3
                                                                                3330005484

## ALLONGE TO PROMISSORY NOTE

**LOAN INFORMATION**

Loan Number: 3330005404

Borrower(s)   JOHN L. WEED, CYNTHIA A. WEED

Property Address: 282 KERRS CORNER ROAD, FRELINGHUYSEN AKA BLAIRSTOWN, NJ 07825

Note Amount:  305,000.00

Note Date:   October 8, 2008

Pay to the order of:
U.S. MORTGAGE CORPORATION

Without Recourse

Picatinny Federal Credit Union

Name   MICHAEL J. MCGRATH, JR.

Title   AVP

US4057

PAY TO THE ORDER OF

WITHOUT RECOURSE
U.S. MORTGAGE CORPORATION

JOHN KUSKIN
VICE PRESIDENT

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage continues to secure a bona fide obligation

**Recording RequestedBy/ReturnTo:**   MORTGAGE DEPT
19D CHAPIN ROAD, PO BOX 2014, PINE BROOK, NJ 07058

Loan Number:  3338006404

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is 190 MINERAL SPRINGS ROAD, DOVER, 07801 does hereby grant, sell, assign, transfer and convey, unto   US MORTGAGE CORP.

, a corporation organized and existing under the laws of   New Jersey   (herein "Assignee"), whose address is 19D CHAPIN ROAD, PINE BROOK, NJ 07058

a certain Mortgage dated  October 8, 2008   , made and executed by

JOHN L. WEED AND CYNTHIA A. WEED, HUSBAND AND WIFE,

to and in favor of   PICATINNY FEDERAL CREDIT UNION   and given to secure

payment of  . ( 305,000.00   ) Three Hundred Five Thousand (include the Original Principal Amount and Maturity Date of Note(s)) which Mortgage is of record in Book, Volume, or Liber No.   5055   , at page  1   (or as

No.  200800225745   ) of the   Records of   WARREN

County, State of   NJ   , recorded on   10/16/2008   , together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.
IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on   November 18, 2008

PICATINNY FEDERAL CREDIT UNION

BY:

Witness

MICHAEL J. MCGRATH, JR

Witness

AVP

Attest

Seal:

This Instrument Prepared By:  PICATINNY FEDERAL CREDIT UNION
address: 190 MINERAL SPRINGS ROAD, DOVER, 07801
STATE OF  New Jersey   COUNTY OF   Morris

I CERTIFY THAT ON November 18, 2008 PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)   WAS THE MAKER OF THIS INSTRUMENT
(B)   WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
AS   AVP   OF  PICATINNY FEDERAL CREDIT UNION

(C)   EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT

NOTARY

SUZANNE MARIA CAVALLUZZO
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 7-22-2010

US4200

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

Recording RequestedBy/ReturnTo:    MORTGAGE DEPT
                                   19D CHAPIN ROAD, PO BOX 2014, PINE BROOK, NJ 07058

Loan Number:  3330006404

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
**19D Chapin Road, Pine Brook, New Jersey 07058**
does hereby grant, sell, assign, transfer and convey, unto

**Federal National Mortgage Association**
                                                              , a corporation organized and
existing under the laws of                           (herein "Assignee"), whose address is

**3900 Washington Avenue NW, Washington, DC 20016**

a certain Mortgage dated  October 6, 2008            , made and executed by

JOHN L. WEED AND CYNTHIA A. WEED, HUSBAND AND WIFE,

to and in favor of  US Mortgage Corp.                                    and given to secure

payment of  , ( 306,000.00     ) Three Hundred Five Thousand
                          (include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.    6668        , at page   1         (or as

No. 200000323945    ) of the                    Records of  WARREN
County, State of   NJ                   , recorded on    10/16/2008      , together with the note(s) and obligations therein
described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

   TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
   IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on  November 10, 2008

                                            US Mortgage Corp.
                                            BY:
_____                   JOHN KUSKIN
Witness                                     AVP

_____
Witness

_____
Attest

Seal:

This Instrument Prepared By:
address:  19D Chapin Road, Pine Brook, NJ 07058

STATE OF NEW JERSEY,   COUNTY OF MORRIS

I CERTIFY THAT ON  November 10, 2008
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)     WAS THE MAKER OF THIS INSTRUMENT
(B)     WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
        AS  AVP             OF  US Mortgage Corp.
(C)     EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT

                                            NOTARY

US4280                                      SUZANNE MARIA CAVALLUZZO
                                            NOTARY PUBLIC OF NEW JERSEY
                                            Commission Expires 7-22-2013

ORIGINAL

# NOTE

October 15, 2008
[Date]

Verona
[City]

New Jersey
[State]

122 Farview Road
ROCKAWAY, NJ 07866

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $227,500.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Picatinny Federal Credit Union, A Federal Credit Union

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   6.0000%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A)  Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st   day of each month beginning on   December 01, 2008   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   November 01, 2038   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO Box 682, Pine Brook, NJ  07866

or at a different place if required by the Note Holder.

**(B)  Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $1,363.96   .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3200 1/01

MULTISTATE
ITEM 1949.1 (0000000)

GreatDocs™
(Page 1 of 3)

MFCD3002

3330008439

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A)  Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of          **15**          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     **5.0000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3200 1/01

MULTISTATE
ITEM 1848L2 (0000000)
MFCD3002

GreatDocs®
Page 2 of 3
3330006430

this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MICHELE B. FLYNN          -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200 1/01

MFCD3002

3330008439

## ALLONGE TO PROMISSORY NOTE

LOAN INFORMATION

Loan Number: 3330005439

Borrower(s)   MICHELE B. FLYNN

Property Address: 122 Farview Road, ROCKAWAY, NJ 07866

Note Amount: 227,500.00

Note Date:   October 15, 2008

Pay to the order of:
U.S. MORTGAGE CORPORATION

PAY TO THE ORDER OF

WITHOUT RECOURSE
U.S. MORTGAGE CORPORATION

JOHN KUSKIN
VICE PRESIDENT

_____

Without Recourse

Picatinny Federal Credit Union

Name   MICHAEL J. MCGRATH, JR.

Title   AVP

US4057

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

Recording RequestedBy/ReturnTo:   MORTGAGE DEPT
                                   19D CHAPIN ROAD, PO BOX 2014, PINE BROOK, NJ 07058

Loan Number:  333000400

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
                              100 MINERAL SPRINGS ROAD, DOVER, 07801
does hereby grant, sell, assign, transfer and convey, unto   US MORTGAGE CORP.

                                                          , a corporation organized and
existing under the laws of          New Jersey          (herein "Assignee"), whose address is
                         19D CHAPIN ROAD, PINE BROOK, NJ 07058

a certain Mortgage dated  October 18, 2006        , made and executed by

                         MICHELE B FLYNN, A SINGLE WOMAN

to and in favor of   PICATINNY FEDERAL CREDIT UNION                    and given to secure

payment of   , ( 227,500.00       ) Two Hundred Twenty Seven Thousand Five Hundred
                    (Include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.            , at page           (or as

No.          ) of the                       Records of   MORRIS

County, State of   NJ              , recorded on         , together with the note(s) and obligations
therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

        TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
        IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on  November 18, 2006

                                            PICATINNY FEDERAL CREDIT UNION
                                            BY:
_____                     _____
Witness                                      MICHAEL J. MCGRATH, JR.

_____                      AVP
Witness

Attest

Seal

This Instrument Prepared By:  PICATINNY FEDERAL CREDIT UNION
address:  100 MINERAL SPRINGS ROAD, DOVER, 07801

STATE OF  New Jersey , COUNTY OF  Morris

I CERTIFY THAT ON November 18, 2006                    Michael J. Mcgrath
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)     WAS THE MAKER OF THIS INSTRUMENT
(B)     WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
        AS     AVP         OF   PICATINNY FEDERAL CREDIT UNION

(C)     EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT

                                            NOTARY

US4299                                       SUZANNE MARIA CAVALLUZZO
                                             NOTARY PUBLIC OF NEW JERSEY
                                             Commission Expires 7-22-2012

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

Recording RequestedBy/ReturnTo: MORTGAGE DEPT
19D CHAPIN ROAD, PO BOX 2014, PINE BROOK, NJ 07058

Loan Number: 3330006490

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
**19D Chapin Road, Pine Brook, New Jersey 07058**
does hereby grant, sell, assign, transfer and convey, unto

### Federal National Mortgage Association

a corporation organized and
existing under the laws of                                   (herein "Assignee"), whose address is

**3900 Washington Avenue NW, Washington, DC 20016**

a certain Mortgage dated  October 16, 2008                 , made and executed by

**MICHELE B FLYNN, A SINGLE WOMAN**

to and in favor of  US Mortgage Corp.                                          and given to secure

payment of  , ( 227,500.00          ) Two Hundred Twenty Seven Thousand Five Hundred
(include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.                   , at page                   (or as

No.              ) of the                              Records of   MORRIS

County, State of   NJ                     , recorded on                   , together with the note(s) and obligations therein
described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on  November 10, 2008

                                                                US Mortgage Corp.
                                                            BY:
_____
Witness
                                                                JOHN KUSKIN
                                                                AVP
_____
Witness

_____
Attest

Seal:

This Instrument Prepared By:
address: 19D Chapin Road, Pine Brook, NJ 07058

STATE OF NEW JERSEY,   COUNTY OF MORRIS

I CERTIFY THAT ON  November 10, 2008
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)    WAS THE MAKER OF THIS INSTRUMENT
(B)    WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
       AS AVP               OF    US Mortgage Corp.
(C)    EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT

                                                                NOTARY

                                        SUZANNE MARIA CAVALLUZZO
                                        NOTARY PUBLIC OF NEW JERSEY
                                        Commission Expires 7-23-2013

US4290

# NOTE

ORIGINAL

November 05, 2008
[Date]

Ledgewood
[City]

New Jersey
[State]

125 MARNE ROAD
HOPATCONG, NJ 07843

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $232,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Picatinny Federal Credit Union, A Federal Credit Union

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 7.1250%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on January 01, 2009 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on December 01, 2038 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO Box 682, Pine Brook, NJ 07058

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $1,563.63

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

MULTISTATE
ITEM 1846L1 (0011)

Form 3200 1/01

GreatDocs™
(Page 1 of 3)

MFCD3002

3330005254

**5.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**

(A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of           15           calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.0000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                          Form 3200 1/01

GREATLAND
ITEM 1849.2 (0011)                                                                                        (Page 3 of 3)
MFCD3002                                                                                               3330005264

this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
NICOLAS PROSSER                  -Borrower

_____ (Seal)
KENEE PROSSER                    -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

NATHAN J. SMITH
An Attorney At Law
of New Jersey

[Sign Original Only]

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3200 1/01

MULTISTATE
ITEM 1846.3 (0309001)
MFCD3002                                                                                  GreatDocs®
                                                                                          (Page 3 of 3)
                                                                                          3330006284

## ALLONGE TO PROMISSORY NOTE

LOAN INFORMATION

Loan Number: 3330005254

Borrower(s)   NICOLAS PROSSER, RENEE PROSSER

Property Address: 125 MARNE ROAD, HOPATCONG, NJ 07843

Note Amount: 232,000.00

Note Date:   November 5, 2008

Pay to the order of:
U.S. MORTGAGE CORPORATION

Without Recourse

Picatinny Federal Credit Union

Name   MICHAEL J. MCGRATH, JR.

Title   AVP

US4057

PAY TO THE ORDER OF

WITHOUT RECOURSE
U.S. MORTGAGE CORPORATION

JOHN KUSKIN
VICE PRESIDENT

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

Recording RequestedBy/ReturnTo:   MORTGAGE DEPT
19D CHAPIN ROAD, PO BOX 2014. PINE BROOK, NJ 07058

Loan Number:  3330000286

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
100 MINERAL SPRINGS ROAD, DOVER, 07801
does hereby grant, sell, assign, transfer and convey, unto   US MORTGAGE CORP.

, a corporation organized and
existing under the laws of          New Jersey          (herein "Assignee"), whose address is
19D CHAPIN ROAD, PINE BROOK, NJ 07058

a certain Mortgage dated  November 5, 2008     , made and executed by

NICOLAS PROSSER AND RENEE PROSSER, HUSBAND AND WIFE

to and in favor of   PICATINNY FEDERAL CREDIT UNION          and given to secure

payment of   ,  (  232,000.00          ) Two Hundred Thirty Two Thousand
(include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.           , at page          (or as

No.          ) of the          Records of   SUSSEX

County, State of   NJ          , recorded on          , together with the note(s) and obligations
therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on   November 11, 2008

PICATINNY FEDERAL CREDIT UNION

BY:

Witness                                    MICHAEL J. MCGRATH, JR.

Witness                                    AVP

Attest:

Seal:

This Instrument Prepared By:  PICATINNY FEDERAL CREDIT UNION
address: 100 MINERAL SPRINGS ROAD, DOVER, 07801

STATE OF  New Jersey  , COUNTY OF  Morris

I CERTIFY THAT ON November 11, 2008                    Marcel J. Legoff
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)     WAS THE MAKER OF THIS INSTRUMENT
(B)     WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
        AS          AVP          OF   PICATINNY FEDERAL CREDIT UNION
(C)     EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT.

NOTARY

SUZANNE MARIA CAVALLUZZO
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 7-23-2013

US4200

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

Recording RequestedBy/ReturnTo:   MORTGAGE DEPT
                                   19D CHAPIN ROAD, PO BOX 2014, PINE BROOK, NJ 07058

Loan Number:   3330000286

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
### 19D Chapin Road, Pine Brook, New Jersey 07058
does hereby grant, sell, assign, transfer and convey, unto

### Federal National Mortgage Association
, a corporation organized and
existing under the laws of                                          (herein "Assignee"), whose address is

### 3900 Washington Avenue NW, Washington, DC 20016

a certain Mortgage dated  November 8, 2006              , made and executed by

NICOLAS PROSSER AND RENEE PROSSER, HUSBAND AND WIFE

to and in favor of  US Mortgage Corp.                                            and given to secure

payment of  , (  232,000.00        ) Two Hundred Thirty Two Thousand
                            (include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.                , at page               (or as

No.             ) of the                               Records of   SUSSEX

County, State of   NJ                  , recorded on                   , together with the note(s) and obligations therein
described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on  November 11, 2006

                                          US Mortgage Corp.

_____                   BY _____
Witness                                       JOHN KUSKIN

                                              AVP
_____
Witness

_____
Attest:

Seal:

This Instrument Prepared By:
address: 19D Chapin Road, Pine Brook, NJ 07058

STATE OF NEW JERSEY,   COUNTY OF MORRIS

I CERTIFY THAT ON  November 11, 2006
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)     WAS THE MAKER OF THIS INSTRUMENT
(B)     WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
        AS AVP               OF     US Mortgage Corp.
(C)     EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT

                                          NOTARY

US4290

**ORIGINAL**

# NOTE

| November 21, 2008 | Flanders | New Jersey |
|---|---|---|
| [Date] | [City] | [State] |

42 Washington Street
ROXBURY , NJ 07850

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $246,000.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Picatinny Federal Credit Union, A Federal Credit Union

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   6.0000%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    1st    day of each month beginning on    January 01, 2009   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   December 01, 2038   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO Box 682, Pine Brook, NJ 07058

or at a different place if required by the Note Holder.

(B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,474.90.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3200 1/01

MULTISTATE
ITEM 1040L1 (0008S0)

GreatDocs®
(Page 1 of 3)

MFCDS002

3330008273

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3200 1/01

MFCD3002

(Page 3 of 5)

3330005273

this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JACQUELINE A. FIORELLO      -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE—Single Family  -Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3200 1/01

MULTISTATE
ITEM 1640L3 (0009)                                                                          GreatDocs™
MFCD3002                                                                                    (Page 3 of 3)
                                                                                           3330008273

## ALLONGE TO PROMISSORY NOTE

LOAN INFORMATION

Loan Number: 3330006273

Borrower(s)   JACQUELINE A. FIORELLO

Property Address: 42  Washington Street, ROXBURY , NJ  07850

Note Amount: 246,000.00

Note Date:   November 21, 2008

Pay to the order of:
U.S. MORTGAGE CORPORATION

Without Recourse

Picatinny Federal Credit Union

Name   MICHAEL J. MCGRATH, JR.

Title   AVP

US4057

PAY TO THE ORDER OF

WITHOUT RECOURSE
U.S. MORTGAGE CORPORATION

JOHN RUSKIN
VICE PRESIDENT

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

Recording RequestedBy/ReturnTo:   MORTGAGE DEPT
                                   19D CHAPIN ROAD, PO BOX 2014. PINE BROOK, NJ 07058

Loan Number: 3330098273

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
                            100 MINERAL SPRINGS ROAD, DOVER, 07801
does hereby grant, sell, assign, transfer and convey, unto   US MORTGAGE CORP.

                                                                  , a corporation organized and
existing under the laws of        New Jersey            (herein "Assignee"), whose address is
                          19D CHAPIN ROAD, PINE BROOK, NJ 07058
a certain Mortgage dated  November 21, 2008        , made and executed by
                    JACQUELINE A FIORELLO, A SINGLE WOMAN

to and in favor of   PICATINNY FEDERAL CREDIT UNION                     and given to secure

payment of  , ( 246,000.00       ) Two Hundred Forty Six Thousand
                                  (include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.    21199        , at page  1299        (or as

No. 2008083013    ) of the                    Records of   MORRIS
County, State of   NJ            , recorded on    12/ 2/2008      , together with the note(s) and obligations
therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

    TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
    IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on   December 16, 2008

                                               PICATINNY FEDERAL CREDIT UNION

                                               BY:
Witness                                            MICHAEL J MCGRATH, JR.

Witness                                            AVP

Attest

Seal

This Instrument Prepared By:  PICATINNY FEDERAL CREDIT UNION
address: 100 MINERAL SPRINGS ROAD, DOVER, 07801

STATE OF   New Jersey    , COUNTY OF    Morris

I CERTIFY THAT ON December 16, 2008
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)    WAS THE MAKER OF THIS INSTRUMENT
(B)    WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
       AS   AVP        OF   PICATINNY FEDERAL CREDIT UNION

(C)    EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT

                                               NOTARY

                                               SUZANNE MARIA CAVALLUZZO
                                               NOTARY PUBLIC OF NEW JERSEY
                                               Commission Expires 7-22-2013

US4299

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

Recording Requested By/Return To:   MORTGAGE DEPT
19D CHAPIN ROAD, PO BOX 2014. PINE BROOK, NJ 07058

Loan Number:  3330005273

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
19D Chapin Road, Pine Brook, New Jersey 07058
does hereby grant, sell, assign, transfer and convey, unto

### Federal National Mortgage Association

, a corporation organized and
existing under the laws of                                              (herein "Assignee"), whose address is

3900 Wisconsin Avenue NW, Washington, DC 20016

a certain Mortgage dated  November 21, 2008          , made and executed by

JACQUELINE A FIORELLO, A SINGLE WOMAN

to and in favor of  US Mortgage Corp.                                          and given to secure

payment of  . ( 246,000.00          )  Two Hundred Forty Six Thousand
(Include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.     21195         , at page  1280        (or as

No. 2008063912         ) of the                    Records of  MORRIS

County, State of  NJ              , recorded on      12/02/2008        , together with the note(s) and obligations therein
described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on   December 16, 2008

US Mortgage Corp.

BY:

_____          JOHN KUSKIN
Witness                                                    AVP

_____
Witness

_____
Attest

Seal:

This Instrument Prepared By:
address:  19D Chapin Road, Pine Brook, NJ 07058

STATE OF NEW JERSEY,   COUNTY OF MORRIS

I CERTIFY THAT ON  December 16, 2008
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)     WAS THE MAKER OF THIS INSTRUMENT
(B)     WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
AS                      AVP              OF       US Mortgage Corp.
(C)     EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT

NOTARY
SUZANNE MARIA CAVALLUZZO
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 7-22-2013

US4280

# NOTE

November 14, 2008
[Date]

Morristown
[City]

13 Maxwell Court
MORRISTOWN, NJ 07960
[Property Address]

ORIGINAL

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $328,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Picatinny Federal Credit Union, A Federal Credit Union.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   5.8750%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A)   Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st   day of each month beginning on   January 01, 2009   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   December 01, 2038   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO Box 682, Pine Brook, NJ 07988

                                                                             or at a different place if required by the Note Holder.

**(B)   Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $1,940.25

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

MULTISTATE
ITEM 1848L1 (0011)

Form 3200 1/01

GreatDocs™
(Page 1 of 3)

MFCD3002

3330005300

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200 3/01

GreatDocs™
ITEM 1846L2 (0009MD)                                                                    Page 2 of 3
MFCD9002                                                                      3330005309

this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
LAUREN W. HERRERA          -Borrower    RAYMOND A. HERRERA          -Borrower

_____ (Seal)        _____ (Seal)
                           -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                           -Borrower                                -Borrower

WITNESS AS TO BOTH

[Sign Original Only]

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200 1/01

MULTISTATE
ITEM 1948L3 (0011)          (Page 3 of 3)
MFCD3002          333000S300

## ALLONGE TO PROMISSORY NOTE

LOAN INFORMATION

Loan Number: 3330005389

Borrower(s)    LAUREN W. HERRERA, RAYMOND A. HERRERA

Property Address: 13 Maxwell Court, MORRISTOWN, NJ  07960

Note Amount: 328,000.00

Note Date:    November 14, 2008

Pay to the order of:
U.S. MORTGAGE CORPORATION

Without Recourse

Picatinny Federal Credit Union

Name    MICHAEL J. MCGRATH, JR.

Title    AVP

U84857

PAY TO THE ORDER OF

WITHOUT RECOURSE
U.S. MORTGAGE CORPORATION

JOHN KUSKIN
VICE PRESIDENT

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagee and that the mortgage
continues to secure a bona fide obligation

Recording RequestedBy/ReturnTo:    MORTGAGE DEPT
                                   19D CHAPIN ROAD, PO BOX 2014, PINE BROOK, NJ 07058

Loan Number:  3330005300

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is

100 MINERAL SPRINGS ROAD, DOVER, 07801

does hereby grant, sell, assign, transfer and convey, unto   US MORTGAGE CORP.

                                                              , a corporation organized and

existing under the laws of          New Jersey              (herein "Assignee"), whose address is

                        19D CHAPIN ROAD, PINE BROOK, NJ 07058

a certain Mortgage dated  November 14, 2008          , made and executed by

                  LAUREN W HERRERA AND RAYMOND A HERRERA, WIFE AND HUSBAND

to and in favor of   PICATINNY FEDERAL CREDIT UNION                      and given to secure

payment of  . ( $328,000.00       ) Three Hundred Twenty Eight Thousand
                          (include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.   21107       . at page   0082       (or as

No.  2008001433    ) of the                  Records of   MORRIS

County, State of   NJ                    , recorded on        11/26/2008         , together with the note(s) and obligations
therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

    TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
    IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on   December 16, 2008

                                                   PICATINNY FEDERAL CREDIT UNION

                                                   BY

Witness                                            MICHAEL J MCGRATH, JR.

Witness                                            AVP

Attest

Seal:

This Instrument Prepared By:  PICATINNY FEDERAL CREDIT UNION
address: 100 MINERAL SPRINGS ROAD, DOVER, 07801

STATE OF   New Jersey   , COUNTY OF   Morris

I CERTIFY THAT ON December 16, 2008   Michael J. McGrath
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)     WAS THE MAKER OF THIS INSTRUMENT
(B)     WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
        AS   AVP                   OF   PICATINNY FEDERAL CREDIT UNION

(C)     EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT

                                                   NOTARY
                                                   SUZANNE MARIA CAVALLUZZO
                                                   NOTARY PUBLIC OF NEW JERSEY
                                                   Commission Expires 7-23-2013

US4200

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

Recording RequestedBy/ReturnTo:   MORTGAGE DEPT
                                   19D CHAPIN ROAD, PO BOX 2014, PINE BROOK, NJ 07058

Loan Number:  3330000300

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
**19D Chapin Road, Pine Brook, New Jersey 07058**
does hereby grant, sell, assign, transfer and convey, unto

**Federal National Mortgage Association**

                                                              , a corporation organized and
existing under the laws of                                    (herein "Assignee"), whose address is

**3900 Wisconsin Avenue NW, Washington, DC 20016**

a certain Mortgage dated  November 14, 2008            , made and executed by

              LAUREN W HERRERA AND RAYMOND A HERRERA, WIFE AND HUSBAND

to and in favor of  US Mortgage Corp.                                      and given to secure

payment of   , ( 328,000.00       ) Three Hundred Twenty Eight Thousand
                        (include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.   21167       , at page   0082       (or as

No. 2008001423   ) of the                    Records of   MORRIS

County, State of   NJ              , recorded on     11/26/2008      , together with the note(s) and obligations therein
described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

     TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
     IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on   December 16, 2008

                                                    US Mortgage Corp.
                                                    BY:
_____                    _____
Witness                                             JOHN KUSKIN

                                                    AVP
_____
Witness

_____
Attest:

Seal:

This Instrument Prepared By:
address:  19D Chapin Road, Pine Brook, NJ 07058

STATE OF NEW JERSEY,   COUNTY OF MORRIS

I CERTIFY THAT ON  December 16, 2008
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)     WAS THE MAKER OF THIS INSTRUMENT
(B)     WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
        AS           AVP             OF   US Mortgage Corp.
(C)     EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT

                                          NOTARY

                                          SUZANNE MARIA CAVALLUZZO
                                          NOTARY PUBLIC OF NEW JERSEY
                                          Commission Expires 7-23-2012

US4280

# NOTE

ORIGINAL

| December 01, 2008 | Dover | New Jersey |
|---|---|---|
| [Date] | [City] | [State] |

**539 WEST VALLEY VIEW AVENUE**
**HACKETTSTOWN, NJ 07840**

[Property Address]

### 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $239,000.00     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Picatinny Federal Credit Union, A Federal Credit Union

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   5.8750%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3.   PAYMENTS

**(A)   Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the     1st     day of each month beginning on     February 01, 2009    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    January 01, 2039     I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO Box 682, Pine Brook, NJ 07058

or at a different place if required by the Note Holder.

**(B)   Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $1,413.76

### 4.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3200 1/01

GREATLAND
ITEM 1849L1 (0011)

GreatDocs™
(Page 1 of 3)

MFCD9002

3330005457

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of          **15**          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     **5.0000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                 Form 3200 1/01

MULTISTATE
ITEM 1846L2 (0011L)                                                                                                 GreatDocs™
MFCD3002                                                                                                            (Page 3 of 4)
                                                                                                                    333000S457

this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
DEBORAH A. FEBUS               -Borrower        JOSEPH TOWNSEND                -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                       -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200 1/01

MULTISTATE
ITEM 1848L3 (0609L0)                                                                        GreatDocs®
MFCD3002                                                                                    (Page 3 of 3)

3330006457

## ALLONGE TO PROMISSORY NOTE

### LOAN INFORMATION

Loan Number:  3330005457

Borrower(s)    DEBORAH A. FEBUS, JOSEPH TOWNSEND

Property Address:  539 WEST VALLEY VIEW AVENUE, HACKETTSTOWN, NJ  07840

Note Amount:  239,000.00

Note Date:     December  1, 2006

Pay to the order of:
U.S. MORTGAGE CORPORATION

Without Recourse

Picatinny Federal Credit Union

Name     MICHAEL J. MCGRATH, JR.

Title     AVP

US4057

PAY TO THE ORDER OF

WITHOUT RECOURSE
U.S. MORTGAGE CORPORATION

JOHN KUSKIN
VICE PRESIDENT

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

Recording RequestedBy/ReturnTo:   MORTGAGE DEPT
                                   19D CHAPIN ROAD, PO BOX 2014. PINE BROOK, NJ 07058

Loan Number: 3330085457

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
                                   100 MINERAL SPRINGS ROAD, DOVER, 07801
does hereby grant, sell, assign, transfer and convey, unto   US MORTGAGE CORP.

                                                                    , a corporation organized and
existing under the laws of             New Jersey          (herein "Assignee"), whose address is
                                   19D CHAPIN ROAD, PINE BROOK, NJ 07058

a certain Mortgage dated  December 1, 2008          , made and executed by

                   DEBORAH A FEBUS, UNMARRIED AND JOSEPH TOWNSEND, UNMARRIED

to and in favor of   PICATINNY FEDERAL CREDIT UNION                    and given to secure

payment of  ( $ 239,000.00     ) Two Hundred Thirty Nine Thousand
                              (include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.              , at page           (or as

No.          ) of the                      Records of  WARREN

County, State of   NJ              , recorded on              , together with the note(s) and obligations
therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

   TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
   IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on   December 16, 2008

                                             PICATINNY FEDERAL CREDIT UNION
                                             BY:
_____
Witness                                      MICHAEL J. MCGRATH, JR.

_____
Witness                                      AVP

_____
Attest

Seal:

This Instrument Prepared By:  PICATINNY FEDERAL CREDIT UNION
address: 100 MINERAL SPRINGS ROAD, DOVER, 07801
STATE OF _____  COUNTY OF _____

I CERTIFY THAT ON December 16, 2008
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)     WAS THE MAKER OF THIS INSTRUMENT
(B)     WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
        AS       AVP        OF  PICATINNY FEDERAL CREDIT UNION

(C)     EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT
                                             NOTARY
                                             SUZANNE MARIA CAVALLUZZO
                                             NOTARY PUBLIC OF NEW JERSEY
                                             Commission Expires 7-23-2013

US4208

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

**Recording RequestedBy/ReturnTo:**   MORTGAGE DEPT
19D CHAPIN ROAD, PO BOX 2014, PINE BROOK, NJ 07058

Loan Number: 3330066457

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
**19D Chapin Road, Pine Brook, New Jersey 07058**
does hereby grant, sell, assign, transfer and convey, unto

**Federal National Mortgage Association** , a corporation organized and
(herein "Assignee"), whose address is
existing under the laws of

**3900 Wisconsin Avenue NW, Washington, DC 20016**

a certain Mortgage dated December 1, 2008 , made and executed by

DEBORAH A FEBUS, UNMARRIED AND JOSEPH TOWNSEND, UNMARRIED

to and in favor of   US Mortgage Corp. and given to secure

payment of  , ( 239,000.00 ) Two Hundred Thirty Nine Thousand
(Include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No. , at page (or as

No. ) of the Records of WARREN

County, State of NJ , recorded on , together with the note(s) and obligations therein
described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on December 16, 2008

US Mortgage Corp.
BY:
Witness   JOHN KUSKIN
AVP
Witness

Attest

Seal:

This Instrument Prepared By:
address : 19D Chapin Road, Pine Brook, NJ 07058

STATE OF NEW JERSEY, COUNTY OF MORRIS

I CERTIFY THAT ON December 16, 2008
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)   WAS THE MAKER OF THIS INSTRUMENT
(B)   WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
AS   AVP   OF   US Mortgage Corp.
(C)   EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT

NOTARY

SUZANNE MARIA CAVALLUZZO
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 7-22-2014

US-4290

# NOTE

**ORIGINAL**

| August 27, 2008 | Totowa | New Jersey |
|---|---|---|
| [Date] | [City] | [State] |

**178 WEST LAKE SHORE DRIVE
ROCKAWAY TOWNSHIP , NJ 07866**

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $280,000.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Picatinny Federal Credit Union, A Federal Credit Union

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.5000%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on October 01, 2008 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on September 01, 2038 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO Box 682, Pine Brook, NJ 07058

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $1,769.00 .

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3200 1/01

GreatDocs™
(Page 1 of 3)

ITEM 1845L1 (0609)

MFCD3002

3330005226

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under the Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15 calendar days** after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.0000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me, or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3200 1/01

GreatDocs™
(Page 2 of 3)

MAXIMUS
ITEM 1844L2 (0011)
MFCD3082

3330005226

this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
DR. STEVEN ZLOTNICK                      -Borrower                                                          -Borrower


_____ (Seal)                    _____ (Seal)
                                         -Borrower                                                          -Borrower


_____ (Seal)                    _____ (Seal)
                                         -Borrower                                                          -Borrower


                                                                                                    [Sign Original Only]



MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3200 1/01

MULTISTATE
ITEM 1646L3 (0011)                                                                                   GreatDocs™
MFCD3002                                                                                             (Page 3 of 3)
                                                                                                     3330008228

## ALLONGE TO PROMISSORY NOTE

LOAN INFORMATION

Loan Number: 3330005228

Borrower(s)   DR. STEVEN ZLOTNICK

Property Address: 178 WEST LAKE SHORE DRIVE, ROCKAWAY TOWNSHIP , NJ 07866

Note Amount: 280,000.00

Note Date:   August 27, 2008

Pay to the order of:
U.S. MORTGAGE CORPORATION

Without Recourse

Picatinny Federal Credit Union

Name   MICHAEL J. MCGRATH, JR.

Title   AVP

US4057

PAY TO THE ORDER OF

WITHOUT RECOURSE
U.S. MORTGAGE CORPORATION

JOHN KUSKIN
VICE PRESIDENT

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

Recording RequestedBy/ReturnTo:   MORTGAGE DEPT.
                                   19D CHAPIN ROAD, PO BOX 2014. PINE BROOK, NJ 07058

Loan Number:  3330008228

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
                                   100 MINERAL SPRINGS ROAD, DOVER, 07801
does hereby grant, sell, assign, transfer and convey, unto   US MORTGAGE CORP.

                                                                           , a corporation organized and
existing under the laws of           New Jersey          (herein "Assignee"), whose address is
                                   19D CHAPIN ROAD, PINE BROOK, NJ 07058

a certain Mortgage dated August 27, 2008              , made and executed by

                          DR. STEVEN ZLOTNICK, A SINGLE MAN

to and in favor of   PICATINNY FEDERAL CREDIT UNION                          and given to secure

payment of  ,  ( 280,000.00          ) Two Hundred Eighty Thousand
                          (include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.    21191      , at page   1725        (or as

No. 2008008048    ) of the                          Records of   MORRIS

County, State of   NJ             , recorded on     9/ 9/2008       , together with the note(s) and obligations
therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage

    TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage. .
    IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on  December 22, 2008

                                                 PICATINNY FEDERAL CREDIT UNION
_____                          BY:_____
Witness
                                                 MICHAEL J. MCGRATH, JR.
_____
Witness                                          AVP

_____
Attest

Seal:

This Instrument Prepared By:  PICATINNY FEDERAL CREDIT UNION
address: 100 MINERAL SPRINGS ROAD, DOVER, 07801

STATE OF   New Jersey      , COUNTY OF      Morris

I CERTIFY THAT ON December 22, 2008                Michael J. McGrath
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)     WAS THE MAKER OF THIS INSTRUMENT
(B)     WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
        AS _____ AVP _____ OF   PICATINNY FEDERAL CREDIT UNION

(C)     EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT
                                                 _____
                                                 NOTARY

US4299                                           SUZANNE MARIA CAVALLUZZO
                                                 NOTARY PUBLIC OF NEW JERSEY
                                                 Commission Expires 7-22-2013

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

Recording RequestedBy/ReturnTo:   MORTGAGE DEPT
                                   19D CHAPIN ROAD, PO BOX 2014. PINE BROOK, NJ 07058

Loan Number: 3330088228

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
                        19D Chapin Road, Pine Brook, New Jersey 07058
does hereby grant, sell, assign, transfer and convey, unto

### Federal National Mortgage Association
                                                   , a corporation organized and
                                          (herein "Assignee"), whose address is
existing under the laws of

                  3900 Wisconsin Avenue NW, Washington, DC 20016

a certain Mortgage dated August 27, 2008           , made and executed by
                        DR. STEVEN ZLOTNICK, A SINGLE MAN
to and in favor of  US Mortgage Corp.                              and given to secure

payment of  , ( 280,000.00         ) Two Hundred Eighty Thousand
                         (Include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.   21191      , at page   1728        (or as

No. 2009008948        ) of the                   Records of  MORRIS

County, State of  NJ            , recorded on     09/02/2008      , together with the note(s) and obligations therein
described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

     TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns; forever, subject only to the terms and conditions of
the above-described Mortgage.
     IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on   December 23, 2008

                                                   US Mortgage Corp.
_____                       BY: _____
Witness                                            JOHN KUSKIN
                                                   AVP
_____
Witness

_____
Attest

Seal:

This Instrument Prepared By:
address: 19D Chapin Road, Pine Brook, NJ 07058

STATE OF NEW JERSEY,   COUNTY OF MORRIS

I CERTIFY THAT ON  December 23, 2008
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)     WAS THE MAKER OF THIS INSTRUMENT
(B)     WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
        AS              AVP          OF   US Mortgage Corp.
(C)     EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT
                                                   NOTARY

                                          SUZANNE MARIA CAVALLUZZO
                                          NOTARY PUBLIC OF NEW JERSEY
                                          Commission Expires 7-22-2013
US4280

# EXHIBIT B

19 D Chapin Road

P.O. Box 2014

Pine Brook, NJ 07058

(973) 244-7000

(800) 857-2274

(973) 244-9061 fax

February 12, 2009

Bill Darling, Acting CEO
Picatinny FCU
100 Mineral Springs Road
Dover, NJ 07801

Re:     Financial Irregularities in the Sale and Servicing of Loans

Dear Mr. Darling:

We regret to inform you that we have discovered that our servicing system has been producing erroneous servicing portfolio reports to your credit union. The exact time period in question is still under investigation. At this point in our continuing investigation we believe that the actual number of loans were have held for servicing for you are 228 loans totaling $34,174,179.09. A trial balance as of today is attached with complete details.

Any loan not on this trial balance you believe you owned appears to have been sold without your authority to Fannie Mae and the sales proceeds subsequently diverted. At this point in our investigation we believe that 40 loans were sold without your authorization. Thus it appears that a total of $9,491,133.85 in sales proceeds were diverted. Please provide us with a detailed listing of the loans you feel are missing from the enclosed trial balance so we can cross reference your records with ours and verify the information.

The reason that you were unable to detect this event was the creation of duplicate servicing records that provided for servicing payments to both your credit union as well as Fannie Mae.

We are actively working with the Office of the US Attorney in Newark, NJ and the Departments of Banking of various states, to take appropriate steps to address the problems arising from this situation. We are also keeping NCUA fully informed. These efforts include turning over active pipelines to you for handling through other lenders, and efforts to locate a substitute servicer to acquire servicing rights and to take control of your closed loan files including collecting payments going forward. We are also moving quickly to identify assets that might ultimately be made available to help cover any losses.

Among the steps we have taken to remedy the situation as quickly as possible are the engagement of NachmanHaysBrownstein, Inc. (NHB), a well known crisis management firm, and the appointment of one of its principals as Chief Restructuring Officer to spearhead our efforts.



Because all of the affected credit unions will likely have similar questions and issues to be resolved, in order to avoid delay and duplication of effort, NHB has designated a member of its case team, Max Markidan (mmarkidan@nhbteam.com) to act as the point person in addressing questions from credit unions, including arranging the turnover of pipelines. NHB will also help to coordinate efforts with Fannie Mae to resolve credit unions' claims regarding loans purchased by Fannie Mae the ownership of which may be in dispute.

Please do not suggest that your members call us or come to our offices to inquire about their mortgages or pending loans. We cannot handle individual inquiries from them, and their attempted calls or visits will simply further delay the process and increase frustration. Max Markidan will coordinate with the credit unions the handling of these matters with you and/or your designated agents (attorneys, substitute servicers and lenders). . If you have counsel they may also wish to contact Bruce Buechler, Esq. of the law firm Lowenstein Sandler (bbuechler@lowenstein.com) who has been retained to handle all legal questions and matters for the company.

Please provide us ASAP with email and phone contact information for a point person in you organization so that we may furnish you quickly with additional information as it becomes available. Please email this information to Mr. Markidan at the email address above.

We sincerely apologize for this situation. Please be assured that we are doing everything that we can to refine the exact amount of impact on each credit union, and to address all issues in the best interests of everyone, including you and your members.

Very truly yours,

Andrew Lipul
ALL:br

cc:   Howard Brownstein, CRO
      Max Markidan
      Bruce Buechler, Esq.

**CU PAYMENT PROCESSING CENTER**
Mortgage Servicer System
Loan Trial Balance By Bank/Investor/Group

February 12, 2009

Page 1

| Loan # | Loan Name | Inv Loan # | Due Date | Qt Inv Grp | Int Rate | Payment Amt | Prin Bal | T&I Bal | Loan Draft Bal | Unapplied Bal | Subsidy Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2180313369 | MANNING, T | 2180313369 | 020109 | 01 180 000 | 5.14800 | 2,782.61 | 104,176.89 | 340.07 | .00 | .00 | .00 |
| 2150010528 | PERICA, A | 2150010528 | 030109 | 01 180 000 | 5.12500 | 2,193.80 | 28,434.80 | 728.29 | .00 | .00 | .00 |
| 2180032581 | LIBBY, J | 2150032581 | 030109 | 01 180 000 | 5.95000 | 2,810.03 | 6,076.78 | 257.43 | .00 | .00 | .00 |
| 301304359 | Larson, C | 301304359 | 030109 | 01 180 000 | 5.50000 | 2,112.64 | 87,112.86 | 1,474.51 | .00 | .00 | .00 |
| 301305049 | KAPOOR, D | 301305049 | 030109 | 01 180 000 | 4.37500 | 1,357.45 | 46,223.65 | 1,044.62 | .00 | .00 | .00 |
| 301305049 | VOGEL, J | 301305049 | 020109 | 01 180 002 | 5.25000 | 2,081.29 | 79,621.28 | -302.57 | .00 | .00 | .00 |
| 315002720 | LAVANG, P | 315002720 | 030109 | 01 180 000 | 5.00000 | 2,234.82 | 70,352.16 | 1,562.73 | .00 | .00 | .00 |
| 315230011 | schemmann, S | 315230011 | 020109 | 01 180 000 | 5.00000 | 2,474.84 | 29,607.90 | 1,142.16 | .00 | .00 | .00 |
| 315200059 | AGUIB-SCHEELBURG | 315200059 | 030109 | 01 180 000 | 4.75000 | 1,438.82 | 34,498.03 | 893.03 | .00 | 0.00 | 0.00 |
| 105416 | NORMAN, LAWRENCE | 105000105416 | 030109 | 01 180 000 | 5.67500 | 1,409.82 | 19,015.42 | 1,225.33 | 0.80 | 0.00 | |

Group Totals: | | | | | | 20,947.14 | 502,891.99 | 5,978.74 | | |

| | | | | | | | | | | Item Count = 10 |
| 301303382 | Blaisjean, H | 301303382 | 030109 | 01 150 001 | 4.75000 | 1,187.76 | 77,773.39 | 1,064.90 | .00 | .00 | .00 |
| 301303781 | ORTLN, L | 301303781 | 030109 | 01 150 001 | 5.25000 | 1,891.23 | 96,053.33 | 1,232.77 | .00 | .00 | .00 |
| 301304189 | THIESING, A | 301304189 | 030109 | 01 150 001 | 5.00004 | 1,494.38 | 71,910.54 | 1,044.78 | .00 | .00 | .00 |
| 301304202 | NSMETH, P | 301304202 | 020109 | 01 150 001 | 4.75000 | 1,479.52 | 84,196.33 | 786.68 | .00 | .00 | .00 |
| 301304272 | CHELLA, P | 301304272 | 020109 | 01 150 001 | 5.25000 | 2,530.52 | 143,157.03 | 1,011.26 | .00 | .00 | .00 |
| 301304493 | HEYWARD, K | 301304493 | 020109 | 01 150 001 | 4.62500 | 2,498.02 | 158,628.73 | -271.3- | .00 | .00 | .00 |
| 301305105 | ASTROLOGO | 301305105 | 020109 | 01 150 001 | 0.75000 | 3,001.46 | 184,499.45 | -491.81 | .00 | .00 | .00 |
| 301305718 | Farias, J | 301305718 | 030109 | 01 150 001 | 4.76000 | 2,706.05 | 200,333.45 | 1,159.24 | .00 | .00 | .00 |
| 301305511 | BASCONE, J | 301305511 | 030109 | 01 150 001 | 5.50000 | 1,090.32 | 76,469.28 | 1,163.56 | .00 | .00 | .00 |
| 301307381 | OLBEN, A | 301307381 | 020109 | 01 150 001 | 5.25000 | 2,416.33 | 137,653.44 | 338.81 | .00 | .00 | .00 |
| 301307403 | SZOLLOSY, L | 301307403 | 030109 | 01 150 001 | 5.25000 | 1,784.36 | 121,686.56 | 486.37 | .00 | .00 | .00 |
| 301306483 | KROPP, W | 301306483 | 030109 | 01 150 001 | 5.62500 | 1,822.07 | 87,570.29 | 1,334.62 | .00 | .00 | .00 |
| 301305807 | Crotors, R | 301305807 | 030109 | 01 150 001 | 5.37500 | 1,990.85 | 104,773.27 | 2,517.29 | .00 | .00 | .00 |
| 301305822 | Benjamie, R | 301305822 | 020109 | 01 150 001 | 5.37500 | 2,237.50 | 149,997.37 | 1,320.69 | .00 | .00 | .00 |
| 301310279 | Chill, W | 301310279 | 020109 | 01 150 001 | 5.50000 | 4,369.87 | 281,654.01 | 2,196.11 | .00 | .00 | .00 |
| 315002941 | HUGHES, C | 315002941 | 020109 | 01 150 001 | 5.75000 | 2,545.40 | 183,063.26 | 2,722.12 | .00 | .00 | .00 |
| 315202616 | DePleo | 315202616 | 020109 | 01 150 001 | 0.75000 | 1,855.84 | 105,015.12 | 307.10 | .00 | .00 | .00 |
| 415003457 | AMARA, A | 415003457 | 030109 | 01 150 001 | 4.62500 | 1,854.33 | 101,170.18 | 406.30 | .00 | .00 | .32 |
| 415201231 | GRIEG, T | 415201231 | 020109 | 01 150 001 | 4.62500 | 1,966.15 | 61,599.70 | 1,854.62 | .00 | .00 | .33 |
| 3330004364 | SISCO, H | 3330004364 | 030109 | 01 150 001 | 4.47500 | 1,784.75 | 98,772.32 | 1,367.48 | .00 | .00 | .33 |
| 3330004616 | CHEN, T | 3330004616 | 020109 | 01 150 001 | 5.37500 | 2,537.58 | 241,694.90 | 748.12 | .00 | .00 | .80 |
| 3330005176 | WALTER, W | 3330005176 | 030109 | 01 150 001 | 5.87500 | 2,135.83 | 176,099.03 | 1,993.91 | .00 | .00 | .63 |
| 3330005592 | BALE, L | 3330005592 | 030109 | 01 150 001 | 6.00000 | 1,572.89 | 117,658.02 | 1,625.16 | .00 | .00 | .00 |
| 3330005648 | LYON, P | 3330005648 | 040109 | 01 150 001 | 5.25000 | 941.84 | 66,698.01 | 964.95 | .00 | .00 | .00 |
| | | | | | | 1,466.90 | 132,000.00 | 1,630.36 | .00 | .00 | .00 |

Page 2

## CU PAYMENT PROCESSING CENTER
### Mortgage Servicer System
### Loan Trial Balance By Bank/Investor/Group

February 12, 2009

| Loan # | Loan Name | Inv'Loan # | Date Rate | Blk Inv Grp | Int Rate | Payment Amt | Prin Bal | T&I Bal | Loan Draft Bal | Unapplied Bal | Subsidy Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 102041 | SCHAFFHAUSER, K | 00000392239341 | 03/01/09 | 01 150 001 | 3.78000 | 2,333.59 | 63,957.08 | 1,080.59 | .00 | .00 | .00 |
| 102004 | O'DONNELL, JAMES | 00000201032046 | 03/01/09 | 01 150 001 | 0.37500 | 1,261.18 | 48,675.48 | 881.58 | .00 | .00 | .00 |
| 105772 | BINEF, JOSEPH | 00000301603772 | 03/01/09 | 01 150 001 | 5.50000 | 1,600.33 | 78,312.25 | 865.58 | .00 | .00 | .00 |
| 106232 | DOUGHERTY, STEWA | 00000301608292 | 03/01/09 | 01 150 001 | 6.12500 | 1,061.51 | 42,101.23 | 2,183.51 | .00 | .00 | .00 |
| 106444 | ROBINSON, EDWAR | 00000301606444 | 03/01/09 | 01 150 001 | 6.12500 | 972.00 | 44,082.87 | 1,268.84 | .00 | .00 | .00 |
| 150428 | HERMAN, RICHARD | 00000015042B | 03/01/09 | 01 150 001 | 6.37500 | 273.19 | 18,412.23 | 76.32 | .00 | .00 | .00 |
| 9000257 | CRNARICH, LD.JIB | 00000900052597 | 03/01/09 | 01 150 001 | 6.50000 | 1,100.68 | 21,310.85 | 1,100.81 | .00 | .00 | .00 |
| 9000200 | GEISS, DONALD | 00000900000290 | 03/01/09 | 01 150 001 | 6.62500 | 1,433.20 | 43,469.13 | 1,005.87 | .00 | .00 | .00 |
| 9000307 | McMAHON, JAMES | 00000900000307 | 02/01/09 | 01 150 001 | 6.87500 | 2,048.53 | 71,348.39 | 380.17 | .00 | .00 | .00 |
| | | | | **Group Totals** | | 63,238.48 | 3,745,590.18 | 39,945.17 | 0.09 | 0.00 | 0.00 |
| | | | | | | | | | | | **Item Count = 34** |
| 150729 | TRAINO, C. | 150729 | 03/01/09 | 01 150 002 | 6.37500 | 566.31 | 64,018.10 | 1,331.22 | .00 | .00 | .00 |
| 150748 | ROTTINGER, P | 150748 | 03/01/09 | 01 150 002 | 6.62500 | 873.37 | 44,140.32 | 487.72 | .00 | .00 | .00 |
| 215001365 | TESTA, R | 215000391 | 03/01/09 | 01 150 002 | 6.37500 | 1,095.05 | 138,633.14 | 1,940.57 | .00 | .00 | .00 |
| 215001291 | MILLER, L | 215001298 | 03/01/09 | 01 150 002 | 6.12500 | 1,713.51 | 129,396.63 | 476.45 | .00 | .00 | .00 |
| 215001334 | CLARK, W | 215001291 | 02/01/09 | 01 150 002 | 6.87500 | 2,057.56 | 141,917.82 | 480.36 | .00 | .00 | .00 |
| 215001840 | KUHLE, W | 215001334 | 03/01/09 | 01 150 002 | 6.00000 | 2,054.61 | 149,959.83 | 1,554.51 | .00 | .00 | .00 |
| 215001926 | PAIVA, R | 215001840 | 02/01/09 | 01 150 002 | 6.87500 | 646.30 | 34,105.91 | 563.15 | .00 | .00 | .00 |
| 215002256 | ENGELMANN, E | 215001926 | 02/01/09 | 01 150 002 | 6.87500 | 1,848.83 | 121,640.38 | 307.32 | .00 | .00 | .00 |
| 301304149 | HURLEY, F | 215002256 | 03/01/09 | 01 150 002 | 6.81500 | 1,218.00 | 78,856.80 | 1,470.50 | .00 | .00 | .00 |
| 301305426 | SCHUESSLER, M | 301304149 | 03/01/09 | 01 150 002 | 5.12500 | 1,111.08 | 78,080.23 | 1,373.71 | .00 | .00 | .00 |
| 315002604 | WHITE, S | 301305426 | 03/01/09 | 01 150 002 | 5.87500 | 1,303.29 | 108,711.57 | 1620.94 | .00 | .00 | .00 |
| 333000013 | LEONARD, S | 315002604 | 02/01/09 | 01 150 002 | 6.87500 | 1,644.54 | 109,786.26 | 459.82 | .00 | .00 | .00 |
| 105340 | CLYNE, G | 333000013 | 02/01/09 | 01 150 002 | 6.00000 | 4,669.31 | 475,789.87 | 8,836.07 | .00 | .00 | .00 |
| 9000164 | MUSSONE, JAMES | 70000301008390 | 02/01/09 | 01 150 002 | 6.37500 | 1,844.70 | 132,441.84 | 417.72 | .00 | .00 | .00 |
| 9000191 | ZUNIGA, RENATO | 30000900000164 | 02/01/09 | 01 150 002 | 8.25000 | 1,138.98 | 83,531.42 | 2,040.30 | .00 | 699.00 | .00 |
| | FAGERTY, STANLE | 00000000000191 | 03/01/09 | 01 150 002 | 7.37500 | 1,142.58 | 36,070.11 | 721.94 | .00 | .00 | .00 |
| | | | | **Group Totals** | | 26,673.31 | 1,902,448.16 | 21,241.27 | 0.09 | 699.00 | 0.00 |
| | | | | | | | | | | | **Item Count = 16** |
| 150793 | BLODGETT, R. | 150793 | 03/01/09 | 01 150 003 | 6.87500 | 1,932.17 | 128,638.04 | 868.85 | .00 | .00 | .00 |
| 150799 | JACKSON, D. | 150799 | 12/01/08 | 01 150 003 | 6.62500 | 1,181.63 | 86,130.18 | -1,698.87 | .00 | .00 | .00 |
| 215000916 | PIORKOWSKI, J | 215000916 | 03/01/09 | 01 150 003 | 6.37500 | 1,021.25 | 94,985.12 | 627.64 | .00 | 864.03 | .00 |
| 215001033 | BEVILOCK, J | 215001033 | 03/01/09 | 01 150 003 | 6.37500 | 1,497.85 | 103,075.66 | 663.94 | .00 | .00 | .00 |
| 215001206 | KPAJEWSKI, J | 215001206 | 03/01/09 | 01 150 003 | 6.87500 | 2,188.31 | 314,780.99 | 1,093.74 | .00 | .00 | .00 |
| 215001252 | DAMAVARAPU, R | 215001252 | 03/01/09 | 01 150 003 | 6.87500 | 2,655.58 | 268,041.81 | 1,504.05 | .00 | .00 | .00 |

Page 3

CU PAYMENT PROCESSING CENTER
Mortgage Servicer System
Loan Trial Balance By Bank/Investor/Group

February 12, 2009

| Loan # | Loan Name | Inv/Loan # | Due Date | Gfk Inv Grp | Int Rate | Payment Amt | Prin Bal | T&I Bal | Loss Draft Bal | Unapplied Bal | Suspably Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 215001349 | JONES, K | 215001349 | 03/01/09 | 01 150 003 | 6.12500 | 2,900.89 | 246,093.00 | 1,182.70 | .00 | .43 | .00 |
| 215001419 | CHIEFA, M | 215001419 | 03/01/09 | 01 150 003 | 6.00000 | 2,570.90 | 212,105.67 | 1,653.87 | .00 | .42 | .00 |
| 215001500 | RYDEN, L | 215001500 | 03/01/09 | 01 150 003 | 6.00000 | 1,488.47 | 127,526.59 | 694.23 | .00 | .00 | .00 |
| 215001527 | KANTENWEIN, R | 215001527 | 03/01/09 | 01 150 003 | 5.87500 | 1,402.41 | 114,030.67 | 614.20 | .00 | .35 | .00 |
| 215001579 | SHUPE, J | 215001579 | 03/01/09 | 01 150 003 | 6.00000 | 1,291.22 | 138,882.74 | 671.53 | .00 | .09 | .00 |
| 215001618 | FARRO, B | 215001618 | 02/01/09 | 01 150 003 | 6.37500 | 2,003.77 | 189,507.92 | 427.35 | .00 | .00 | .00 |
| 215001660 | WILSL-SEN, E | 215001660 | 02/01/09 | 01 150 003 | 6.00000 | 2,032.85 | 191,413.27 | 962.20 | .00 | .00 | .00 |
| 215001694 | PETERS, T | 215001694 | 03/01/09 | 01 150 003 | 5.75000 | 2,276.93 | 329,316.33 | 1,716.58 | .00 | .00 | .00 |
| 215001995 | SAUVAGEAU, M | 215001995 | 03/01/09 | 01 152 003 | 5.87500 | 2,704.83 | 272,202.23 | 1,609.38 | .00 | .00 | .00 |
| 215002081 | HABA, A | 215002081 | 03/01/09 | 01 150 003 | 5.87500 | 2,343.64 | 216,692.53 | 1,904.49 | .00 | .00 | .00 |
| 215002098 | OLIVO, G | 215002098 | 02/01/09 | 01 150 003 | 6.00000 | 3,303.48 | 230,621.34 | 1,197.88 | .00 | .00 | .00 |
| 215002114 | REUTER, B | 215002114 | 03/01/09 | 01 150 003 | 6.12500 | 853.08 | 54,432.53 | 618.00 | .00 | .00 | .00 |
| 301009982 | PUTTBACH, F | 301009982 | 03/01/09 | 01 150 003 | 6.00000 | 1,459.09 | 139,591.24 | 1,130.69 | .00 | .00 | .00 |
| 301304084 | SLEDGEISKI, L | 301304084 | 03/01/09 | 01 150 003 | 6.35000 | 1,290.10 | 144,007.46 | 649.01 | .11 | .00 | .00 |
| 301304081 | LANNON, B | 301304081 | 02/01/09 | 01 150 003 | 5.32500 | 181.88 | 96,779.90 | 1,823.04 | .00 | .00 | .00 |
| 301304248 | HERBST, D | 301304248 | 03/01/09 | 01 150 003 | 5.50000 | 832.98 | 99,235.00 | 1,134.92 | .00 | .03 | .00 |
| 301304612 | HOLLEY, W | 301304612 | 03/01/09 | 01 150 003 | 5.37500 | 877.36 | 111,541.58 | 720.43 | .00 | .00 | .00 |
| 301305077 | Laurie, G | 301305077 | 03/01/09 | 01 150 003 | 6.12500 | 2,594.91 | 257,581.36 | 1,239.60 | .00 | .00 | .00 |
| 301306138 | Knud, J | 301306138 | 03/01/09 | 01 150 003 | 6.12500 | 2,016.72 | 198,403.63 | 1,392.20 | .00 | .00 | .00 |
| 301306214 | Quennell | 301306214 | 02/01/09 | 01 150 003 | 5.90000 | 1,318.17 | 143,354.41 | 59.65 | .00 | .00 | .00 |
| 301306910 | HAMILTON, R | 301306910 | 03/01/09 | 01 150 003 | 5.87500 | 2,240.96 | 238,246.38 | 828.64 | .00 | .00 | .00 |
| 301307024 | Sullivan, D | 301307024 | 03/01/09 | 01 150 003 | 5.75000 | 1,853.85 | 207,347.95 | 818.96 | .00 | .00 | .00 |
| 301307077 | CAUFEE | 301307077 | 03/01/09 | 01 150 003 | 5.87500 | 967.91 | 83,837.65 | -448.20 | .00 | .00 | .00 |
| 301307347 | VACHANUS | 301307347 | 02/01/09 | 01 150 003 | 5.87500 | 1,040.09 | 90,716.31 | 238.19 | .00 | .00 | .00 |
| 301307592 | ZEHEVRESOTKA-ZE | 301307592 | 03/01/09 | 01 150 003 | 6.37500 | 1,861.74 | 193,693.11 | 497.12 | .00 | .00 | .00 |
| 301377759 | Lsthom, D | 301377759 | 03/01/09 | 01 150 003 | 6.37500 | 849.49 | 101,448.72 | 1,149.93 | .00 | .00 | .00 |
| 301307859 | Margrave, D | 301307859 | 03/01/09 | 01 150 003 | 5.87500 | 1,983.14 | 214,462.05 | 623.90 | .00 | .00 | .00 |
| 301308057 | Teryer, M | 301308057 | 03/01/09 | 01 150 003 | 6.25000 | 1,307.64 | 128,372.51 | 797.43 | .00 | .00 | .00 |
| 301308096 | CALVERT, R | 301308096 | 02/01/09 | 01 150 003 | 6.00000 | 735.65 | 91,437.90 | 760.31 | .00 | .00 | .00 |
| 301308577 | THORESEN, D | 301308577 | 03/01/09 | 01 150 003 | 6.87500 | 1,653.00 | 158,081.61 | 839.03 | .00 | .00 | .00 |
| 301308720 | TRAUGER, S | 301308720 | 02/01/09 | 01 150 003 | 5.87500 | 1,453.44 | 164,093.84 | 2,350.72 | .00 | .00 | .00 |
| 301308957 | K.PERUS, C | 301308957 | 03/01/09 | 01 150 003 | 6.62500 | 1,888.21 | 156,244.34 | -1,213.87 | .00 | 1,800.00 | .00 |
| 301309005 | DELIMA, C | 301309005 | 02/01/09 | 01 150 003 | 6.75000 | 2,948.09 | 312,943.29 | 1,185.37 | .00 | .00 | .00 |
| 301309105 | GONZALEZ, J | 301309105 | 02/01/09 | 01 150 003 | 5.75000 | 2,228.04 | 213,412.40 | 568.95 | .00 | .00 | .00 |
| 301309409 | Pemball, C | 301309409 | 03/01/09 | 01 150 003 | 5.75000 | 1,203.58 | 115,381.65 | 463.16 | .00 | .00 | .00 |
| 301309441 | STANK, W | 301309441 | 03/01/09 | 01 150 003 | 6.37500 | 1,514.08 | 136,003.38 | 953.66 | .00 | .00 | .00 |
| 301310009 | Van Sanden/Bradley | 301310009 | 03/01/09 | 01 150 003 | 6.47500 | 2,012.98 | 238,890.17 | 833.56 | .00 | .00 | .00 |
| 301310043 | Orsha, B | 301310043 | 03/01/09 | 01 150 003 | 6.37500 | 2,704.54 | 312,728.19 | 937.19 | .00 | .00 | .00 |

Page 4

February 12, 2009

**CU PAYMENT PROCESSING CENTER**
Mortgage Servicer System
Loan Trial Balance By Bank/Investor/Group

| Loan # Loan Name | Inv/Loan # | Due Date | Bk Inv Grp | Int Rate | Payment Amt | Prin Bal | T&I Bal | Loan Dept Bal | Unapplied Bal | Subsidy Bal |
|---|---|---|---|---|---|---|---|---|---|---|
| 2013155334 SWEENEY, P | 2013155334 | 03/01/09 | 01 100 003 | 5.50000 | 242.22 | 22,671.11 | 384.37 | .00 | .00 | .00 |
| 315001570 ROSARIO, E | 315001570 | 03/01/09 | 01 100 003 | 5.87500 | 2,141.68 | 237,688.68 | 2,880.84 | .00 | .00 | .00 |
| 315002162 MALONEY, M | 315002162 | 03/01/09 | 01 100 003 | 0.00000 | 1,408.22 | 119,692.80 | 1,218.17 | .00 | .00 | .00 |
| 315002395 GOLL, C | 315002395 | 03/01/09 | 01 100 003 | 5.12500 | 2,872.19 | 224,358.85 | 2,848.90 | .00 | .00 | .00 |
| 315002408 KIRKPATRICK, A | 315002408 | 03/01/09 | 01 100 003 | 5.87500 | 969.97 | 100,404.76 | 2,224.80 | .00 | .00 | .00 |
| 315002419 VAN DYKE, H | 315002419 | 03/01/09 | 01 150 003 | 6.00000 | 2,533.42 | 268,803.09 | 1,008.29 | .00 | .00 | .00 |
| 315002419 LONGO, C | 315002419 | 02/01/09 | 01 150 003 | 0.00000 | 2,759.33 | 286,606.85 | 813.54 | .00 | .00 | .00 |
| 315002864 GARCIA, G | 315002864 | 03/01/09 | 01 150 003 | 5.87500 | 1,911.69 | 162,658.06 | 1,622.10 | .00 | .00 | .00 |
| 315002869 POTTER, B | 315002869 | 03/01/09 | 01 150 003 | 5.87500 | 621.11 | 96,068.25 | .00 | .00 | .00 | .00 |
| 315002709 ERVEY, R | 315002709 | 03/01/09 | 01 150 003 | 5.87500 | 2,013.68 | 106,750.18 | -1,058.40 | .00 | .00 | .00 |
| 315002834 SAMLIUS, N | 315002834 | 03/01/09 | 01 150 003 | 5.87500 | 1,604.19 | 129,913.27 | 538.30 | .00 | .00 | .00 |
| 315002870 MCCAFFERTY, R | 315002870 | 03/01/09 | 01 150 003 | 5.62500 | 2,968.21 | 218,911.66 | 995.38 | .00 | .00 | .00 |
| 315002942 CARLUCCI, D | 315002942 | 03/01/09 | 01 150 003 | 5.87500 | 3,027.58 | 234,783.04 | 2,306.70 | .00 | .00 | .00 |
| 315002861 SAMPSON, B | 315002861 | 04/01/09 | 01 150 003 | 5.87500 | 2,046.17 | 192,766.80 | 2,102.62 | .00 | .00 | .00 |
| 315002907 HEREDIA, J | 315002907 | 02/01/09 | 01 150 003 | 5.87500 | 1,697.96 | 201,641 37 | 452.35 | .00 | .00 | .00 |
| 315003046 KRUGER, J | 315003046 | 03/01/09 | 01 150 003 | 5.87500 | 1,356.61 | 129,377 33 | 708.09 | .00 | .00 | .00 |
| 415000256 BARNES, S | 415000256 | 03/01/09 | 01 150 003 | 5.00000 | 1,702.09 | 167,6*0.88 | 1,360.40 | .00 | .00 | .00 |
| 3330000999 LALUMIA, M | 3330000999 | 03/01/09 | 01 150 003 | 5.37500 | 1,506.16 | 190,367 63 | 1,570.78 | .00 | .00 | .00 |
| 3330003704 ERVEY, JR, B | 3330003704 | 03/01/09 | 01 150 003 | 5.87500 | 1,661.86 | 181,814.44 | 1,194.10 | .00 | .00 | .00 |
| 3330003755 LOPRETE, R | 3330003755 | 03/01/09 | 01 150 003 | 5.25000 | 2,472.33 | 266,000 00 | 2,048.65 | .00 | .00 | .00 |
| 3330005766 CRYAN, C | 3330005766 | 03/01/09 | 01 150 003 | 5.00000 | 1,416.76 | 170,000 20 | 996.32 | .00 | .00 | .00 |
| 3330003760 GRUBER, K | 3330003760 | 03/01/09 | 01 153 003 | 5.00000 | 2,616.81 | 258,000 00 | 1,478.42 | .00 | .00 | .00 |
| 3330005703 PITTENGER, T | 3330005703 | 03/01/09 | 01 153 003 | 5.00000 | 1,311.97 | 170,000 00 | 1,343.90 | .00 | .00 | .00 |
| 109057 MC CAFFERTY, FRA | 200000100057 | 03/01/09 | 01 153 003 | 8.75000 | 456.00 | 28,817 47 | 302.87 | .00 | .00 | .00 |
| 108166 OSWALD, ANGELA | 200000108166 | 03/01/09 | 01 150 003 | 9.62500 | 1,415.71 | 99,205 15 | 377.22 | .00 | .00 | .00 |
| 108777 RAMNATH, NIAGARA | 20000108777 | 03/01/09 | 01 150 003 | 8.75000 | 1,235.90 | 80,025 12 | 1,713.42 | .00 | .00 | .00 |
| 107043 BAKER, FRANKLIN | F80000010704 3 | 03/01/09 | 01 150 003 | 8.75000 | 1,323.74 | 84,686 13 | 665.13 | .00 | .00 | .00 |
| 9000114 SCHULZ, GARRISON | 80000900014 | 04/01/09 | 01 150 004 | 7.62500 | 630.49 | 44,996 94 | 1,253.87 | .00 | .00 | .00 |
| 9000168 MAKSIMOW, VICTOR | 20000900016 8 | 03/01/09 | 01 150 003 | 7.75000 | 1,508.91 | 84,372.69 | 348.26 | .00 | .00 | .00 |
| 9000210 KUSMA, ROBERT | 80000900021 0 | 03/01/09 | 01 150 003 | 9.62500 | 1,796.00 | 133,466.46 | 1,592.10 | .00 | .00 | .00 |
| 9030246 SHIPOSH, JOSEPH | E00009000246 | 03/01/09 | 01 150 003 | 7.37500 | 808.10 | 20,801.28 | 900.96 | .00 | .00 | .00 |
| 9000275 KELLY, STEPHEN | 20000900276 | 03/01/09 | 01 150 003 | 9.62500 | 1,012.52 | 87,762.75 | 498.06 | .00 | .00 | .00 |
| 9000277 KHALER, HAROLD | 2000900277 | 03/01/09 | 01 150 003 | 9.62500 | 1,658.85 | 74,370.61 | 665.44 | .00 | .00 | .00 |
| 9000910 CARTER, CARL | 80000900910 | 02/01/09 | 01 150 003 | 7.50000 | 301.99 | 21,772.44 | 56.17 | .00 | .00 | .00 |
| **Group Totals:** | | | | | 139,376.42 | 12,784,782.57 | 77,947.94 | .00 | 2,494.00 | 0.00 |
| 301004322 ADAMS, J | 301004322 | 03/01/09 | 01 150 004 | 4.87500 | 1,066.59 | 209,661.61 | 736.29 | .00 | .00 | .00 |

Item Count = 75

Page 5

CU PAYMENT PROCESSING CENTER
Mortgage Servicer System
Loan Trial Balance By Bank/Investor/Group

February 12 2009

| Loan # | Loan Name | Inv Loan # | Due Date | Bk | Inv | Grp | Int Rate | Payment Amt | Prin Bal | T&I Bal | Loan Draft Bal | Unapplied Bal | Subsidy Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 301310653 | Murbaugh, J | 361310653 | 02/01/09 | 01 | 150 | 004 | 4.3700 | 2,329.65 | 207,601.85 | -92.41 | | | .00 |
| | | | | | | **Group Totals:** | | 4,043.46 | 606,463.85 | 711.68 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | **Item Count = 2** |
| 215001145 | SUCCI, J | 215001145 | 03/01/09 | 01 | 150 | 005 | 4.5000 | 2,049.22 | 134,804.84 | 1,968.30 | | | .00 |
| 301204189 | OLLIES, C | 301204189 | 03/01/09 | 01 | 150 | 005 | 4.0000 | 1,494.55 | 170,931.85 | 1,035.51 | | | .00 |
| 301004340 | POHL, J | 301004340 | 03/01/09 | 01 | 150 | 005 | 4.0250 | 2,178.42 | 233,358.71 | 1,905.65 | | | .00 |
| 301302810 | WARREN, W | 301302810 | 03/01/09 | 01 | 150 | 005 | 4.0000 | 373.57 | 45,390.68 | 944.09 | | | .00 |
| 301305367 | MOZEBON, B | 301305367 | 02/01/09 | 01 | 150 | 005 | 4.0000 | 2,111.91 | 274,987.84 | 613.92 | | | .00 |
| 301305379 | PARSONS, D | 301305379 | 03/01/09 | 01 | 150 | 005 | 4.3250 | 2,600.64 | 281,339.44 | 2,123.18 | | | .00 |
| 301305489 | Brynok, J | 301305489 | 03/01/09 | 01 | 150 | 005 | 4.3250 | 1,564.49 | 198,276.88 | 1,741.33 | | | .00 |
| 301305567 | MAGGIO, M | 301305567 | 03/01/09 | 01 | 150 | 005 | 4.3250 | 1,904.45 | 223,243.83 | 1,944.35 | | | .00 |
| 301305712 | MONGIOVI, M | 301305712 | 03/01/09 | 01 | 150 | 005 | 4.0250 | 1,823.97 | 219,937.35 | 782.76 | | | .00 |
| 301305906 | Rizzo&Whte, E | 301305906 | 03/01/09 | 01 | 150 | 005 | 4.0000 | 1,384.13 | 234,590.85 | 1,256.86 | | | .00 |
| 301305938 | Moran, W | 301305938 | 03/01/09 | 01 | 150 | 005 | 8.7500 | 1,960.96 | 185,093.41 | 1,648.94 | | | .00 |
| 301306915 | VAN SCHACK, R | 301306915 | 03/01/09 | 01 | 150 | 005 | 4.0000 | 1,954.91 | 226,638.86 | 1,766.71 | | | .00 |
| 301306105 | FOX, N | 301306105 | 03/01/09 | 01 | 150 | 005 | 4.0000 | 1,623.72 | 152,037.26 | 1,352.49 | | | .00 |
| 301306374 | JELBO, J | 301306374 | 03/01/09 | 01 | 150 | 005 | 4.0000 | 1,119.29 | 119,634.46 | 3,403.48 | | | .00 |
| 301306665* | Elliot, L | 301306665 | 03/01/09 | 01 | 150 | 005 | 4.0000 | 1,311.93 | 148,311.15 | 3,437.38 | | | .00 |
| 301325690 | Golombay, A | 301325690 | 03/01/09 | 01 | 150 | 005 | 4.0000 | 2,150.07 | 278,623.20 | 858.90 | | | .00 |
| 301336703 | Kononosky, H | 301336703 | 03/01/09 | 01 | 150 | 005 | 4.3750 | 2,704.85 | 246,237.58 | 706.90 | | | .00 |
| 301306441 | MILLER, R | 301306441 | 03/01/09 | 01 | 150 | 005 | 4.0000 | 1,868.08 | 114,071.26 | 294.70 | | | .00 |
| 301306098 | Servio, B | 301306098 | 03/01/09 | 01 | 150 | 005 | 4.0000 | 1,523.96 | 141,348.37 | 1,116.90 | | | .00 |
| 301356245 | GALDANO, V | 301356245 | 02/01/09 | 01 | 153 | 005 | 4.0000 | 2,474.59 | 304,807.61 | 880.91 | | | .00 |
| 301302822 | Hunton, J | 301302822 | 03/01/09 | 01 | 153 | 005 | 4.0000 | 409.07 | 76,068.35 | .00 | | | .00 |
| 331306418 | DEWALD, C | 331306418 | 03/01/09 | 01 | 155 | 005 | 4.6250 | 1,904.54 | 220,007.71 | 1,534.07 | | | .00 |
| 301306408 | Bankroms, B | 301306408 | 02/01/09 | 01 | 155 | 005 | 4.3750 | 1,916.58 | 242,403.81 | 328.05 | | | .00 |
| 315002743 | CYTRON, S | 315002743 | 03/01/09 | 01 | 155 | 005 | 5.7500 | 2,008.98 | 90,835.04 | 2,508.23 | | | .00 |
| 315202858 | WEISMAN, M | 315202858 | 04/01/09 | 01 | 150 | 005 | 4.8750 | 1,359.35 | 222,406.60 | 417.42 | | | .00 |
| 333000330 | MAGNOTTI, L | 333000330 | 03/01/09 | 01 | 150 | 008 | 5.0000 | 1,120.48 | 168,623.13 | .00 | | | .00 |
| 333000395 | MITHWAN, M | 333000395 | 02/01/09 | 01 | 150 | 008 | 5.1250 | 2,183.39 | 239,263.21 | .00 | | | .00 |
| 1330 | WILSON, WILLIAM E | 680000001330 | 03/01/09 | 01 | 150 | 005 | 6.0000 | 1,311.30 | 105,401.15 | 4,287.81 | | | .00 |
| | | | | | | **Group Totals:** | | 46,193.18 | 6,300,299.60 | 644.00 | 0.00 | 0.00 | 0.00 |
| | | | | | | | | | | | | | **Item Count = 28** |
| 301004202 | Chown, L | 301004202 | 02/01/09 | 01 | 150 | 006 | 4.5000 | 884.86 | 84,382.29 | 2,049.94 | | | .00 |
| 301304321 | CHAVKIN, M | 301304321 | 02/01/09 | 01 | 150 | 006 | 4.5000 | 1,495.67 | 384,118.36 | 140.91 | | | .00 |

CU PAYMENT PROCESSING CENTER
Mortgage Servicer System
Loan Trial Balance By Bank/Investor/Group

February 12, 2009

| Loan # | Loan Name | Inv/Loan # | Due Date | Bk Inv Grp | Int Rate | Payment Amt | Prin Bal | T&I Bal | Less Draft Bal | Unapplied Bal | Subsidy Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 301304089 | COPPINGER, K | 301304089 | 03/01/09 | 01 150 008 | 4.50000 | 801.67 | 78,030.28 | 944.66 | .00 | .00 | .00 |
| 301305228 | HESS, M | 301305228 | 03/01/09 | 01 -183 008 | 4.50000 | 1,343.17 | -74,482.07 | 592.15 | .00 | .00 | .00 |
| 301305316 | Shaw, J | 301305316 | 03/01/09 | 01 150 008 | 4.50000 | 1,883.71 | -177,104.46 | 216.96 | .00 | .00 | .00 |
| 301305467 | Johnson, B | 301305467 | 03/01/09 | 01 150 008 | 4.50000 | 1,067.89 | 63,013.65 | 980.63 | .00 | .00 | .00 |
| 301305468 | Yslamowski, B | 301305468 | 03/01/09 | 01 150 008 | 4.50000 | 1,278.17 | -38,917.20 | 1,495.08 | .00 | .00 | .00 |
| 301305522 | MATUCIO, P | 301305522 | 03/01/09 | 01 150 008 | 4.50000 | 1,833.10 | 227,807.60 | 641.10 | .00 | .00 | .00 |
| 301305526 | ROGERS, R | 301305526 | 03/01/09 | 01 150 008 | 4.50000 | 1,503.94 | 203,483.58 | 1,328.00 | .00 | .00 | .00 |
| 301305628 | Sharp/Tran, J | 301305628 | 02/01/09 | 01 150 008 | 4.50000 | 1,787.33 | 227,450.96 | -176.64 | .00 | .00 | .00 |
| 301305693 | Eichendbur, R | 301305693 | 03/01/09 | 01 150 008 | 5.12500 | 2,132.74 | 288,821.39 | -138.77 | .00 | .00 | .00 |
| 301305933 | Smulls, R | 301305933 | 03/01/09 | 01 150 008 | 4.50000 | 2,302.53 | 239,653.47 | 1,091.43 | .00 | .00 | .00 |
| 301305968 | Hamate, M | 301305968 | 03/01/09 | 01 150 008 | 4.50000 | 1,128.97 | 192,417.23 | 644.91 | .00 | .00 | .00 |
| 301305969 | HAMPELDT, J | 301305969 | 04/01/09 | 01 150 008 | 4.50000 | 1,252.27 | 138,003.36 | 1,135.94 | .00 | .00 | .00 |
| 301306066 | Liemann, B | 301306066 | 03/01/09 | 01 150 008 | 4.50000 | 1,677.62 | 184,053.12 | 1,473.57 | .00 | .00 | .00 |
| 301306121 | Turnbull/Cooper-Turn | 301306121 | 02/01/09 | 01 150 008 | 5.12500 | 3,013.76 | 364,737.91 | 1,213.19 | .00 | .00 | .00 |
| 301306296 | GOMEZ, N | 301306296 | 03/01/09 | 01 150 008 | 4.50000 | 1,287.78 | 143,260.00 | 805.68 | .00 | .00 | .00 |
| 301306578 | M Co, M | 301306578 | 02/01/09 | 31 150 208 | 4.50000 | 2,996.10 | 325,461.99 | 378.06 | .00 | .11 | .00 |
| 301307911 | BREI, V, I | 301307911 | 03/01/09 | 31 150 208 | 4.50000 | 2,446.49 | 286,812.35 | 839.61 | .00 | .11 | .00 |
| 301307942 | CORCELLA, A | 301307942 | 03/01/09 | 31 150 008 | 4.50000 | 1,690.69 | 249,808.29 | 704.44 | .00 | .11 | .00 |
| 301306015 | YOUSEF, A | 301306015 | 03/01/09 | 31 150 008 | 4.50000 | 1,107.63 | 118,020.64 | 1,447.03 | .00 | .11 | .00 |
| 301306077 | LUTZ, H | 301306077 | 03/01/09 | 31 150 008 | 4.50000 | 1,538.25 | 242,949.32 | 1,380.30 | .00 | .11 | .00 |
| 301309186 | Nguyen, Y | 301309186 | 03/01/09 | 31 150 008 | 4.75000 | 1,644.17 | 212,617.17 | 853.13 | .00 | .11 | .00 |
| 301306228 | Dinburg, B | 301306228 | 03/01/09 | 01 150 008 | 5.12500 | 1,735.10 | 203,697.72 | 642.81 | .00 | .11 | .00 |
| 301306308 | Rossy, F | 301306308 | 03/01/09 | 01 150 008 | 4.75000 | 1,630.07 | 182,390.07 | 872.53 | .00 | .11 | .00 |
| 301306547 | Habiger, J | 301306547 | 03/01/09 | 01 150 008 | 4.87500 | 2,340.03 | 282,478.93 | 1,278.01 | .00 | .11 | .00 |
| 301306598 | CICCIA, J | 301306598 | 03/01/09 | 01 150 008 | 4.62500 | 2,149.60 | 72,265.37 | 2,017.53 | .00 | .11 | .00 |
| 301306797 | DIPIERNO | 301306797 | 02/01/09 | 01 150 008 | 4.75000 | 1,303.67 | 214,773.20 | 198.23 | .00 | .11 | .00 |
| 301306261 | Churchman, B | 301306261 | 03/01/09 | 01 150 008 | 3.37500 | 1,893.93 | 273,018.23 | 198.74 | .00 | .11 | .00 |
| 301306328 | BARTON, A | 301306328 | 03/01/09 | 01 150 008 | 4.75000 | 1,081.25 | 225,123.54 | 1,022.31 | .00 | .11 | .00 |
| 301306539 | Talher, D | 301306539 | 03/01/09 | 01 150 008 | 4.75000 | 2,405.94 | 131,654.21 | 895.54 | .00 | .11 | .00 |
| 301310603 | Pizza, A | 301310603 | 03/01/09 | 01 150 008 | 5.12500 | 1,848.26 | 290,946.68 | 1,837.63 | .00 | .11 | .00 |
| 315003478 | LOMBARDI, C | 315003478 | 03/01/09 | 01 150 008 | 5.62500 | 1,187.25 | 338,810.90 | -.15 | .00 | .11 | .00 |
| 315202467 | GOODMAN, J | 315202467 | 03/01/09 | 01 150 008 | 5.82500 | 1,875.40 | 63,984.47 | -3,001.91 | .00 | .11 | .00 |
| 333000S186 | LILLY, J | 333000S186 | 03/01/09 | 01 150 008 | 6.00000 | 1,969.45 | 212,435.00 | 1,855.94 | .00 | .11 | .00 |
| 900S187 | JOBS, MARVIN | 900000000187 | 03/01/09 | 01 150 008 | 4.50000 | 1,289.74 | 94,685.91 | 4,380.57 | .00 | .11 | .00 |
| 900S189 | McNEE-VANS, BRIAN | 330000900189 | 03/01/09 | 01 150 008 | 5.50000 | 1,876.71 | 129,578.48 | 1,395.76 | .00 | .11 | .00 |

## CU PAYMENT PROCESSING CENTER
### Mortgage Servicer System
### Loan Trial Balance By Bank/Investor/Group

February 12, 2009

| Loan # | Loan Name | Inv Loan # | Due Date | Bk | Inv | Grp | Int Rate | Payment Amt | Prin Bal | T&I Bal | Loss Draft Bal | Unapplied Bal | Subsidy Bal |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9001870 | BETZ, KENNETH T. | 000209081970 | 02/01/09 | 01 | 150 | 005 | 6.50000 | 1,790.54 | 129,838.43 | 507.28 | .00 | .00 | .00 |
| | | | | | | Group Totals: | | 99,878.82 | | 30,299.89 | 0.00 | .00 | .00 |
| | | | | | | | | | 7,991,892.88 | | | | Item Count = 39 |
| 3330000326 | DONAH,IE, B | 3330028326 | 03/01/09 | 01 | 150 | 007 | 6.75000 | 1,347.96 | 134,442.46 | 945.85 | .00 | .00 | .00 |
| 3330000407 | DAVIEAU, F | 3330000407 | 03/01/09 | 01 | 150 | 007 | 6.62500 | 1,642.94 | 261,745.63 | 1,847.62 | .00 | .00 | .00 |
| 9000090 | HARDICK | 000009000090 | 03/01/09 | 01 | 150 | 007 | 6.75000 | 713.07 | 32,390.80 | 1,171.18 | .00 | .00 | .00 |
| 9000081 | BELLMONT, ROBERT | 000009000081 | 02/01/09 | 01 | 150 | 007 | 6.62500 | 1,003.77 | 48,863.00 | 333.04 | .00 | .00 | .00 |
| 9001107 | GILLEN, RAYMOND | 000009000107 | 03/01/09 | 01 | 150 | 007 | 6.62500 | 778.82 | 71,968.37 | 981.11 | .00 | .00 | .00 |
| 9000109 | GLASS, LEON | 000009000109 | 03/01/29 | 01 | 150 | 007 | 6.75000 | 1,988.42 | 195,317.18 | 1,099.90 | .00 | .00 | .00 |
| 9001295 | KRAFT, JOSEPH | 000009000129 | 02/01/29 | 01 | 150 | 007 | 6.62500 | 644.73 | 58,581.96 | 1,382.16 | .00 | .00 | .00 |
| 9000166 | EGAN, HAROLD | 000009000166 | 03/01/29 | 01 | 150 | 007 | 5.75000 | 1,093.74 | 72,419.72 | 779.90 | .00 | .00 | .00 |
| 9000390 | MARTOCCI, JOSEPH | 000009000390 | 03/01/09 | 01 | 150 | 007 | 4.87500 | 911.48 | 19,912.06 | 1,222.05 | .00 | 28.46 | .00 |
| 9000273 | DAVE, PARITOSH | 000009000273 | 03/01/09 | 01 | 150 | 007 | 4.00000 | 1,280.34 | 92,919.56 | 1,713.85 | .00 | .00 | .00 |
| 9000301 | WONG, BRIAN | 000009000301 | 02/01/09 | 01 | 152 | 007 | 6.90000 | 1,057.80 | 40,848.81 | 347.84 | .00 | .00 | .00 |
| 9000303 | CARROLL, JOSEPH | 000009000303 | 02/01/09 | 01 | 152 | 007 | 6.45000 | 1,277.62 | 77,064.16 | 980.54 | .00 | .00 | .00 |
| 9000312 | DAVIS, JOSH-A | 000009000312 | 03/01/09 | 01 | 152 | 007 | 6.50000 | 322.57 | 38,602.96 | -46.80 | .00 | .00 | .00 |
| 9001504 | YOUSEF, AMIN | 000009001504 | 03/01/09 | 01 | 153 | 007 | 6.50000 | 1,711.76 | 125,233.93 | 710.12 | .00 | .00 | .00 |
| 9001504 | YUEN, HARVARD | 000009001524 | 03/01/09 | 01 | 152 | 007 | 6.50000 | 1,961.73 | 83,743.22 | 1,360.76 | .00 | .00 | .00 |
| 9001604 | EKSTROM, OKE | 000009001604 | 04/01/09 | 01 | 155 | 007 | 6.50000 | 693.34 | 65,610.62 | 276.50 | .00 | .00 | .00 |
| 9001653 | HOCKENBERRY, PA | 000009001653 | 03/01/09 | 01 | 155 | 007 | 6.50000 | 1,000.27 | 62,587.03 | 858.41 | .00 | .00 | .00 |
| 9001659 | CICCOLELLA, MATT | 000009001659 | 03/01/09 | 01 | 155 | 007 | 6.50000 | 1,063.67 | 6,952.62 | 1,877.51 | .00 | .00 | .00 |
| 9002185 | MORGAN, RICHARD | 000009002185 | 03/01/09 | 01 | 155 | 007 | 6.87500 | 1,375.28 | 76,666.47 | 792.58 | .00 | .00 | .00 |
| 9002204 | BAUER, JEREMY | 000009002204 | 03/01/09 | 01 | 150 | 007 | 6.87500 | 1,063.07 | 83,945.30 | 748.47 | .00 | .00 | .00 |
| | | | | | | Group Totals: | | 22,529.17 | | 18,997.77 | 0.00 | 28.46 | 0.00 |
| | | | | | | | | | 1,935,371.98 | | | | Item Count = 39 |

February 12, 2009

## CL PAYMENT PROCESSING CENTER
Mortgage Servicer System
Loan Trial Balance By Bank/Investor/Group

| Bk | Inv | Grp | Int Rate | Payment Amt | Prin Bal | T&I Bal | Less Cmb Bal | Unapplied Bal | Subsidy Bal |
|----|-----|-----|----------|-------------|----------|---------|--------------|---------------|-------------|
| 01 | 180 | 000 | 4.37500 | 1,442.03 | 226,680.16 | 1,960.00 | .00 | .00 | .00 |
| Group Totals: | | | | 1,442.03 | 226,680.16 | 1,960.00 | 0.00 | 0.00 | 0.00 |
| Investor Totals: | | | | 393,998.60 | 34,174,178.60 | 245,773.43 | 0.00 | 3,309.40 | 0.00 Item Count = 1 |
| Bank Totals: | | | | 393,998.60 | 34,174,178.60 | 245,773.43 | 0.00 | 3,309.44 | 0.00 Item Count = 228 |
| Grand Totals: | | | | 393,998.60 | 34,174,178.60 | 245,773.43 | 0.00 | 3,309.44 | 0.00 Item Count = 228 |

Inv Loan #: 3330038910 03/01/09

| Loan # | Loan Name |
|--------|-----------|
| 3330038910 | LANDA, J |

Page 6

# EXHIBIT C

| Account / Name | Balance | | | | Term | Date | Amount | Property Address | Zip | Original Amount | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 330000615 PITTENGER, T | $135,181.79 | 01 | 150 | 002 | 240 | 5/1/2026 | $1,303.72 | 28 YATES A NEWTON NJ | 07860 | $145,000.00 | PICATINNY Single Family Dwelling |
| 107157 LOPRETE, ROCCO G. | $160,572.21 | 01 | 150 | 003 | 360 | 1/1/2032 | $1,301.53 | 9 CATAN D FLANDERS NJ | 07836 | $177,000.00 | PICATINNY Single Family Dwelling |
| 215001935 LEVINSON, S | $181,935.08 | 01 | 150 | 003 | 360 | 1/1/2033 | $2,252.22 | 76 YACHT JEFFERSON NJ | 07849 | $198,750.00 | PICATINNY Single Family Dwelling |
| 301310649 Donnelly, J | $243,826.90 | 01 | 150 | 003 | 360 | 11/1/2036 | $3,487.17 | 25 CROWN SPARTA NJ | 07871 | $250,000.00 | PICATINNY Single Family Dwelling |
| 301310876 COSME, J | $269,591.73 | 01 | 150 | 003 | 360 | 2/1/2036 | $3,315.67 | 806 EAST B HACKETTSTN NJ | 07840 | $279,200.00 | PICATINNY Single Family Dwelling |
| 330000341 SHASA-ROTTLE, H | $241,855.83 | 01 | 150 | 003 | 360 | 4/1/2036 | $1,209.94 | 15 ORCHA ROCKAWA NJ | 07866 | $250,000.00 | PICATINNY Single Family Dwelling |
| 330000431 COLON, N | $397,525.59 | 01 | 150 | 003 | 360 | 5/1/2036 | $2,237.13 | 173 GROVE VERONA NJ | 07044 | $410,000.00 | PICATINNY Single Family Dwelling |
| 330000819 ALESANDRO, R | $403,358.82 | 01 | 150 | 003 | 360 | 6/1/2036 | $2,295.77 | 141 KINNEB KINNELON NJ | 07405 | $415,000.00 | PICATINNY Single Family Dwelling |
| 330000877 CAULFIELD, JR, M | $197,584.12 | 01 | 150 | 003 | 360 | 7/1/2036 | $1,334.31 | 10 LOYOLA HOPATCON NJ | 07843 | $207,000.00 | PICATINNY Single Family Dwelling |
| 330000887 FRIEDMAN, M | $293,348.04 | 01 | 150 | 003 | 360 | 7/1/2036 | $1,064.97 | 68 KIRKW C HAMBURG NJ | 07419 | $301,500.00 | PICATINNY Single Family Dwelling |
| 330000889 McALISTER, D | $376,635.47 | 01 | 150 | 003 | 360 | 7/1/2036 | $1,854.10 | 17 NEW RC ROCKAWA NJ | 07842 | $387,000.00 | PICATINNY Single Family Dwelling |
| 330000992 McGRATH, J | $355,512.66 | 01 | 150 | 003 | 360 | 7/1/2036 | $2,942.36 | 7 SLEEPY H BYRAM AK NJ | 07821 | $365,000.00 | PICATINNY Single Family Dwelling |
| 330001233 PASTRANA, J | $222,484.20 | 01 | 150 | 003 | 360 | 9/1/2036 | $2,048.15 | RM2 BOX 25 STROUDSB PA | 18360 | $226,400.00 | PICATINNY Single Family Dwelling |
| 330001410 LUTZ, J | $347,810.04 | 01 | 150 | 003 | 360 | 10/1/2036 | $2,182.91 | 6 CARLA Ct ROCKAWA NJ | 07866 | $360,000.00 | PICATINNY Single Family Dwelling |
| 330001700 CISZEWSKI, R | $125,611.22 | 01 | 150 | 003 | 360 | 11/1/2036 | $2,142.35 | 31 VERNON WOODBRI NJ | 07077 | $338,530.00 | PICATINNY Single Family Dwelling |
| 330001896 MARKSON, M | $137,349.94 | 01 | 150 | 003 | 360 | 12/1/2036 | $991.03 | 2308 FRAN ROCKAWA NJ | 07866 | $128,800.00 | PICATINNY CONDOMINIUM |
| 330001919 CASSIDY, R | $213,614.39 | 01 | 150 | 003 | 360 | 1/1/2037 | $1,992.26 | 266 HANDA WEST DOV VT | 05356 | $141,000.00 | PICATINNY CONDOMINIUM |
| 330002050 HOPLER, M | $249,907.81 | 01 | 150 | 003 | 360 | 1/2/2037 | $184.54 | 705 West C CHANDLER AZ | 85248 | $218,000.00 | PICATINNY CONDOMINIUM |
| 330002101 SHAPIRO, B | $332,661.40 | 01 | 150 | 003 | 360 | 2/1/2037 | $404.28 | 35 OXFORD EAST BRU NJ | 08816 | $249,000.00 | PICATINNY CONDOMINIUM |
| 330002175 GRUBER, K | $396,182.83 | 01 | 150 | 003 | 360 | 2/1/2037 | $1,674.18 | 11 PHILIP'T SUSSEX NJ | 07461 | $340,000.00 | PICATINNY Single Family Dwelling |
| 330002216 ABULMAGD, T | $244,820.74 | 01 | 150 | 003 | 360 | 2/1/2037 | $2,029.09 | 247 RIVER PISCATAW NJ | 08854 | $375,250.00 | PICATINNY Single Family Dwelling |
| 330002274 DIPPEL, R E | $223,257.59 | 01 | 150 | 003 | 360 | 3/1/2037 | $1,842.37 | 1 OLD WK HAMPTON NJ | 07860 | $249,950.00 | PICATINNY Single Family Dwelling |
| 330002295 COFFMAN, D | $254,787.24 | 01 | 150 | 003 | 360 | 4/4/2037 | $1,578.60 | 244 ROUTE FRELINGH NJ | 07846 | $228,000.00 | PICATINNY Single Family Dwelling |
| 330002345 SCHIMPF, C | $152,491.21 | 01 | 150 | 003 | 360 | 3/1/2037 | $1,126.96 | 52 RIDGE MORRISTO NJ | 07960 | $260,000.00 | PICATINNY CONDOMINIUM |
| 330002397 MUTNICK, N | $189,146.01 | 01 | 150 | 003 | 360 | 3/1/2037 | $916.40 | 55 UPPER PARSIPPAN NJ | 07834 | $156,000.00 | PICATINNY Single Family Dwelling |
| 330002748 KUKEL, J | $221,126.47 | 01 | 150 | 003 | 360 | 6/1/2037 | $3,084.35 | 167 BLOCK SHICKSHIN PA | 18655 | $195,000.00 | PICATINNY Single Family Dwelling |
| 330002764 BINTER, E | $239,937.69 | 01 | 150 | 003 | 360 | 7/1/2037 | $3,419.53 | 121 LAURE VERNON TN NJ | 07461 | $225,000.00 | PICATINNY Single Family Dwelling |
| 330002804 BONTE, M | $350,736.24 | 01 | 150 | 003 | 360 | 7/1/2037 | $1,491.94 | 4 RIDGE RC STANHOPE NJ | 07874 | $244,000.00 | PICATINNY Single Family Dwelling |
| 330002928 OLSEN, N | $217,115.45 | 01 | 150 | 003 | 360 | 7/1/2037 | $2,004.64 | 26 WEST G VERNON TN NJ | 07418 | $356,400.00 | PICATINNY Single Family Dwelling |
| 330003095 SABA, JR. | $187,940.45 | 01 | 150 | 003 | 360 | 11/1/2037 | $1,486.29 | 24 SUNDAN HARDYSTO NJ | 07419 | $220,000.00 | PICATINNY Single Family Dwelling |
| 330003136 CUOMO, K | $212,809.54 | 01 | 150 | 003 | 180 | 9/1/2022 | $1,399.53 | 126 BROOK STANHOPE NJ | 07874 | $190,500.00 | PICATINNY Single Family Dwelling |
| 330003243 LYONS, T | $205,272.66 | 01 | 150 | 003 | 360 | 11/1/2037 | $2,178.91 | 34 MOUNT BYRAM NJ | 07871 | $224,750.00 | PICATINNY Single Family Dwelling |
| 330003906 HYPES, P | $152,153.01 | 01 | 150 | 003 | 240 | 11/1/2037 | $2,557.03 | 568 DELL P STANHOPE NJ | 07874 | $208,000.00 | PICATINNY Single Family Dwelling |
| 330003593 STANUCK | $289,047.16 | 01 | 150 | 003 | 240 | 11/1/2027 | $1,640.05 | 845 BERGEN WHARTON NJ | 07885 | $155,500.00 | PICATINNY Single Family Dwelling |
| 330003597 VILLANOVA, P | $230,393.28 | 01 | 150 | 003 | 360 | 11/1/2037 | $2,056.03 | 133 FAIRW EAST STRO PA | 18301 | $352,600.00 | PICATINNY Single Family Dwelling |
| 330003642 MANSER, N | $363,588.89 | 01 | 150 | 003 | 360 | 12/1/2037 | $2,166.71 | 334 W. DEL JEFFERSON NJ | 07885 | $233,000.00 | PICATINNY 2 TO 4 FAMILY |
| 330003754 GORMAN, JR, P | | 01 | 150 | 003 | 360 | 12/1/2037 | $1,991.71 | 20 SIGNAL SPARTA NJ | 07871 | $367,500.00 | PICATINNY PLANNED UNIT DEVELOPMENT |

| Account | Name | Amount | | Block | Lot | Term | Payment | Address | Zip | Loan Amount | Jurisdiction / Description |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 333000404359 | SCOTT, E | $314,158.25 | 01 | 150 | 003 | 360 8/1/2038 | $2,974.98 | 80 SOUTH SUCCASUN NJ | 07876 | $315,000.00 | PICATINNY Single Family Dwelling |
| 333000404404 | HORNING, D | $163,909.66 | 01 | 150 | 003 | 360 5/1/2038 | $2,630.98 | 259 ROBYN TOBYHANN PA | 18347 | $165,050.00 | PICATINNY Single Family Dwelling |
| 333000404513 | STOVER, J | $215,329.07 | 01 | 150 | 003 | 360 5/1/2038 | $1,396.02 | 85 STOCKT PARSIPPAN NJ | 07950 | $216,900.00 | PICATINNY Single Family Dwelling |
| 333000404529 | SALAZAR; JR, G | $176,280.34 | 01 | 150 | 003 | 360 7/1/2038 | $837.64 | 322 RICHAI WHARTON NJ | 07885 | $180,000.00 | PICATINNY CONDOMINIUM |
| 333000404602 | BERTA, P | $173,732.50 | 01 | 150 | 003 | 360 8/1/2038 | $0.00 | 43 SAMME DOVER NJ | 07801 | $175,000.00 | PICATINNY Single Family Dwelling |
| 333000404650 | CARRERO, M | $193,444.59 | 01 | 150 | 003 | 360 4/1/2038 | $1,070.88 | 20 EAST ST WHARTON NJ | 07885 | $195,950.00 | PICATINNY Single Family Dwelling |
| 333000404771 | KIMBALL, D | $305,270.34 | 01 | 150 | 003 | 360 7/1/2038 | $1,454.39 | 19 MIRROF OAK RIDGE NJ | 07438 | $306,650.00 | PICATINNY Single Family Dwelling |
| 333000404845 | JOENS, T | $175,392.39 | 01 | 150 | 003 | 360 7/1/2038 | $2,117.24 | 5397 BUCK BATH NY | 14810 | $176,300.00 | PICATINNY Single Family Dwelling |
| 333000404895 | ARMIGER, P | $244,465.53 | 01 | 150 | 003 | 360 8/1/2038 | $591.28 | 143 MINE I HACKETTS NJ | 07840 | $245,700.00 | PICATINNY Single Family Dwelling |
| 333000404959 | ROUNSAVILLE, K | $295,140.59 | 01 | 150 | 003 | 360 8/1/2038 | $2,379.06 | 96 WEST S WHARTON NJ | 07205 | $297,500.00 | PICATINNY Single Family Dwelling |
| 333000405103 | PAYNE, R | $223,531.12 | 01 | 150 | 003 | 360 10/1/2038 | $1,205.22 | 86 WILDER HILLSIDE NJ | 07866 | $224,000.00 | PICATINNY Single Family Dwelling |
| 333000405226 | ZLOTNICK, S | $278,669.91 | 01 | 150 | 003 | 360 9/1/2038 | $3,665.45 | 178 WEST I ROCKAWA NJ | 07843 | $280,000.00 | PICATINNY Single Family Dwelling |
| 333000405254 | PROSSER, N | $231,614.47 | 01 | 150 | 003 | 360 12/1/2038 | $2,043.01 | 125 MARN HOPATCO NJ | 07850 | $232,000.00 | PICATINNY Single Family Dwelling |
| 333000405273 | FIORELLO, J | $245,755.10 | 01 | 150 | 003 | 360 12/1/2038 | $2,566.20 | 42 Washin ROXBURY NJ | 07960 | $246,000.00 | PICATINNY Single Family Dwelling |
| 333000405369 | HERRERA, L | $328,000.00 | 01 | 150 | 003 | 360 12/1/2038 | $2,135.76 | 13 Maxwel MORRISTO NJ | 07825 | $328,000.00 | PICATINNY Single Family Dwelling |
| 333000405404 | WEED, J | $304,361.59 | 01 | 150 | 003 | 360 11/1/2038 | $3,200.40 | 282 KEIRS BLAIRSTOWN NJ | 07866 | $305,000.00 | PICATINNY Single Family Dwelling |
| 333000405439 | FLYNN, M | $227,045.91 | 01 | 150 | 003 | 360 11/1/2038 | $4,037.76 | 122 Farvin ROCKAWA NJ | 07840 | $227,500.00 | PICATINNY Single Family Dwelling |
| 333000405457 | FEBUS, D | $239,000.00 | 01 | 150 | 003 | 360 1/1/2039 | $564.16 | 559 WEST HACKETTS NJ | 07843 | $239,000.00 | PICATINNY Single Family Dwelling |
| 301004322 | ADAMS, J | $209,978.99 | 01 | 150 | 004 | 360 10/1/2095 | $1,651.40 | 3 WILLIAM HOPATCO NJ | 07803 | $295,520.00 | PICATINNY Planned Unit Development |
| 333000405085 | LOHNINGER, K | $228,320.47 | 01 | 150 | 004 | 360 2/1/2096 | $1,094.17 | 400 EAST R MINE HILL NJ | 07803 | $240,000.00 | PICATINNY CONDOMINIUM |
| 301057005 | MACKINSON, D | $20,608.95 | 01 | 150 | 005 | 360 12/1/2034 | $1,006.11 | 39 WEST B MOUNT A NJ | 07856 | $120,000.00 | PICATINNY Single Family Dwelling |
| | | $14,104,384.18 | | | | | | | | | |

# EXHIBIT D



**ATTORNEYS AT LAW**

Saiber LLC
One Gateway Center · 13th Floor
Newark, New Jersey · 07102-5311
Tel 973.622.3333 · Fax 973.622.3349
www.saiber.com

New York | Atlantic City | Point Pleasant Beach

WILLIAM F. MADERER • ◆
DAVID J. D'ALOIA
JEFFREY W. LORELL ◆
DAVID R. GROSS ●
SEAN R. KELLY • ●
ARNOLD B. CALMANN ●
JOAN M. SCHWAB
JENNINE DiSOMMA ●
JAMES H. FORTE
VINCENT F. PAPALIA
RANDI SCHILLINGER ● ◇
MICHAEL J. GERAGHTY ●
NINO A. COVIELLO ●
AGNES I. RYMER ●
JAMES H. GIANNINOTO ◇
NANCY A. WASHINGTON
MARC C. SINGER ● ◇
SETH E. ZUCKERMAN
MARC E. WOLIN ◇
DAVID A. COHEN
JEFFREY SOOS
DANALYNN T. COLAO ●

SAMUEL S. SAIBER
1930-2002
GEOFFREY GAULKIN
ALFRED M. WOLIN
SPECIAL COUNSEL
DAVID M. SATZ, JR.
MORTON GOLDFEIN ●
DAVID J. SATZ
HEIDI WEGRYN GROSS
OF COUNSEL
GUY S. MICHAEL ●
ROBERT J. CARROLL
MICHAEL J. WILDES ●
ROBERT B. NUSSBAUM
MELISSA A. PROVOST
CHRISTINA L. FICHERA ●
COUNSEL
◆ MEMBER OF NJ & NY BARS
◇ MEMBER OF NJ & PA BARS
□ MEMBER OF NJ, NY & CT BARS
◆ CERTIFIED BY THE SUPREME
COURT OF NEW JERSEY AS A CIVIL
AND CRIMINAL TRIAL ATTORNEY
● CERTIFIED BY THE SUPREME
COURT OF NEW JERSEY AS A CIVIL
TRIAL ATTORNEY

JENNIFER R. O'CONNOR
PAOLA CIAPPINA HEMSLEY
COLIN R. ROBINSON ◇
MARK A. RONEY
CARA L. MIGLIACCIO
JACK CHAN ●
DANIELE N. HANKIN ●
JEFFREY J. PASEK
JOHN H. NOORLANDER ●
ANDREW D. LA FIURA ●
LAUREN M. LIMAURO
RINA GRASSOTTI ●
UMA YOUNG KANG ◇
KATHERINE A. ESCANLAR ●
JAKOB B. HALPERN
MICHAEL J. GROHS ●
SANJAY MANOCHA ●
MATTHEW A. CATANIA ●
ANTONIO A. GONZALEZ ●
AMY K. SMITH ●
JANE JHUN ●
GERI L. ALBIN
CHRISTLE R. GARVEY
CHRISTOPHER J. TURANO

February 24, 2009

<u>Via</u> <u>Telecopy</u> (202-752-6480) <u>and</u> <u>Regular</u> <u>Mail</u>
Miriam Smolen, Esq.
Assistant General Counsel
Federal National Mortgage Association
3900 Wisconsin Avenue, N.W.
Washington, DC 20016

      Re:  <u>Picatinny Federal Credit Union v.</u>
            <u>Federal National Mortgage Association</u>

Dear Ms. Smolen:

      Pursuant our recent discussions and exchange of e-mails today, I write on behalf of Picatinny Federal Credit Union ("Picatinny") to demand that the Federal National Mortgage Association ("Fannie Mae") immediately indorse to the order of Picatinny the 58 promissory notes and assign the corresponding 58 mortgages that it wrongfully received from U.S. Mortgage Corp. ("U.S. Mortgage"), and account for and return all payments received in connection therewith. By e-mail dated February 25, 2009, I provided you with a spreadsheet identifying the loan number, borrower, current principal balance, maturity date and other information relating to each of these loans.

      At your request, I previously provided you with the Declaration of Daniel Mathews who stated under penalty of perjury that U.S. Mortgage did not have the authority to indorse allonges or execute assignments on behalf of Picatinny. Each of the loans identified in the spreadsheet was transferred to Fannie Mae as a result of allonges and assignments purportedly

{00557149.DOC}



ATTORNEYS AT LAW

Miriam Smolen, Esq.
February 24, 2009
Page 2


from Picatinny that were executed by Michael J. McGrath, Jr.
who, as Fannie Mae knew, was an officer of U.S. Mortgage.
Although Mr. McGrath also purported to be an Assistant Vice
President of Picatinny, he was not.  Nor was he authorized to
execute any allonges or assignments on Picatinny's behalf.

     Since its unauthorized execution of those allonges and
assignments, U.S. Mortgage has admitted that Mr. McGrath did not
have the authority to execute them.  In a letter dated February
12, 2009 addressed to Picatinny, Andrew Liput, the General
Counsel of U.S. Mortgage, advised Picatinny:

          We regret to inform you that we have discovered
          that our servicing system has been producing
          erroneous servicing portfolio reports to your
          credit union.  The exact time period in question
          is still under investigation.  At this point in
          our continuing investigation we believe that the
          actual number of loans were [sic] have held for
          servicing for you are 228 loans totaling
          $34,174,179.09.  A trial balance as of today is
          attached with complete details.

          Any loan not on this trial balance you believe
          you owned appears to have been sold without your
          authority to Fannie Mae and the sales proceeds
          were subsequently diverted.  At this point in our
          investigation we believe that 40 loans were sold
          without your authorization.  Thus it appears that
          a total of $9,491.133.85 in sales proceeds were
          diverted.  Please provide us with a detailed
          listing of the loans you feel are missing from
          the enclosed trial balance so we can cross
          reference your records with our and verify the
          information.

          The reason that you were unable to detect this
          event was the creation of duplicate servicing
          records that provided for servicing payments to
          both your credit union and Fannie Mae.


{00557149.DOC}



Miriam Smolen, Esq.
February 24, 2009
Page 3


A copy of Mr. Liput's letter and the attached trial balance is
enclosed for your review.

        After receiving Mr. Liput's letter, Picatinny compared
the U.S Mortgage trial balance as of February 12, 2009 with its
own funding records and determined that U.S. Mortgage had
substantially understated the number of loans sold without
Picatinny's knowledge or authorization to Fannie Mae.  According
to Picatinny's records, there are 58 loans that should be, but
are not, in its loan portfolio held by CU National and the total
dollar amount outstanding on those loans is $14,104.384.14.
Each of those loans is identified in the spreadsheet I
previously provided to you.

        Given that these loans were sold to Fannie Mae over
Picatinny's unauthorized indorsement and without Picatinny's
knowledge and authorization, Fannie Mae is not a person entitled
to enforce the underlying notes under the Uniform Commercial
Code ("UCC").  Under UCC 3-403 or, in New Jersey, N.J.S.A.
12A:3-403(a), "an unauthorized signature is ineffective except
as the signature of the unauthorized signer in favor of a person
who in good faith pays the instrument or takes it for value."
As Comment 2 to this section explains, "[t]he except clause of
the first sentence of subsection (a) states the generally
accepted rule that the unauthorized signature, while it is
wholly inoperative as that of the person whose name is signed,
is effective to impose liability upon the signature or to
transfer any rights that the signer may have in the instrument."

        Application of UCC §3-403(a) makes clear that Fannie
Mae did not acquire any of Picatinny's rights when it received
the allonges and assignments through a chain of indorsements
that began with Picatinny's unauthorized indorsement.  Because
Mr. McGrath's unauthorized indorsement on behalf of Picatinny
was ineffective to transfer Picatinny's rights under the notes,
Fannie Mae did not acquire Picatinny's rights thereunder.
Therefore, Fannie Mae is in wrongful possession of Picatinny's
property.  See Santos v. First Nat'l State Bank of New Jersey,
186 N.J. Super. 52, 72 (App. Div. 1982) (holding that, when a

{00557149.DOC}



Saiber

ATTORNEYS AT LAW

Miriam Smolen, Esq.
February 24, 2009
Page 4


check is lacking the indorsement of the payee, "a person
attempting to negotiate the check may forge plaintiff's
signature.  But a forged indorsement is wholly inoperative, and
the possessor has no right to enforce payment by any party to
the check").

     During our discussions, you mentioned that Fannie Mae
believed it may be a holder in due course of the notes and, if
so, took the notes free and clear of all defenses and claims.
Fannie Mae, however, is not a holder of the notes and thus
cannot be a holder in due course.  The definition of a "holder"
of a negotiable instrument payable to an identified person is
the identified person if he or she is in possession of the
instrument.  See N.J.S.A. 12A:1-201(20).  Because the notes are
not payable to Fannie Mae, it is not a holder under this
section.

     Fannie Mae also did not become a holder of the notes
when they were transferred from Picatinny to U.S. Mortgage by
means of the unauthorized indorsement of Picatinny and then from
U.S. Mortgage to Fannie Mae.  Although UCC §3-201 permits a
party to be a holder if the instrument was transferred by a
negotiation, the absence of an authorized indorsement by
Picatinny on the notes precludes Fannie Mae from taking the
notes by a negotiation.  See N.J.S.A. 12A:3-201(b) ("if an
instrument is payable to an identified person, negotiation
requires transfer of possession of the instrument and its
indorsement by the holder").

     In sum, Fannie Mae has no right to hold and receive
payment on the notes and mortgages.  Picatinny hereby demands
that Fannie Mae immediately indorse allonges to each of the
notes and execute assignments of each of the mortgages
identified in the spreadsheet in favor of Picatinny and disgorge
all payments received thereon.  Please be advised, that if
Fannie Mae does not deliver to my office the requested allonges
and assignments and remit all payments collected on or before
noon on Friday, February 27, Picatinny shall file suit against
Fannie Mae without further notice.



**Saiber**
ATTORNEYS AT LAW

Miriam Smolen, Esq.
February 24, 2009
Page 5


Please be guided accordingly.

Very truly yours,

JAMES H. FORTE

JHF/cr
Enclosures

# EXHIBIT 2

Alan E. Kraus, Esq.
LATHAM & WATKINS LLP
One Newark Center, 16th Floor
Newark, New Jersey 07101-3174
Telephone: (973) 639-1234
Facsimile: (973) 639-7298

Attorneys for Defendant Federal National
Mortgage Association

<div align="center">

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

</div>

| | |
|---|---|
| PICATINNY FEDERAL CREDIT UNION, | Case No.: 2:09-cv-01295-JAG-MCA |
| Plaintiff, | |
| v. | The Honorable Joseph A. Greenaway, Jr., U.S.D.J. |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | The Honorable Madeline C. Arleo, U.S.M.J. |
| Defendant. | |

<div align="center">

**ANSWER AND AFFIRMATIVE DEFENSES OF FEDERAL NATIONAL MORTGAGE ASSOCIATION**

</div>

As and for its Answer and Affirmative Defenses in response to the Complaint of Plaintiff Picatinny Federal Credit Union ("Picatinny"), dated February 27, 2009, Defendant Federal National Mortgage Association ("Fannie Mae"), by and through its attorneys, states as follows:

1.    Fannie Mae admits that Picatinny has brought this suit based on Picatinny's assertion that Fannie Mae has unlawfully and unjustifiably refused to turn over various mortgage loans. Fannie Mae denies that there is any basis in fact or in law for those allegations and denies that Picatinny has any valid ownership interest in the mortgage loans in question.

2.    Fannie Mae admits that it has been made aware that CU National Mortgage, LLC ("CU National") and U.S. Mortgage Corp. ("U.S. Mortgage") have allegedly engaged in

fraudulent conduct by selling or assigning certain loans without Picatinny's knowledge. Fannie Mae is without knowledge or information sufficient to form a belief as to whether certain notes and mortgages initially owned by Picatinny that were sold by CU National or U.S. Mortgage to Fannie Mae were sold without Picatinny's knowledge or whether Picatinny received the proceeds from those sales and, therefore, Fannie Mae denies these allegations. Fannie Mae denies that any notes and mortgages sold by CU National or U.S. Mortgage to Fannie Mae were sold without Picatinny's authorization. Fannie Mae is without knowledge or information sufficient to form a belief regarding what claims Picatinny has filed against CU National or U.S. Mortgage or the status of any such proceeding, but Fannie Mae denies that any such litigation would be a "related action" pending before this Court. Fannie Mae admits that both CU National and U.S. Mortgage have filed for Chapter 11 bankruptcy protection.

3.    Fannie Mae admits that certain notes and mortgages were sold by CU National and/or U.S. Mortgage to Fannie Mae in the manner described in the first three sentences of Paragraph 3 of the Complaint. Fannie Mae is without knowledge or information sufficient to form a belief as to whether Mr. McGrath was an Assistant Vice President of Picatinny but denies the allegation that Mr. McGrath was not authorized to execute allonges or assignments on behalf of Picatinny for the notes and mortgages at issue.

4.    Fannie Mae is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 4 of the Complaint, and, therefore, Fannie Mae denies these allegations.

5.    Fannie Mae admits that Picatinny has demanded Fannie Mae give Picatinny certain notes and mortgages Fannie Mae purchased from U.S. Mortgage. Fannie Mae admits that it has refused Picatinny's demand to send Picatinny these mortgage notes, which Fannie

Mae purchased in good faith from U.S. Mortgage. The second sentence of Paragraph 5 of the Complaint contains legal conclusions to which no responsive pleading is required. Fannie Mae denies that it has not explained why it has not provided the notes and mortgages to Picatinny.

6.      Fannie Mae admits that Paragraph 6 of the Complaint provides Picatinny's characterization of the current action and the relief that it seeks but denies that Picatinny is entitled to any relief. The remaining allegations of Paragraph 6 contain legal conclusions to which no responsive pleading is required.

7.      Fannie Mae is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 7 of the Complaint, and, therefore, Fannie Mae denies these allegations.

8.      Fannie Mae admits the allegations of Paragraph 8 of the Complaint.

9.      Fannie Mae admits the allegations of Paragraph 9 of the Complaint.

10.      Fannie Mae denies the allegations of Paragraph 10 of the Complaint and refers to the July 1, 1999 Agreement between Picatinny and CU National (the "July 1, 1999 Agreement") for the terms thereof.

11.      Fannie Mae denies the allegations of Paragraph 11 of the Complaint and refers to the July 1, 1999 Agreement for the terms thereof.

12.      Fannie Mae is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 12 of the Complaint and, therefore, Fannie Mae denies these allegations.

13.      Fannie Mae is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 13 of the Complaint and, therefore, Fannie Mae denies these allegations.

14.     Fannie Mae is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 14 of the Complaint and, therefore, Fannie Mae denies these allegations.

15.     Fannie Mae is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 15 of the Complaint and, therefore, Fannie Mae denies these allegations.

16.     Fannie Mae is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 16 of the Complaint and, therefore, Fannie Mae denies these allegations.

17.     Fannie Mae admits that on or about February 5, 2009, Fannie Mae advised Picatinny that Fannie Mae had purchased from U.S. Mortgage certain loans once held by Picatinny and provided copies of loan documents for eight such loans.  Fannie Mae admits that Exhibit A to the Complaint appears to contain copies of the materials that Fannie Mae provided to Picatinny with the February 5, 2009 letter.  Fannie Mae denies the remaining allegations of Paragraph 17 of the Complaint.

18.     Fannie Mae is without knowledge or information sufficient to form a belief as to whether any loans were assigned without Picatinny's knowledge and, therefore, Fannie Mae denies this allegation of Paragraph 18 of the Complaint.  Fannie Mae denies that any loans assigned to Fannie Mae were assigned without Picatinny's authorization.  Fannie Mae admits that it received assignments of certain mortgage notes via allonges executed by U.S. Mortgage and admits that certain allonges bear the name and apparent signature of Michael McGrath, signing as an "AVP" on behalf of Picatinny.  Fannie Mae denies that U.S. Mortgage executed allonges in favor of Fannie Mae.  Fannie Mae admits that certain assignments of mortgages were

4

executed in favor of Fannie Mae and were signed by Michael McGrath as an AVP of Picatinny and notarized.

19.     Fannie Mae is without knowledge or information sufficient to form a belief as to whether McGrath was ever an Assistant Vice President of Picatinny and, therefore, Fannie Mae denies the allegation that he was at no time an Assistant Vice President of Picatinny.  Fannie Mae denies the allegation in Paragraph 19 of the Complaint that McGrath was never authorized to execute allonges, assignments or other agreements on behalf of Picatinny.

20.     Fannie Mae is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 20 of the Complaint, and, therefore, Fannie Mae denies these allegations.

21.     Fannie Mae admits that a letter written by Andrew Liput, general counsel of U.S. Mortgage, is attached as Exhibit B to the Complaint and refers to that letter for the terms thereof.

22.     Fannie Mae admits that a spreadsheet originated by Picatinny and identifying certain loans is attached as Exhibit C to the Complaint.  Fannie Mae is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph 22 of the Complaint and, therefore, Fannie Mae denies these allegations.

23.     Fannie Mae admits that Picatinny sent a demand letter to Fannie Mae, dated February 24, 2009, and that a copy of this letter is attached as Exhibit D to the Complaint.  The remaining allegations of Paragraph 23 of the Complaint contain legal conclusions to which no responsive pleading is required.

## FIRST COUNT

## (CONVERSION)

24.     Fannie Mae incorporates its responses to Paragraphs 1 through 23 above, as though fully set forth herein.

25.     Fannie Mae admits that certain notes underlying the loans in question were issued to the order of Picatinny and were transferred from Picatinny to U.S. Mortgage based upon the indorsement of Michael McGrath, signing as AVP of Picatinny, on an allonge to the notes. Fannie Mae admits that it purchased these notes but denies that the notes were indorsed in favor of Fannie Mae on an allonge to the notes. Fannie Mae denies the remaining allegations of Paragraph 25 of the Complaint.

26.     Fannie Mae admits that U.S. Mortgage executed in favor of Fannie Mae certain assignments of mortgages that were originally executed in favor of Picatinny. Fannie Mae denies the remaining allegations of Paragraph 26 of the Complaint.

27.     Fannie Mae is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 27 of the Complaint concerning Michael McGrath's position with Picatinny and, therefore, Fannie Mae denies these allegations. Fannie Mae denies the remaining allegations of Paragraph 27.

28.     No responsive pleading is required to Paragraph 28 of the Complaint, which merely quotes from a statute.

29.     Fannie Mae denies the allegations of Paragraph 29 of the Complaint.

30.     Fannie Mae admits that Picatinny sent to Fannie Mae a letter on February 24, 2009, demanding that Fannie Mae give to Picatinny certain notes and mortgages in Fannie Mae's possession; execute allonges to the notes and assignments of the mortgages; and account for and

send to Picatinny payments collected in connection with the mortgage loans. Fannie Mae admits that it has refused Picatinny's demand. Fannie Mae denies the remaining allegations of Paragraph 30 of the Complaint.

31. Fannie Mae denies the allegations of Paragraph 31 of the Complaint.

## SECOND COUNT

### (DECLARATORY JUDGMENT)

32. Fannie Mae incorporates its responses to Paragraphs 1 through 31 above, as though fully set forth herein.

33. Fannie Mae admits that Picatinny makes the contentions set forth in Paragraph 33 of the Complaint but denies that those contentions are legally or factually correct.

34. Fannie Mae admits that its position is that it is a holder in due course of the notes and mortgages at issue and took them free and clear from Picatinny's claims and defenses and further states that the facts and law support that position.

35. The allegations of Paragraph 35 of the Complaint contain legal conclusions to which no responsive pleading is required. To the extent a response is required, Fannie Mae admits that a justiciable controversy exists between it and Picatinny and that a declaratory judgment is necessary and appropriate.

WHEREFORE, Fannie Mae denies that Picatinny is entitled to compensatory damages in an amount not less than the outstanding balance of the loans in Fannie Mae's rightful possession; denies that Picatinny is entitled to any payments received by Fannie Mae or an accounting of the amounts received in connection with the loans in Fannie Mae's rightful possession; denies that Picatinny is entitled to consequential damages, punitive damages, reasonable attorneys' fees, or costs of suit; denies that Picatinny is entitled to a judgment

declaring that Fannie Mae does not have any right to enforce the notes and mortgages underlying the loans; and further denies that Picatinny is entitled to any judgment or relief against Fannie Mae whatsoever.

## FIRST AFFIRMATIVE DEFENSE

Picatinny's claims are barred under N.J.S.A. § 12A:3-306 because Fannie Mae is a holder in due course of the mortgage notes at issue under N.J.S.A. § 12A:3-302.

## SECOND AFFIRMATIVE DEFENSE

Picatinny's claims are barred because Fannie Mae was a good faith purchaser for value of the mortgage loans at issue, without notice that the mortgage notes contained unauthorized signatures or had been altered, and without notice of any claims to the mortgage notes by Picatinny or anyone else.

## THIRD AFFIRMATIVE DEFENSE

Picatinny's claims are barred because McGrath and his companies, U.S. Mortgage and its subsidiary CU National, were given the actual authority by Picatinny to indorse Picatinny mortgage notes and sell Picatinny mortgage loans on the secondary market to good faith purchasers like Fannie Mae.

## FOURTH AFFIRMATIVE DEFENSE

Picatinny's claims are barred because McGrath and U.S. Mortgage had the apparent authority to sell the mortgage loans that Fannie Mae purchased in good faith from U.S. Mortgage.

## FIFTH AFFIRMATIVE DEFENSE

Picatinny's claims are barred by the doctrines of waiver and estoppel.

## SIXTH AFFIRMATIVE DEFENSE

Picatinny's claims are barred under N.J.S.A. § 12A:3-405(b) because Picatinny entrusted McGrath and U.S. Mortgage with certain responsibility with respect to the mortgage notes and, therefore, the signatures of McGrath and other U.S. Mortgage personnel on the mortgage notes are effective as the signatures of Picatinny.

## SEVENTH AFFIRMATIVE DEFENSE

Picatinny's claims are barred under N.J.S.A. § 12A:3-406(a) because Picatinny's failure to exercise ordinary care substantially contributed to the making of the signatures by McGrath and other U.S. Mortgage personnel on the mortgage notes, and, therefore, Picatinny is precluded from asserting that the signatures are ineffective.

## EIGHTH AFFIRMATIVE DEFENSE

Picatinny's claims are barred under N.J.S.A. § 12A:3-403(a) because Picatinny ratified the actions of McGrath and U.S. Mortgage with respect to the mortgage loans.

Fannie Mae reserves the right to rely on all further affirmative defenses which become available or appear during discovery proceedings in this action and reserves the right to amend its Answer and Affirmative Defenses for the purpose of asserting any such additional affirmative defenses.

LATHAM & WATKINS LLP

By: s/ Alan E. Kraus
    Alan E. Kraus

Attorneys for Defendant
*Federal National Mortgage Association*

Dated: April 6, 2009

# EXHIBIT 3

**FIRST MORTGAGE SUPPORT SERVICES**

**FULL FHA/SUB PRIME LOAN SERVICES**

**HOME EQUITY LOANS**



*national real estate support services*

## CU National MORTGAGE

**SERVING ALL OUR MEMBERS' REAL ESTATE NEEDS!**

FNMA-USM-SAPA-000017113

# SERVICE THAT KEEPS YOUR MEMBERS SMILING



**CU National Mortgage** makes the sometimes difficult task of financing a home something to smile about for your members. Our staff of experienced Credit Union Real Estate experts partnered with expanded service hours and 24-hour, customized web site support, offer our members easy access to extremely competitive Real Estate financing options. We offer all of our national real estate services under "transparent cover" — using your good name and our credit union expertise — to assure your members that the Credit Union is responsible for all of the great service they receive. Our commitment to the Credit Union tradition of service will also aid in your efforts to become the chosen primary financial institution of your members. We'll take the time to guide any member through many affordable options, with the individual attention they're accustomed to, as a valued member of your Credit Union.



At **CU National Mortgage**, we understand that friendly, professional and consistent services mean satisfied, smiling and loyal members!

FNMA-USM-SAPA-000017114

# MEMBER SERVICES TO SET YOU APART

You pride yourself on offering outstanding, diverse member services and that's why you have such a loyal membership. But if those services do not include Real Estate Lending, you are missing an opportunity to move your Credit Union into the future.

**CU National Mortgage** will work with you to provide your membership with diversified, competitive Real Estate loan programs. Our "turn key" services give you complete, national residential Real Estate product support, direct FHA services and customized home equity products for member direct financing tools. Our National Credit Union Member Direct Support Services include: state-of-the-art computer support, customized marketing support, asset and liability management programs, expansive secondary market product access, risk-based lending options and 24-hour member inquiry capabilities, just to name a few!

As the only national Real Estate support service provider with full FHA-sponsored service capabilities, **CU National Mortgage** will work with your existing real estate department or act as your "mortgage department" to service your members' Real Estate needs. Through **CU National Mortgage**, you can offer a direct, diverse product support menu with competitive secondary and direct product

rates. You can also immediately provide or expand your members' Real Estate loan options while we assist you with your Credit Union's individual Real Estate loan investment decisions.

We specialize in the management, extension and servicing of member real estate loans so that you're able to employ our expertise to: manage your assets and liabilities, build up your loan to share ratio, maximize your member service capability and increase your profitability.

Our state-of-the-art origination and servicing systems enable you to service your members more efficiently than ever before. Our team of Member Real Estate Counselors can utilize remote computers in your members' homes or offices. Our transparent web site support provides members with personal options of inquiring and applying for a Real Estate loan in the comfort and confidence of their own home. **CU National Mortgage's** Support Services instantly provide your members with detailed loan programs, mortgage loan pre-qualifications and application ease. This attention to detail heightens member education and empowers members to choose the Real Estate financing tool that's best for them.



*CU National Mortgage's Support Services can help you to exceed your financial goals and objectives while heightening member services.*

FNMA-USM-SAPA-000017115

# DIVERSE OPTIONS FOR DIVERSE NEEDS

## RESIDENTIAL FIRST MORTGAGES

As a result of our success within the Credit Union Real Estate market, **CU National Mortgage** is able to offer you and your members a varied menu of competitively priced mortgage programs that help you to manage an ever-changing financial services marketplace.

We offer a wide range of Real Estate product choices that provide you with complete autonomy over our support services. You may choose to develop, price and have us support your own portfolio of real estate products or you may choose a customized and highly competitive menu of secondary market-sponsored Real Estate products.

Based on your asset and liability management philosophy, you can design your own Residential Mortgage program. We understand that changing times require swift, responsive support action to maximize member satisfaction and profitability. Today's decisions are not always tomorrow's resolutions. With **CU National Mortgage** as your Real Estate Support Provider, we can adapt to your changing needs by offering you autonomy over our services. You are free to change loan programs, product mix, and rate offerings at your discretion. You can expect to have the same responsive control over our support services as you would expect from your own in-house staff.



## REGULATORY COMPLIANCE

The constant updates on State and Federal Regulations regarding Real Estate Lending can really keep you on your toes. That's where we can help! **CU National Mortgage** provides you with an abundance of management experience and a wealth of knowledge in regulatory compliance. We guarantee total compliance with Federal, State, NCUA and Secondary Market standards.

As an added service, we can also help you write and implement Real Estate Lending policy and procedure manuals. Managing your Credit Union's direct regulatory compliance becomes a standard and efficient process!



## HOME EQUITY LOANS

Managing your members' growing financial service needs can be challenging. Providing a full menu of National Real Estate Lending options is your best bet for accepting and meeting that challenge. **CU National Mortgage** will provide you with a variety of quick and efficient Home Equity product lines to serve your individual member's needs. We'll help you to develop, implement, and manage Home Equity products offering revolving lines of credit to fixed rates and terms — all under "transparent" cover, direct to your members.

**CU National Mortgage** supports your expansion of Home Equity products on a national basis. Our network of appraisers and property search firms allow us to perform Home Equity services quickly and efficiently.

*We welcome your creative input in designing a Home Equity product line which best serves your members' financial goals.*

## EXPANDED REAL ESTATE PRODUCTS

We're not through yet! Beyond supporting a complete menu of fixed rate and adjustable residential loan products, **CU National Mortgage** also provides your members with Construction/Permanent loans, Jumbo and Super Jumbo loans and "Mixed Use" Property loans.





## FHA LOAN PRODUCTS

Being a successful provider of residential financial services requires an expansive menu for choice and compatibility. FHA Home Loans have long been recognized as affordable home ownership options for many Americans. Through **CU National Mortgage**, your Credit Union can become a direct provider of FHA residential loan products.

*For more information on how we can support your Credit Union's FHA product line, please see our FHA Programs and Services brochure.*

## SUB PRIME PRODUCTS

Aiding in our abilities to match member requests with the appropriate products sometimes require custom features not found in conventional and government-sponsored programs.

**CU National Mortgage** has built an extensive network of Sub Prime loan providers who can support member loan requests that may otherwise require special consideration.

## MARKETING SUPPORT

Heightening our members' awareness of the availability and competitiveness of Real Estate services offered by their Credit Union is an educational and practical must.

Our marketing support services reach your members through customized media like statement stuffers, direct mail, telemarketing and SEG visits. Whether you choose our conventional or customized marketing tools, **CU National Mortgage** will present you with numerous options to deliver the message to your members.

## MEMBER LOAN SERVICING

**CU National Mortgage** prides itself on quality member service that extends beyond the initial funding of your members' Real Estate loans.

Our numerous repayment options, complete federal and investor reporting and computer matching capabilities, ensure quality member service for the lifetime of a member's loan with your Credit Union. The staff is supported by some of the best technology to allow for fast and efficient loan servicing delivery and more time for personalized, professional response to member inquiries.

**CU National Mortgage** enhances portfolio performance through customized reporting designed with your request in mind. We ensure your up-to-date education of portfolio activities, collection efforts and market activities that could influence lending directives important to your Credit Union's financial performance.

All member Real Estate loans serviced by **CU National Mortgage** are kept in your Credit Union name. Each member will always be provided with up-to-date, monthly account activity statements, annual escrow analysis performance, and direct Real Estate tax and insurance payment methods. Our toll free service allows members to easily access information on their account.

We've invested in state-of-the-art technology that allows us to upload member Real Estate account information to most data processors. While we perform all loan servicing functions, our account upload systems allow you and your staff to enjoy up-to-date member account information for direct member services and information delivery. The information can then be moved to your audio response system and can also be used for web site member inquiries.

*For more information on how we can help you service your members' Real Estate loans, please see our Servicing brochure.*

## INTERNET SUPPORT

**CU National Mortgage's** Real Estate Support Service extends beyond conventional methods associated with Real Estate Loan services. Our technological advantages immediately begin to work for you once the member chooses to seek your Credit Union's assistance in financing their home.

Our "transparent" web site support allows your members to receive information about Real Estate loan services, to pre-qualify for a Real Estate loan and to apply for one – all in the comfort and confidentiality of their home!

We will support your web page with our custom Real Estate calculations, information and affiliation packages to make the members' virtual delivery options come to fruition.

## FOR CREDIT UNIONS AND MEMBERS

At **CU National Mortgage**, our "transparent" services provide your members with the same level of service they've come to expect from you, combined with our expertise in national Credit Union Real Estate Financing.

Members can choose a method of payment most convenient to them. We offer Payroll Deduction, ACH (Automated Clearing House), monthly statements or coupons. It is our pleasure to provide member repayment that is tailored to the needs and preferences of each individual member and the Credit Unions we serve.

**CU National Mortgage's** cutting edge technology offers customized reporting and user friendly management of portfolios. We provide file management, credit administration, and record keeping packages and also support all of the mandated Federal Reporting compliances.

We can also provide you with customized statement stuffers, postcards, lobby posters, SEG visits and many other promotional support options — the perfect marketing tools to promote your new or improved Real Estate product offerings!

*You can heighten your quality member service and save time and money with **CU National Mortgage** as your Real Estate Support Service partner!*

CREDIT UNION
MANAGER

## USM/CREDIT MORTGAGE, A CREDIT UNION'S "SPECIFIC" REAL ESTATE SUPPORT PROVIDER!

- Our team of professionals are available specifically for the convenience of your members. They can call anytime for efficient and detailed information on your Credit Union's national Real Estate Loan products.

- To market your products, our Support Services include customized statement stuffers, postcards, lobby posters, customized telemarketing services, website support and SEG visits . . . just to name a few!

- Our Credit Union professionals will cross-sell all of your products and services in order to increase and maintain member affiliation. We fully embrace the Credit Union tradition of service and are proud to support it!

- For added effectiveness, we'll help you to develop, write and implement a custom loan policy and procedure manual to assure quality loan management.

- Our Internet services are second to none! Our "transparent" and customized web site support acts as a "virtual" mortgage department for you to provide loan information and on-line applications to members.

- We'll help you to design, implement and offer a diversified menu of national Real Estate products and services like FHA, first-time homebuyers, Construction/Permanent loans, Jumbo and Super Jumbo loans, fixed rate and revolving lines of credit . . . all directly from your Credit Union.



FNMA-USM-SAPA-000017119



national real estate support services

Turn Key Services



CU National
M O R T G A G E

**1-888-900-1643**
**WWW.CUNATIONAL.COM**

FNMA-USM-SAPA-000017120





**1-888-900-1643**
WWW.CUNATIONAL.COM

FNMA-USM-SAPA-000017121

# EXHIBIT 4

# CREDIT UNION SUPPORT SERVICES AND CORRESPONDENT MORTGAGE LENDING AGREEMENT

This Agreement is entered into as of the 1st day of July 1999, between CU NATIONAL MORTGAGE, LLC, a New Jersey corporation having an office at 19D Chapin Road, Pine Brook, New Jersey 07058 (hereinafter known as "CU NATIONAL"), and PICATINNY FEDRAL CREDIT UNION, a Federal credit union having an office at 100 Mineral Spring Drive, Office Quarters #120, Dover, NJ 07801 (hereinafter known as "Credit Union"), (hereinafter also collectively known as "the parties").

## Background

CU NATIONAL will provide Loan Production Services to the Credit Union on either a service-retained or service-released basis. CU NATIONAL will provide Home Equity Loan Production Services and Loan Servicing. As a value added feature to CU NATIONAL's loan production service, CU NATIONAL will also provide Associated Program Services. Associated Program Services can be described as, but not limited to, the following: set-up services, marketing services, operation consultation, cross-selling credit union services and transparent delivery of services). For purposes of this Agreement, the term Loan Production Services include the following services as may be required for a particular real estate loan:

1. Counseling the Credit Union's member on obtaining real estate financing from their Credit Union.

2. Taking information from the member and filling out the application;

3. Analyzing the prospective member's income and debt and pre-qualifying the prospective member to determine the maximum mortgage that the prospective member can afford;

4. Educating the prospective member in the home buying and financing process, advising the member about the different types of loan products available, and demonstrating how closing costs and monthly payments could vary under each

PICA0001170

product;

5. Collecting financial information (tax returns, bank statements) and other related documents that are part of the application process;

6. Initiating/ordering VOEs (verifications of employment) and VODs (verifications of deposit);

7. Initiating/ordering request for mortgage and other loan verifications;

8. Initiating/ordering appraisals;

9. Initiating/ordering inspections or engineering reports;

10. Providing disclosures (truth-in-lending, good faith estimate, others) to the member;

11. Assisting the member in understanding and clearing credit problems;

12. Maintaining regular contact with the member, realtors, and lender between the application and closing to apprise them of the status of the application and gather any additional information as needed;

13. Ordering/preparing legal and closing documents;

14. Obtaining a determination of the secured property's flood plain status; and,

15. Scheduling and participating in the loan closing.

I

## LOAN PRODUCTION SUPPORT SERVICES

As the parties agree, The Credit Union will refer mortgage loans to CU NATIONAL but will retain the mortgage loans and engage CU NATIONAL to provide the following Loan Production Services for the mortgage program offered by the Credit Union

    a.    Authorization. Credit Union shall inform CU NATIONAL of a member's need for mortgage financing being offered by the Credit Union for the purchase or refinance of said member's property. The member contacts CU NATIONAL to obtain mortgage financing directly from the Credit Union. Credit Union shall permit CU NATIONAL reasonable access for counseling, pre-qualifying the member, taking member's

2

PICA0001171

application on behalf of the Credit Union and permit CU NATIONAL to perform its other related support services for the Credit Union to extend real estate financial services.

      b.    Prequalification Counseling.  Upon contact by a member for mortgage financing, a CU NATIONAL Mortgage Representative will call or visit the member and identify and explain the availability of the Credit Union's mortgage programs.  CU NATIONAL shall provide a detailed explanation of the various types of mortgage financing available from the Credit Union including the interest rate and other terms and conditions of the mortgage loan.  The Representative shall analyze the Credit Union member's financial position and collateral from the information supplied by the member and determine a reasonable mortgage amount the member can afford and is pre-qualified to obtain from the Credit Union's available programs.  CU NATIONAL shall use its expertise in providing the Credit Union member with a full range of mortgage products and services made available through the Credit Union by CU NATIONAL.  These products and services are made available through the Credit Union or by way of CU NATIONAL's approved secondary market vendor status.  CU NATIONAL shall utilize its staff of residential mortgage professionals to extend these counseling services to pre-qualify the member for an appropriate mortgage program.

      c.    Loan Application.  Once CU NATIONAL pre-qualifies the member, the Mortgage Representative shall complete the loan application either in person or by telephone on behalf of the Credit Union.  The Mortgage Representative shall obtain all information and documentation necessary to process the member's mortgage request.  Any additional disclosure documentation or forms required pursuant to statute and regulation shall be provided to the member after completion of the application and mailed or delivered to the member in three business days.  This documentation includes those disclosures required of a real estate financial services provided as required by Federal, State, or Secondary Market standards relative to the individual member real estate financial services request.

      d.    Loan Processing.  CU NATIONAL shall monitor each application to

3

PICA0001172

assure that expeditious and efficient processing occurs. CU NATIONAL shall process each application in a manner consistent with secondary market practices and it shall assist the Credit Union in making mortgage loans in the amounts requested by its members and in relation to each member's creditworthiness, secondary market and/or Credit Union's mortgage standards, as the parties agree. The processing services by CU NATIONAL shall include, but not be limited to, complete documentation of the loan application, an analysis of all financial and collateral data, and underwriting on behalf of the Credit Union. In fulfilling CU NATIONAL's responsibilities to the Credit Union as set forth in this Agreement, CU NATIONAL shall act as the Credit Union's agent and shall be authorized to receive, transmit, and otherwise process the member's confidential financial information provided through the loan application process. The Credit Union authorizes CU NATIONAL to have its member sign any and all necessary documentation authorizing the release of confidential information concerning its application being processed by CU NATIONAL in furtherance of its obligations as set forth in this Agreement. Where loans processed by CU NATIONAL are to be held in the portfolio of the Credit Union, CU NATIONAL shall process these loans in compliance with the underwriting guidelines and documentation standards of the Credit Union. Credit Union agrees to provide CU NATIONAL with a copy of its underwriting guidelines which shall be attached hereto as Schedule "A" and updated and renewed on an ongoing basis in accordance with this Agreement. In the event, Credit Union does not possess real estate policies and procedures manuals, CU NATIONAL will supply the Credit Union with Secondary Market information relative to their extension of residential mortgage financial services.

      e.    <u>Lending Decision</u>. CU NATIONAL shall consult with the Credit Union on its findings relative to the mortgage loan. The Credit Union shall be presented with a summary of the member's loan request on CU NATIONAL's Uniform Underwriting and Transmittal Summary Form (i.e.: FNMA 1077), which shall be electronically transmitted, hand delivered or mailed to the Credit Union for review and final disposition. At that time,

<div align="center">4</div>

PICA0001173

the Credit Union shall advise CU NATIONAL of its decision to deny or approve the mortgage loan. If the Credit Union confirms its denial, CU NATIONAL shall prepare the adverse action notice to the members for the Credit Union's endorsement and CU NATIONAL's remittance of the adverse action notice to the member. If the Credit Union agrees to approve the loan, Credit Union shall also provide CU NATIONAL with its decision whether the Credit Union will fund and retain the loan ("Portfolio Loans") or to fund and sell the loan to a secondary market buyer ("Sold Loans").

   f. <u>Closing Services</u>. CU NATIONAL will schedule closing at the reasonable convenience of the members and advise the Credit Union of members intent to close the mortgage loan no less than two (2) business days prior thereto, unless otherwise agreed to by the parties. CU NATIONAL shall close the mortgage loan on behalf of the Credit Union, record the appropriate documents and set up the loan for servicing [see Loan Servicing Section of this Agreement]. The Credit Union shall receive copies of all mortgage loan documentation it demands on an ongoing pre-established basis with CU NATIONAL.

  2. **Consideration paid to CU NATIONAL for Loan Production Services.**

   A. <u>Loan Production Services</u>.

    (i) Servicing assigned to CU NATIONAL. The Credit Union shall pay CU NATIONAL Sixty-Five (65) B.P. ($100,000.00 x 65 B.P. = $650.00) of the original principal balance as consideration for Loan Production Services when the real estate loan is transferred, sold or assigned to CU NATIONAL for loan servicing. These fees are due and payable at the time of issuance of a Credit Union's final commitment to the member.

    (ii) Servicing Not Assigned to CU NATIONAL. The Credit Union shall pay CU NATIONAL One Hundred Twenty-Five (125) B.P. ($100,000.00 x 125 B.P. = $1,250.00) of the original loan amount as compensation for its services when the real estate loan is transferred, sold or assigned to CU NATIONAL for loan servicing. The fee is due and payable at time of the issuance of the final commitment to the Credit Union member.

   B. <u>Change in Fees</u>. CU NATIONAL may change the fees for the Loan

<div align="center">5</div>

PICA0001174

Production Services and Associated Program Services upon ninety (90) days written notice.

3.    **Consideration Paid by CU NATIONAL for the Credit Union's Mortgage Servicing Rights on Residential Mortgage Loans.**

a.    The parties acknowledge that the mortgage servicing rights for the loans have value and that the Credit Union is free to retain and service the mortgages on its own or sell the mortgage servicing rights to a third party loan service. By assigning the servicing rights to CU NATIONAL, for the consideration set forth herein, the Credit Union acknowledges and understands that by transferring the servicing rights of the mortgage loans to CU NATIONAL, it surrenders all control over the servicing of these mortgage loans, unless the Credit Union exercises a first refusal to repurchase said servicing rights pursuant to this Agreement in Section    . If those rights are not exercised and CU NATIONAL sells the servicing to a third party, the Credit Union's right to repurchase the mortgage servicing rights shall terminate.

b.    The parties acknowledge that the combination of the discounted loan production fees for the loans and the Associated program Services provided to the Credit Union at no cost are valuable consideration to the Credit Union and constitute consideration at least equal in value to the Credit Union as the value of the mortgage servicing rights transferred to CU NATIONAL.

## II

## HOME EQUITY LOANS

1.    **Home Equity Support Services Provided:**

a.    <u>Home Equity Loan Production Services</u>. CU NATIONAL shall assist the Credit Union in the ampliation, underwriting, counseling, processing and closing of the home equity loans as the Credit Union shall require. CU NATIONAL shall process and underwrite the home equity loans made by the Credit Union under the terms of this Agreement and in accordance with the Credit Union's policies and procedures manual. In the event the Credit Union does not have internal policies and procedures relative to counseling,

6

PICA0001175

underwriting and closing home equity loans (fixed rate/term and credit lines), CU NATIONAL shall assist the Credit Union in drafting and adopting an internal policy and procedures manual. All provision of the Credit Union policies and procedure manual may be amended and supplemented from time to time. The Credit Union will be solely responsible for providing CU NATIONAL with internally revised policy and procedural changes as they occur. The Credit Union hereby indemnifies and holds harmless CU NATIONAL for any loss sustained as a result of the Credit Union's failure to accurately advise CU NATIONAL in a timely manner of any changes to the Credit Union's internal policies and procedures must be effectively communicated to CU NATIONAL via overnight courier or certified mail effective upon receipt.

Loan Servicing.

(i)     CU NATIONAL shall service the home equity loans in accordance with the same practices that prudent home equity servicers would follow who service home equity loans of the same type, or, if applicable, in accordance with the Credit Union's policies and procedures manual, regardless of when the home equity loan was produced or when CU NATIONAL acquired its servicing rights to the home equity loan(s). CU NATIONAL shall service the home equity loans made by the Credit Union under the terms of this Agreement and in accordance with the Credit Union's policies and procedures manual. In the event the Credit Union does not have internal policies and procedures relative to servicing home equity loans (fixed rate/term and credit liens), CU NATIONAL shall assist the Credit Union in drafting and adopting an internal policy and procedures manual. All provisions of the Credit Union policies and procedures manual may be amended and supplemented from time to time. The Credit Union will be solely responsible for providing CU NATIONAL with internally revised policy and procedural changes as they occur. The Credit Union hereby indemnifies and holds harmless CU NATIONAL for any loss sustained as a result of the Credit Union's failure to accurately advise CU NATIONAL in a timely manner of any changes to the Credit Union's internal policies and procedures manual. All notices of change to the Credit Union's internal

7

policies and procedures must be effectively communicated to CU NATIONAL via overnight courier or certified mail effective upon receipt.

          (ii)    CU NATIONAL shall require the Credit Union to facilitate funding of checks utilized by the member to draw down on approved home equity lines of credit accounts. In no event shall CU NATIONAL be required to fund draw requests for member home equity lines of credit or fixed rate home equity loans. The parties acknowledge and agree that under any condition CU NATIONAL shall not be construed s the lender.

          (iii)    CU NATIONAL shall remit to the Credit Union all principal and interest, principal prepayment and home equity payoffs collected which apply to the home equity mortgage and note held by the Credit Union less CU NATIONAL's servicing fee. CU NATIONAL will be entitled to collect and retain all applicable late fees, bounced check charges, overline account fees assessed and any other applicable fees obtained in the course of servicing home equity loans for the Credit Union pursuant to its ownership in the home equity servicing rights.

          (iv)    CU NATIONAL's remittance to the Credit Union shall be by electronic funds transferred or by check on the twentieth (20) calendar day of each month or on a certain date as otherwise agreed upon by the parties.

          (v)    CU NATIONAL shall keep full and complete records pertaining to each home equity loan, the collection made and disbursements made for the distribution of principal, interest, principal prepayment or home equity loan payoffs. During the period of this Agreement, CU NATIONAL shall give reasonable access to all books and records pertaining to the applicable home equity accounts to the Credit Union or their authorized representative.

          (vi)    CU NATIONAL agrees to service each home equity loan on behalf of the Credit Union continuously from the date such home equity loan has been closed or such servicing duties are requested by the Credit Union at which time CU NATIONAL acquired the home equity servicing rights. CU NATIONAL's servicing duties shall continue

8

until one of the following has occurred:

(a)    All principal and interest on each home equity loan serviced has been paid in full; or in the case of a home equity line of credit account, the account has been closed in accordance with the home equity line of credit agreement endorsed by the member with the Credit Union; or

(b)    All home equity loans have been liquidated in accordance with the Credit Union home equity policies and procedures manual, as the case may be, and final disposition of any property acquired by foreclosure or by deed in lieu of foreclosure; or

(c)    CU NATIONAL has sold the servicing to a third party pursuant to the Credit Union pursuant to the Credit Union's right of first refusal.

c.    Associated Program Services.    CU NATIONAL shall provide the Associated Program Services set forth in Section 5 to the Home Equity Loan Program.

2.    **Consideration Paid to CU NATIONAL for Home Equity Support Services.**

a.    Home Equity Loan Production Services.    CU NATIONAL shall be compensated for counseling, processing, underwriting and, if required, closing the home equity loan as follows:

(i)    CU NATIONAL shall charge the Credit Union Eighty (80) BPs of the approved principal balance amount per home equity loan when the approved principal balance is $50,000 or above on New Jersey resident.

(ii)    CU NATIONAL will charge the Credit Union Eighty (80) BPs of the approved principal balance amount per home equity loan when the approved principal balance is $50,000 or above, plus the cost of the member applicant's appraisal and property report, on all Non-New Jersey residence.

(iii)    CU NATIONAL shall charge the Credit Union $450.00 per home equity loan approved which have an approved principal balance of $49,999 and below on New Jersey residence.

9

PICA0001178

(iv)     CU NATIONAL shall charge the Credit Union $450.00 per home equity loan approved which have an approved principal balance of $49,999 or below, plus the cost of the member applicant's appraisal and property report, on all Non-New Jersey residence.

(v)     CU NATIONAL shall charge the Credit Union $75.00 plus cost of the appraisal and property report, on each member home equity loan, regardless of amount of the applied principal balance, when the home equity loan is rejected or withdrawn, after CU NATIONAL has facilitated all necessary documentation and applied vendor services (i.e. appraisal and/or property report) to provide home equity services.

(vi)     CU NATIONAL be paid for servicing the home equity loans on a monthly basis. Such compensation shall be the product of the outstanding principal balance of all such loans at the beginning of each month at the rate of 37.5 BPs (3/8) divided by 12. The amount earned shall be deducted from the principal and interest payment remitted to CU NATIONAL and/or the Credit Union monthly. The servicing fee is subject to change upon thirty (30) days notice. The change in fees will apply only to loans that are not yet being serviced by CU NATIONAL. Fees for loans that are being serviced by CU NATIONAL as of the date of the notice will not change.

b.     Associated Program Services. The services provided by CU NATIONAL under the Associated Program Services [See Section     ] are uniquely suited to meet he Credit Union's needs and are services requiring additional resources of CU NATIONAL that are not customarily offered by other loan service providers. CU NATIONAL agrees to provide these services in partial consideration for the Credit Union's mortgage servicing rights. Credit Union acknowledges that the value of these services equal at least One Hundred Fifty (150) basis point for each loan.

c.     Change in Fees. CU NATIONAL may change the fees for the Home Equity Loan Production Services and Associated Program Services upon ninety (90) days written notice.

3.     Consideration Paid by CU NATIONAL for the Credit Union's Mortgage

10

PICA0001179

**Servicing Rights on Home Equity Loans.**

a.     The Credit Union sells its servicing rights to CU NATIONAL on the home equity loans.  The parties acknowledge that the mortgage servicing rights for home equity loans have value and that the Credit Union could retain and service the mortgages on its own or sell the mortgage servicing rights to a third party loan servicer.  The Credit Union acknowledges that the consideration paid to CU NATIONAL for the services rendered herein is discounted in relation to the value the Credit Union receives.  By selling the servicing rights to CU NATIONAL, for the consideration set forth herein, the Credit Union acknowledges and understands that by transferring the servicing rights of the mortgage loans to CU NATIONAL, it surrenders all control over the servicing of these mortgage loans, unless the Credit Union exercises a first refusal to repurchase said servicing rights pursuant to Section 3 of the Agreement.  If those rights are not exercised and CU NATIONAL sells the servicing to a third party, the Credit Union's right to repurchase the mortgage servicing rights shall terminate.

b.     The parties acknowledge that the combination of the discounted loan production fees for the loans and the Associated Program Services provided to the Credit Union at no cost are valuable consideration to the Credit Union and constitute consideration at least equal in value to the Credit Union as the value of the mortgage servicing rights transferred to CU NATIONAL.

## III

## CORRESPONDENT LENDING.

In consideration of the mutual promises and covenants hereinafter set forth, CU NATIONAL shall provide the following correspondence mortgage lending and associated services (hereinafter referred to as "CU NATIONAL's Services") for the benefit of the Credit Union to extend real estate financial services to its members.  The Credit Union will refer its members desiring mortgage secured loans to CU NATIONAL who will locate lenders that will provide mortgage loans to its members.  The Credit Union will have the option of purchasing

11

PICA0001180

the mortgage loans at closing on a service-released basis.

        a.    General. The Credit Union will refer all members requesting mortgage loan to CU NATIONAL. The Credit Union will not be performing any services and will not be paid a fee for the referral. The Credit Union will not acquire any ownership rights in the mortgage loan by virtue of the referral. CU NATIONAL will perform all Loan Production Services to close the loan. CU NATIONAL will underwrite to secondary market standards and price the loan to sell in the secondary market. CU NATIONAL is not required to write to secondary market standards if the Credit Union is advised by CU NATIONAL that a loan does not meet secondary market standards and the Credit Union commits to purchasing the loan for its portfolio. The Credit Union may predetermine their loan portfolio by designing a pricing and risk strategy program.

        b.    Credit Union's Option to Purchase. CU NATIONAL will advise the Credit Union in writing by overnight mail service when it makes a preliminary determination that the member qualifies for the mortgage loan and the terms of the loan ("Preliminary Determination"). The Credit Union has an option to purchase the loan at closing by providing CU NATIONAL written notice of the exercise of the option within ten (10) days from CU NATIONAL's Preliminary Determination to the Credit Union. The failure to timely exercise this option will result in forfeiture of this option. Thereafter, CU NATIONAL may sell the mortgage loan to any lender or fund the loans itself.

        c.    Option Price. The Credit Union may purchase the loan at closing by paying to CU NATIONAL the par value of the loan, reasonable expenses incurred by CU NATIONAL that are not reimbursed by the member and a broker and loan production services fee of Sixty-Five (65) Basis Points (B.P.) ($100,000.00 x 65 B.P. = $6500.00).

        d.    Service Retained. CU NATIONAL will sell the mortgage loans service retained, i.e. CU NATIONAL will own the mortgage servicing and service the loans sold to the Credit Union or other lenders. CU NATIONAL will service loans sold to the Credit Union as set forth in this Agreement.

12

PICA0001181

## LOAN SERVICING

a.      CU NATIONAL shall diligently perform all duties that are necessary or incidental to the servicing of all Mortgage Loans on behalf of the Credit Union or its approved designee. In the performance of its servicing duties, CU NATIONAL shall comply with all provisions of the secondary market standards, rules, regulations as promulgated from time to time by the FNMA or FHLMC. Where not inconsistent with the FMNA or FHLMC rules and regulations, CU NATIONAL will service the loans as follows:

(i)      CU NATIONAL shall service the loans in accordance with the same practices that prudent mortgage servicers would follow who service mortgage loans of the same type, or, if applicable, in accordance with the Credit Union's policies and procedure manual, regardless of when the loans were produced or when CU NATIONAL acquired its servicing rights to the loans.

(ii)      CU NATIONAL shall remit to the Credit Union all principal and interest, principal prepayment and loan payoffs collected which apply to the mortgage and note held by the Credit Union less CU NATIONAL's servicing fee. CU NATIONAL will be entitled to collect and retain all applicable late fees, bounced check charges, overline account fees assessed and any other applicable fees obtained in the course of servicing loans for the Credit Union pursuant to its ownership in the loan servicing rights.

(iii)      CU NATIONAL's remittance to the Credit Union shall be by electronic funds transferred or by check on the twentieth (20th) calendar day of each month or on a certain date as otherwise agreed upon by the parties.

(iv)      CU NATIONAL shall keep full and complete records pertaining to each loan, the collection made and disbursements made for the distribution of principal, interest, principal prepayment or loan payoffs. During the period of this Agreement, CU NATIONAL shall give reasonable access to all books and records pertaining to the applicable mortgage loan to the Credit Union or their authorized representative.

b.      CU NATIONAL agrees to service each Mortgage Loan on behalf of the

13

PICA0001182

Credit Union continuously from the date such Mortgage Loan closed or such servicing rights are transferred to CU NATIONAL by the Credit Union. CU NATIONAL's servicing responsibilities shall continue until one of the following has occurred.

       (i)    All principal and interest on each Mortgage Loan serviced has been paid in full; or

       (ii)    All Mortgage Loans have been liquidated and final disposition of any property acquired foreclosure or by deed in lieu of foreclosure; or

       (iii)    CU NATIONAL servicing rights are terminated in accordance with this Agreement whereby CU NATIONAL's servicing rights shall be purchased by Credit Union or any third party.

       c.    CU NATIONAL shall keep full and complete records pertaining to each Mortgage Loan, the collection made and disbursements made for the distribution of principal, interest or payment of taxes and insurance. During the period of the term of this Agreement, CU NATIONAL shall give reasonable access to all books and records pertaining to the mortgage loan to the Credit Union or its authorized representative.

       d.    <u>Consideration Paid to CU NATIONAL to Provide Real Estate Loan Servicing</u>. For loans CU NATIONAL services on behalf of the Credit Union, the Credit Union shall pay servicing fees in accordance with FNMA fee schedules. The current fees for fixed rate mortgages and variable rate mortgages is one-quarter (1/4) point. The servicing fee is subject to change in accordance with changes in the FMNA fee schedules and upon thirty (30) days notice. The change in fees will apply only to loans that are not yet being serviced by CU NATIONAL. Fees for loans that are being serviced by CU NATIONAL as of the date of the notice will not change. The Loan Servicing fees for Home Equity Loans are set forth in this Agreement.

       e.    The Home Equity Loans shall be serviced as provided in this Section 2 except as may be modified by the terms of Addendum "B".

       **2.**    **The Credit Union's Right of First Refusal of Mortgage Servicing Rights**

<center>14</center>

PICA0001183

If CU NATIONAL has obtained an offer by a third party to purchase the mortgage servicing rights, CU NATIONAL shall provide the Credit Union with thirty (30) days written notice of said sale providing complete details of said transaction including purchase price, terms, conditions, and purchaser. The Credit Union shall notify CU NATIONAL within the said thirty (30) days notice period of its election to repurchase its servicing rights from CU NATIONAL according to the same terms and conditions of the proposes sale by CU NATIONAL to the third party. In the event the Credit Union elects to repurchase said mortgage servicing rights, CU NATIONAL shall deliver the same within thirty (30) days of the effective date of the election in exchange for the consideration set forth in the offer.

If the Credit Union does not provide timely written notice of its election to exercise its right of first refusal, it shall be deemed waived and CU NATIONAL shall be entitled to immediately proceed with its proposed sale to the third party. Effective immediately upon said sale, the right of first refusal shall extinguish and no right shall exist between the Credit Union and the said third party purchaser of the servicing rights from CU NATIONAL. If the said sale does not close upon the same material terms as set forth in the notice to the Credit Union within ninety (90) days after the termination of the thirty (30) day notice period, then the Credit Union's right of first refusal is reinstated and CU NATIONAL must provide another notice to sell the mortgage servicing rights to a third party. The method of servicing cannot continue to be warranted by CU NATIONAL after a sale to the third party servicer. This right of first refusal applies to both closed-end residential mortgage loans and home equity loans.

3.    **Secondary Market Sale Services**

If the Credit Union desires to sell loans it owns to the secondary market, CU NATIONAL will assist the Credit Union in these sales. If CU NATIONAL is servicing the loans sold to the secondary market, the Credit Union recognized that CU NATIONAL owns the mortgage servicing rights and will continue to service the mortgage loans sold to the

15

PICA0001184

secondary market investor.

## ASSOCIATED PROGRAM SERVICES

CU NATIONAL agrees to provide these services to the Credit Union without fee for loans that the Credit Union transfers the servicing right to CU NATIONAL in partial consideration for the Credit Union's mortgage servicing rights. Credit Union will pay CU NATIONAL a one-time fee of One Hundred Fifty (150) basis point for each loan closed but not serviced by CU NATIONAL. The services provided by CU NATIONAL under the Associated Program Services Section are uniquely suited to meet the Credit Union's needs and are services requiring additional resources of CU NATIONAL that are not customarily offered by other loan service providers.

a.   Set-up Services for Mortgage Program. CU NATIONAL will provide the following services to assist the Credit Union in initiating the mortgage support services program:

(i)   Financial analysis of the Credit Union records to determine which mortgage programs best serve the Credit Union's members.

(ii)   Advise Credit Union on risk factors and income/expense potential.

(iii)   Advise as to which secondary market products best serve their members and the Credit Union.

(iv)   Analyze and develop introduction of marketing of mortgage products to the Credit Union's membership.

(v)   Produce Credit Union's specific and real estate specific application disclosure documents.

(vi)   Design and production of real estate services application kit.

(vii)   Heighten Credit Union member awareness of real estate financial services through specialized marketing materials.

16

PICA0001185

(viii)   Consult with Credit Union on real estate rate structure and objectives.

(ix)   Design and produce a real estate services rate sheet based on financial goals and objectives of Credit Union.

(x)   Set up toll free number for Credit Union member usage.

(xi)   Counsel CU NATIONAL's staff on Credit Union background and expectations.

(xii)   Perform Credit Union staff training (if applicable).

(xiii)   Set-up Federal, State and NCUA reporting systems and controls.

(xiv)   Set-up credit reporting computer information.

(xv)   Set-up internal computer for extension of services to facilitate complete systems support processes through servicing.

(xvi)   Connect Credit Union to web page (if applicable).

(xvii)   As an option service, CU NATIONAL will provide servicing information on loans being serviced for the Credit Union in computer upload and download form.

b.   <u>Marketing</u>.   Credit Union and CU NATIONAL each agree to market mortgage services to the Credit Union's entire membership by direct mail at least one time per calendar year.  The costs for the respective mailings shall be borne by the respective CU NATIONAL will make available to the Credit Union its marketing services at a cost commensurate with the Credit Union's choice of marketing media, supplies, design, production and agreed upon services.  The Credit Union and CU NATIONAL shall confer as to the eventual choice of marketing media and timeless of marketing member services.

c.   <u>Operational Consultation</u>.   CU NATIONAL will provide on-going consultation and advise to the Credit Union on how to improve the Mortgage Loan Program.

d.   <u>Cross-Sell of Mortgage Applicants</u>.   CU NATIONAL shall, at the Credit Union's discretion, attempt to cross-sell other Credit Union financial services at the time the

17

PICA0001186

mortgage application is being processed by CU NATIONAL as it relates to financial products disclosed on the member's mortgage application. Brochures, newsletters, flyers and any other marketing material utilized to cross-sell Credit Union services shall be provided by the Credit Union to CU NATIONAL at its sole cost and expense. CU NATIONAL is not responsible to maintain a supply of Credit Union marketing materials but shall advise when additional materials are needed. CU NATIONAL shall not request or be entitled to any additional compensation for obtaining additional Credit Union accounts beyond the services described in this Agreement.

      e.     <u>Transparency of Services</u>. It is critical that CU NATIONAL provide its services to the Credit Union members in such a manner that highlights the Credit Union's involvement and reduces CU NATIONAL's involvement in the eyes of the member. During the loan production and loan servicing process for loans the Credit Union elects to purchase, the Credit Union's name should be used (unless regulations require otherwise) in contacts with the member to enhance the connection with the Credit Union and the Credit Union's image with the member.

      f.     <u>Secondary Market Sales</u>. CU NATIONAL shall not charge a fee to Credit Union for loans sold into the secondary market. CU NATIONAL shall be entitled to keep all premiums obtained from the secondary market investor on loans sold by Credit Union through CU NATIONAL.

      g.     <u>Associated Program Services</u>. CU NATIONAL will provide the Associated Program Services without additional fee to the Credit Union as part of its loan production support services. The Credit Union recognizes that the Associated program Services are significant value added services and are not customarily provided by other service providers for a fee or without a fee.

      h.     <u>Change in Fees</u>. CU NATIONAL may change the fees for the Broker and Loan Production Services, Secondary Market Sales and Associated Program Services upon ninety (90) days written notice.

<div align="center">18</div>

PICA0001187

7.   **Disclaimer.** CU NATIONAL makes no representation or warranty to the Credit Union or its members as to the effect that this Agreement and the consummation of the transaction contemplated hereby may have upon the Credit Union's foreign, federal, state or local tax liabilities.

8.   **Severability.** In case any one or more of the provisions contained in this Agreement shall be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired.

9.   **Amendments; Joint and Several Obligations.** The terms of this Agreement may not be voided, amended, altered or waived except by a written instrument signed by all parties.

10.   **Limitation of Liability.** The responsibility of CU NATIONAL hereunder shall consist solely of the duties and responsibilities described in this Agreement and such responsibility shall terminate upon closing of all mortgages or mortgage loans serviced in accordance with the terms hereof. Notwithstanding any provision contained herein to the contrary, CU NATIONAL shall not have any liability or responsibility to any person for anything done or omitted to be done hereunder, except as a result of is own negligence or willful misconduct. In the event of negligence or willful misconduct on the part of CU NATIONAL involving a particular loan, Credit Union may request the purchase of such loan by CU NATIONAL and CU NATIONAL shall purchase said loan within 60 days of the date of said request.

11.   **Term and Termination.** The term of this Agreement shall commence as of the day and year first set forth, and shall continue until terminated by either party upon at least ninety (90) days' prior written notice. At the effective termination date, CU NATIONAL shall not be obligated to provide any of the services outlined in this Agreement. However, all obligations of one party to the other existing at the time of termination shall survive the termination of this Agreement.

19

TOTAL. P.19

12.   Notices. All notices and other communications under this Agreement shall be in writing and shall be sent by certified and regular mail and deemed to have been duly submitted when received by the respective party at the address set forth above, or at such other address as that party may specify to the other by written notice. All other communication shall be made at the discretion of each of the parties commensurate with the gravity/importance of the communication.

Notices to CU NATIONAL shall be address and sent to:

Dennis J. Fitzpatrick, President/CEO
CU NATIONAL MORTGAGE
P. O. Box
19D Chapin Road
Pine Brook, NJ 07058

Notice to Credit Union shall be addressed and sent to:

Stephen J. Lardiere, General Manager
PICATINNY FEDERAL CREDIT UNION
100 Mineral Spring Drive
Office Quarters #120
Dover, NJ 07901

13.   Governing Law. This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of New Jersey without reference to conflicts of law.

14.   Application, Enforcement and Modification of this Agreement. If in any judicial proceeding a Court shall refuse to enforce all of the provisions of this Agreement, any unenforceable provision shall be deemed eliminated from the Agreement for the purpose o such proceeding as is necessary to permit the remainder of the Agreement to be enforced in such proceeding. Credit Union understands and agrees that CU NATIONAL has an unconditional right to assign, transfer, sell, hypothecate or otherwise dispose of its interest in the servicing rights it has acquired from Credit Union. CU NATIONAL shall give Credit Union written notice within ninety (90) days of its intent to transfer from mortgage servicing

20

PICA0001189

rights as described herein. This agreement constitutes the entire understanding of the parties and supersedes any prior Agreement, written or oral, enforced between or among any of the parties hereto relating to the matters set forth herein. This Agreement may be amended only in writing signed by the parties. This Agreement shall be binding upon, inure to the benefit of, and be enforceable by and against the successors and permitted assigns of each party. This Agreement does not create a joint venture or partnership between the Credit Union and CU NATIONAL. CU NATIONAL and the Credit Union shall maintain strict and total separation of their businesses from the businesses of each other, including separation of records, and shall conduct its businesses at all times so as not to lead to confusion between CU NATIONAL's business and the business conducted by the Credit Union.

15.    **Dispute Resolution.** The parties agree that any controversy arising out of or relating to this Agreement or any breach thereof, shall be resolved by arbitration in accordance with the rules of the American Arbitration Association. The arbitration hearing shall be conducted by a single arbitrator to be appointed by the American Arbitration Association and shall be conducted in New Jersey. The aggrieved party shall submit a notice to the other of its dispute and shall give proper and ample notice to the other of its interest in pursuing arbitration to settle said dispute. The parties shall be jointly and equally responsible for the costs and expenses related to the arbitration or other alternative dispute resolution process selected by and agreed to by the parties.

16.    **Governmental Authorities; Laws and Severability.** The terms and provisions of this Agreement are expressly made subject to applicable federal and state statutes, laws, and rules and regulations promulgated thereunder, as amended from time to time, and the acts and actions of the Investors and their rules and regulations, as amended from time to time. Any rule, regulation or administrative policy of the Investors or any governmental agency having jurisdiction which relates to the transfer of the Servicing Rights to Servicer shall be deemed to be incorporated herein, and shall supersede the terms of this Agreement, unless such incorporation shall materially impair the contemplated benefits to be received by the parties

21

PICA0001190

pursuant to this Agreement, in which event the parties shall renegotiate the terms and conditions hereof to reflect a fair allocation of the economic benefits contemplated hereby. In the event any provision of this Agreement is deemed by a court of competent jurisdiction to be in violation of any of the above, such provision shall be of no force or effect, and this Agreement shall continue s though such superseded provision was not contained in this Agreement.

17.    **Further Assurances.** Credit Union shall at any time and from time to time, upon the reasonable request of CU NATIONAL or its representatives, execute, acknowledge, deliver or perform all such further acts, deeds, assignments, transfer conveyances and assurances as may be required for the better vesting and confirming to CU NATIONAL as its successors and assigns of title to the Servicing Rights or as shall be necessary to effect the transactions provided for in this Agreement.

18.    **Assignability of Agreement.** The parties recognize and agree that CU NATIONAL, Inc., from time to time, may take the form of a different legal entity, whether partnership, corporation or Limited Liability Company, etc. In the event CU NATIONAL selects to change its corporate structure or ownership interest, CU NATIONAL, shall be entitled to assign this Agreement to the new entity provided said entity remains in control and ownership of substantially the same principals of CU NATIONAL, at the time this Agreement is executed. The exercise of this provision by CU NATIONAL shall not be undertaken to circumvent in any way the contractual obligations it has under this Agreement.

19.    **Non-Exclusivity of Agreement.** The parties recognize and agree that the relationship between CU NATIONAL and PICATINNEY FEDERAL CREDIT UNION is a non-exclusive one. Although the parties are bound to this agreement involving the loans serviced thereunder, PICATINNEY is not obligated to utilize only the services of CU NATIONAL but is entitled to transact with other entities of its choosing for loans which do not fall under this agreement.

22

TOTAL P.02

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed the day and year first above written.

ATTEST:                              CU NATIONAL, INC.

                                     By: _____
                                         Dennis J. Fitzpatrick

                                     Title: President & CEO


ATTEST:                              PICATINNY FEDERAL CREDIT UNION

                                     By: _____
                                         Stephen J. Lardiere

                                     Title: General Manager


c:\wpwin60\wpdocs\agreemen\cu-natio


23


TOTAL P.04

PICA0001192