Alan E. Kraus
Keena M. Hausmann
Rebecca K. Brown
LATHAM & WATKINS LLP
One Newark Center, 16th Floor
Newark, New Jersey 07101-3174
(973) 639-1234
*Attorneys for Defendant Federal National Mortgage Association*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PICATINNY FEDERAL CREDIT UNION,<br><br>                         Plaintiff,<br><br>      v.<br><br>FEDERAL NATIONAL MORTGAGE<br>ASSOCIATION<br><br>                      Defendant. | Case No.: 2:09-cv-01295-GEB-MCA |

## AFFIDAVIT OF ALAN E. KRAUS, ESQ. IN OPPOSITION TO PICATINNY FEDERAL CREDIT UNION'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| State of New Jersey  ) | |
|                   ) ss. | |
| County of Essex     ) | |

       I, Alan E. Kraus, swear that the following information is true and correct and is within my personal knowledge, and testify as follows:

       1.     I am a member of the law firm of Latham & Watkins LLP, counsel for Defendant Federal National Mortgage Association ("Fannie Mae"). I submit this Affidavit in opposition to Picatinny's Motion for Partial Summary Judgment.

       2.     I have reviewed the Picatinny notes sold to Fannie Mae through U.S. Mortgage Corporation ("U.S. Mortgage"). The undisputed notes were signed by or on behalf of various individuals, including Picatinny CEO William Darling (who now contends his signature

was forged, but Picatinny does not want to undo those sales); former Picatinny General Manager Stephen Lardiere; Picatinny Chief Lending Officer Daniel Mathews; Ron Carti of U.S. Mortgage; and Michael McGrath of U.S. Mortgage. Attached hereto as Exhibit A are true and correct copies of samples of Picatinny undisputed notes sold to Fannie Mae endorsed by various individuals on behalf of Picatinny.[1]

3.    Attached hereto as Exhibit B is a true and correct copy of designated transcript pages of the February 12, 2010 deposition testimony of William Darling.

4.    Attached hereto as Exhibit C are true and correct copies of email correspondence between Picatinny and CU National, LLC ("CU National") that went to email addresses associated with U.S. Mortgage.[2]

5.    Attached hereto as Exhibit D is a true and correct copy of designated transcript pages of the April 7, 2010 deposition testimony of Stephen J. Lardiere.

6.    Attached hereto as Exhibit E is a true and correct copy of a Disputed Note dated June 17, 2007. When Fannie Mae filed its summary judgment motion on December 15, 2005, Fannie Mae mistakenly believed that it did not possess the original of this note. Fannie Mae subsequently located the original, a copy of which is attached as Exhibit E. Accordingly, there are 52 Disputed Notes (as that term is defined in Fannie Mae's December 15, 2010 Memorandum Of Law In Support Of Its Motion For Summary Judgment) at issue in this case.

7.    Attached hereto as Exhibit F is a true and correct copy of designated transcript pages of the March 25, 2010 deposition testimony of Alexander N. Saphos.

---

[1]    To protect borrower confidentiality, the borrowers' full names and addresses have been redacted from notes attached as Exhibit A, and only the first page of the notes and allonges have been attached.

[2]    The attachments referenced in the emails appended as Exhibit C have not been included because they were designated "Confidential" by Picatinny.

8.      Attached hereto as Exhibit G is a true and correct copy of designated transcript pages of the May 12, 2010 deposition testimony of Barbara Cushman.

9.      I have reviewed the 52 Disputed Notes that U.S. Mortgage sold to Fannie Mae on behalf of Picatinny.  Each assignment of mortgage from Picatinny to U.S. Mortgage, signed by Michael McGrath as an "AVP" of Picatinny, was also delivered to Fannie Mae.  In each instance, Mr. McGrath's signature was verified by a notary public, who reported that McGrath was, in fact, an AVP of Picatinny.  Attached hereto as Exhibit H are true and correct copies of five (5) assignments of mortgage for Disputed Notes, assigned by Picatinny to U.S. Mortgage under Michael McGrath's notarized signature as a Picatinny "AVP."  Like the five (5) assignments of mortgage for the Disputed Notes that are attached, the remaining 47 Disputed Notes also include notarized assignments of mortgage from Picatinny to U.S. Mortgage, signed by Michael McGrath as an "AVP" of Picatinny.

10.     Attached hereto as Exhibit I are true and correct copies of email correspondence between Michael McGrath and Picatinny employee Claudia Ferrone, in which Michael McGrath identifies himself as an officer of both U.S. Mortgage and CU National.

_____
Alan E. Kraus

Sworn to me this 31st
Day of January

_____
Notary Public

KIMBERLY BARRETT
Notary Public
State of New Jersey
My Commission Expires Mar 13, 2013

3

# EXHIBIT A

ORIGINAL

## NOTE

November 14, 2002                                    New Jersey
[Date]                      [City]                   [State]

                                                     **REDACTED**

[Property Address]

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 70,000.00                (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Picatinny Federal Credit Union, A Federal Credit Union**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    **5.8750%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.  PAYMENTS**

**(A)  Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the     **1st**    day of each month beginning on     **January 01, 2003**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **December 01, 2017**          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **Picatinny Federal Credit Union, P.O. Box 682, Pine Brook, NJ  07058**

                                                     or at a different place if required by the Note Holder.

**(B)  Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ **585.98**

**4.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200 1/01

ITEM 1844L1 (0011)                    (Page 1 of 3 pages)                    GREATLAND ■
                                                          To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

FNMA-USM000014635

Picatinny Federal Credit Union

## ALLONGE TO PROMISSORY NOTE

**LOAN INFORMATION**
Loan Number:  CUNL01216
Borrower(s):

**REDACTED**

Address:

Note Amount: 70,000.00
Note Date: 11/14/2002

Pay to the order of:

U.S. MORTGAGE CORPORATION

Without Recourse

Name  *Michael M Guerry*

Title  *AVP*
Picatinny Federal Credit Union

100 Mineral Springs Road, Dover, NJ, 07801

FNMA-USM000014638

# NOTE

ORIGINAL

December 04, 2002
[Date]

[City]

Florida
[State]

**REDACTED**

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 34,500.00                    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Picatinny Federal Credit Union, A Federal Credit Union**
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      **5.8750%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

(A) **Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the      **1st**      day of each month beginning on      **February 01, 2003**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **January 01, 2018**                , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **Picatinny Federal Credit Union, P.O. Box 682, Pine Brook, NJ  07058**

or at a different place if required by the Note Holder.

(B) **Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ **288.81**

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

FLORIDA FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3210 1/01

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

ITEM 5986L1 (0011)

*(Page 1 of 3 pages)*

FNMA-USM000014650

Picatinny Federal Credit Union

**ALLONGE TO PROMISSORY NOTE**

<u>LOAN INFORMATION</u>
Loan Number: CUNL01254
Borrower(s):

**REDACTED**

Address:

Note Amount: 34,500.00
Note Date: 12/4/2002

Pay to the order of:

U.S. MORTGAGE CORPORATION
_____

Without Recourse

Name *Michael N'Guwan*

Title *AVP*
Picatinny Federal Credit Union

100 Mineral Springs Road, Dover, NJ, 07801

FNMA-USM000014653

# ORIGINAL

## NOTE

| February 26, 2003 | | New Jersey |
|---|---|---|
| [Date] | [City] | [State] |

[Property Address]

## REDACTED

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 135,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Picatinny Federal Credit Union, A Federal Credit Union**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      **5.2500%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the      **1st**      day of each month beginning on      **April 01, 2003** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **March 01, 2018**          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **Picatinny Federal Credit Union, P.O. Box 682, Pine Brook, NJ 07058**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ **1,085.23**

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3200 1/81

ITEM 1846L1 (0011)      *(Page 1 of 3 pages)*      GREATLAND ■
To Order Call: 1-800-530-8383 □ Fax: 616-791-1131

CONFIDENTIAL

FNMA-USM000019324

Picatinny Federal Credit Union

## ALLONGE TO PROMISSORY NOTE

**LOAN INFORMATION**

Loan Number: CUNL02500
Borrower(s):

# REDACTED

Address:

Note Amount: 135,000.00
Note Date: 2/26/2003

Pay to the order of:

U.S. MORTGAGE CORPORATION
_____

Without Recourse

Name  STEPHEN J. LARDIERE

Title  GENERAL MANAGER
Picatinny Federal Credit Union

100 Mineral Springs Road, Dover, NJ  07801

CONFIDENTIAL

# ORIGINAL

## NOTE

May 20, 2003
[Date]                          [City]                          New Jersey
                                                                 [State]

# REDACTED

[Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ **184,350.00**                    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Picatinny Federal Credit Union, A Federal Credit Union**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      **5.1250%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.   PAYMENTS**

(A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the      **1st**      day of each month beginning on      **July 01, 2003**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **June 01, 2023**                    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **Picatinny Federal Credit Union, P.O. Box 682, Pine Brook, NJ  07058**

or at a different place if required by the Note Holder.

(B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **1,229.39**

**4.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                    Form 3200 1/01

ITEM 1846L1 (0011)                    *(Page 1 of 3 pages)*                    GREATLAND ■
                                                                 To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

Picatinny Federal Credit Union

**ALLONGE TO PROMISSORY NOTE**

**LOAN INFORMATION**
Loan Number: PR000121
Borrower(s):

**REDACTED**

Address:

Note Amount: 184,350.00
Note Date: 8/20/2003

Pay to the order of:

U.S. MORTGAGE CORPORATION

Without Recourse

Name   STEPHEN J. LARDIERE

Title   GENERAL MANAGER
Picatinny Federal Credit Union

100 Mineral Springs Road, Dover, NJ, 07801

CONFIDENTIAL

MIN 100GEFT0002638147   NOTE **ORIGINAL**

September 04, 2003
[Date]

[City]

New Jersey
[State]

**REDACTED**

[Property Address]

**1.  BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $102,650.00         (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Picatinny Federal Credit Union, A Federal Credit Union

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      5.3750%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.  PAYMENTS**
(A)  Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the     1st     day of each month beginning on      November 01, 2003 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on October 01, 2018           , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at Picatinny Federal Credit Union, P.O. Box 682, Pine Brook, NJ 07058

or at a different place if required by the Note Holder.
(B)  Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $831.94

**4.  BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT         Form 3200 1/01
ITEM 1848L1 (0011)                         (Page 1 of 3 pages)

CONFIDENTIAL

FNMA-USM000018715

Picatinny Federal Credit Union

**ALLONGE TO PROMISSORY NOTE**

LOAN INFORMATION
Loan Number: PR252233
Borrower(s):

**REDACTED**

Address:

Note Amount: 192,650.00
Note Date: 9/4/2003

Pay to the order of:

U.S. MORTGAGE CORPORATION

Without Recourse

Name: Stephen J. Lardiere

Title: General Manager
Picatinny Federal Credit Union

100 Mineral Springs Road, Dover, NJ, 07801

CONFIDENTIAL

# NOTE

February 23, 2004
[Date]

[City]

New Jersey
[State]

**REDACTED**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$102,800.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Picatinny Federal Credit Union, A Federal Credit Union**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.0000%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **April 01, 2004** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **March 01, 2034**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **Picatinny Federal Credit Union, P.O. Box 682, Pine Brook, NJ 07058**

**(B) Amount of Monthly Payments** or at a different place if required by the Note Holder.

My monthly payment will be in the amount of U.S. **$616.34**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200 1/01
ITEM 1646.1 (0011)          *(Page 1 of 3 pages)*          GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

CONFIDENTIAL

Picatinny Federal Credit Union

## ALLONGE TO PROMISSORY NOTE

LOAN INFORMATION
Loan Number: 301303333
Borrower(s):

REDACTED

Address:

Note Amount: 102,800.00
Note Date: 2/23/2004

Pay to the order of:

U.S. MORTGAGE CORPORATION
Without Recourse

DAniel J. Matthews
Name

Title LoAn Manager
Picatinny Federal Credit Union

CONFIDENTIAL

FNMA-USM000018940

**ORIGINAL**

10005970000209G2560    **NOTE**

November 09, 2005                                         New Jersey
[Date]                            [City]                  [State]

[Property Address]                    **REDACTED**

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 163,000.00                (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Picatinny Federal Credit Union, A Federal Credit Union**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      **6.0000%.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.  PAYMENTS**

(A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the      **1st**    day of each month beginning on      **January 01, 2006**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **December 01, 2035**            , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **Picatinny Federal Credit Union, P.O. Box 682, Pine Brook, NJ  07058**

or at a different place if required by the Note Holder.

(B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$ 977.27**

**4.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT            Form 3200 1/01
ITEM 1846L1 (0011)                            (Page 1 of 3 pages)                    GREATLAND ■
                                                                    To Order Call: 1-800-530-9393 ☐ Fax: 616-791-1131

## ALLONGE

**LOAN NUMBER:** 301310156

**BORROWER (S):**

**REDACTED**

**PROPERTY ADDRESS:**

**NOTE/LOAN AMOUNT: $ 163,000.00**

**NOTE/LOAN DATE:** 11/9/2005

*PAY TO THE ORDER OF:*

U.S. Mortgage Corporation

_____

## WITHOUT RECOURSE

**COMPANY NAME:** Picatinny Federal Credit Union

**AUTHORIZED SIGNATURE:** *Ron Carti*

**PRINTED NAME AND TITLE OF AUTHORIZED SIGNER:** Ron Carti
                                                 AVP

CONFIDENTIAL

FNMA-USM000017723

MIN: 1000697333000038472

# ORIGINAL

# NOTE

**December 26, 2007**
[Date]

[City]

**Pennnsylvania**
[State]

## REDACTED

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$400,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Picatinny Federal Credit Union, A Federal Credit Union**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.7500%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **February 01, 2008**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **January 01, 2038**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **PO Box 682, Pine Brook, NJ  07058**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. **$2,334.30**.

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM 1846L1 (0609)

Form 3200 1/01

GreatDocs ™
(Page 1 of 3)

**MFCD3002**

**3330003847**

CONFIDENTIAL

FNMA-USM000018693

## ALLONGE TO PROMISSORY NOTE

**LOAN INFORMATION**

Loan Number:  3330003847

Borrower(s)                                                    :

                                                          **REDACTED**

Property Address:

Note Amount: 400,000.00

Note Date:    December 26, 2007

Pay to the order of:
U.S. MORTGAGE CORPORATION

_____

Without Recourse

Picatinny Federal Credit Union

_____
Name  _____

Title  _____

US4057

CONFIDENTIAL                                            FNMA-USM000018696

\# 100059733300   **NOTE**   ORIGINAL
38142

January 04, 2008                                                    Pennasy lvania
[Date]                              [City]                              [State]

**REDACTED**

[Property Address]

**1.  BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S. $245,000.00                (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Picatinny  Federal Credit Union, A  Federal Credit Union
I will make all payments under this Note in the form of cash, check or money order.
   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**
   Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      6.1250 %.
   The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.  PAYMENTS**
   **(A)  Time and Place of Payments**
   I will pay principal and interest by making a payment every month.
   I will make my monthly payment on the    1st    day of each month beginning on      March 01, 2008
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on February 01, 2038           , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at PO Box 682, P ine Brook, NJ  07058

                                                             or at a different place if required by the Note Holder.

   **(B)  Amount of Monthly Payments**
   My monthly payment will be in the amount of U.S. $1,488.65

**4.  BORROWER'S RIGHT TO PREPAY**
   I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
   I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family— Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3200 1/01
ITEM 1644L1 (0009)                                                                    GreatDocs™
                                                                                      (Page 1 of 3)

MFCD3002                                                                   3330003814

## ALLONGE TO PROMISSORY NOTE

**LOAN INFORMATION**

Loan Number: 3330003814

Borrower(s)                                                    :

**REDACTED**

Property Address:

Note Amount: 245,000.00

Note Date:    January  4, 2008

Pay to the order of:

U.S. MORTGAGE CORPORATION

_____

Without Recourse

Picatinny Federal Credit Union

*Bill Donly*
Name *Bill Donly*

Title    *CEO*

US4057

CONFIDENTIAL                                                           FNMA-USM000018701

# EXHIBIT B

1      UNITED STATES DISTRICT COURT

2      FOR THE DISTRICT OF NEW JERSEY

3      HONORABLE JOSEPH A. GREENAWAY

4      CIVIL ACTION NO. 09-01295 (JAG)

5

6    PICATINNY FEDERAL CREDIT UNION,   :

7           Plaintiff,            :

8      vs.                  :

9    FEDERAL NATIONAL MORTGAGE          :

10   CORPORATION,                 :

11          Defendant.            :

12   - - - - - - - - - - - - - - - - - -

13

14

15      DEPOSITION OF:  WILLIAM DARLING

16         FRIDAY, FEBRUARY 12, 2010

17

18

19

20         ROSENBERG & ASSOCIATES, INC.

21      Certified Court Reporters & Videographers

22   425 Eagle Rock Ave., Suite 201     575 Madison Ave.

23   Roseland, NJ 07068         New York, NY 10022

24   (973) 228-9100    1-800-662-6878    (212) 868-1936

25         www.rosenbergandassociates.com

1    maintaining the folder for us.

2        Q.    Other than filling in for

3    Mr. Mathews when he was on vacation, did your

4    responsibility for the first mortgage

5    operation change at all during the period of

6    time when you were the servicing manager?

7        A.    Can you say it again, please.

8            MR. KRAUS:  Probably not.  Can

9    you read it back.

10           (Whereupon, the reporter read

11   back the requested question.)

12       A.    I don't recall.

13       Q.    At any point in time while you

14   were the servicing manager, did you meet

15   Michael McGrath, the CEO of US Mortgage and

16   CU National?

17       A.    No.

18       Q.    Did you ever speak to him on the

19   telephone?

20       A.    Yes.

21       Q.    Approximately how many times?

22       A.    I don't know.

23       Q.    More than a few?

24       A.    Very few.

25       Q.    Less than ten?

1    A.    Yes.

2    Q.    Less than five?

3    A.    Five or less.

4    Q.    Do you remember what the reasons

5    were why you spoke to him?

6    A.    Yes.

7    Q.    What were the reasons?

8    A.    When I arrived at the credit

9    union I was tasked to rewrite the member

10   business loan policy.  In doing so I

11   recognized that we had a loan out.  And when

12   I was accumulating all of the information

13   regarding the loan, I requested Michael J.

14   McGrath for updated financial statements on

15   US Mortgage to complete the loan file.

16   Q.    So, did this have to do with the

17   business line of credit to CU National?

18   A.    Yes.

19   Q.    Did Mr. McGrath provide the

20   updated financials?

21   A.    Yes.

22   Q.    Were they late, as compared to

23   when they were due under the loan agreement?

24   A.    No.

25   Q.    Did you ask Mr. McGrath to

1    provide financial statements for CU National?

2    A.    Yes.

3    Q.    Did he?

4    A.    Yes.

5    Q.    Were they late, as compared to

6    the obligations under the loan agreement?

7    A.    No.

8    Q.    Do you know if the financial

9    statements provided by CU National showed

10    that it met the net worth requirements of the

11    business loan agreement?

12    MR. FORTE:  Object to the form.

13    I think it lacks foundation.

14    A.    I don't recall there being any

15    net worth requirements.

16    Q.    Okay.  We will show you the

17    agreement later.

18    What else did you talk to

19    Mr. McGrath about, if anything, other than

20    getting these financial statements?

21    A.    Requested personal financial

22    statements and tax returns.

23    Q.    Did he provide those?

24    A.    Yes, he did.

25    Q.    Was there anything else you

1    talked about?

2         MR. FORTE:  Just so that we are

3    clear, at any time or during this period?

4         MR. KRAUS:  Well, he said that

5    there were only five calls.

6      Q.    In the five calls that you -- or

7    less than five calls, to be more precise.

8    Were all of those calls in the context of

9    getting this information relating to the

10   business loan?

11     A.    Yes, they were.

12     Q.    Was there anything else that you

13   talked to him about, besides getting the

14   financial statements for the two entities and

15   getting the personal information you just

16   described?

17     A.    All the other items that were

18   related to the business loan.

19     Q.    Like what?

20     A.    We were named as -- the credit

21   union was to be named as a loss payee on his

22   life insurance answer policy, and I could not

23   find proof of that when I was gathering the

24   information from Steve Lardiere on the member

25   business loan, so that was something else

1    that I requested of him.

2    Q.   Did he provide that?

3    A.   Yes, he did.

4    Q.   Anything else that you can

5    recall?

6    A.   No.

7    Q.   And to the best of your

8    recollection, those were the only times you

9    ever spoke to Mr. McGrath?

10    A.   Yes.

11    Q.   Did you ever speak to any other

12    employees of either CU National or US

13    Mortgage?

14    A.   Yes.

15    Q.   To whom did you speak?

16    A.   Phil Scialabba.

17    Q.   How often did you talk to

18    Mr. Scialabba?

19    A.   Not often.

20    Q.   More or less than ten times?

21    A.   It was only when I had a problem

22    with my members.  He was my go-to person if I

23    had a problem.

24    Q.   Do you remember any specific

25    problems that you discussed with

1    agreement with CU National that you read in

2    2006 and again in preparation for your

3    testimony today?

4        A.    Yes, it appears to be.

5        Q.    I think you testified earlier

6    that you learned that Picatinny had

7    previously used CUMANET as a servicer for its

8    first mortgage loans before it entered into

9    this agreement; is that correct?

10       A.    Yes.

11       Q.    And you also told me that at --

12   during that relationship with CUMANET that

13   CUMANET would hold original mortgage notes on

14   behalf of Picatinny, correct?

15       A.    Correct.

16       Q.    And I think you told me that it

17   was done in part because it would facilitate

18   CUMANET's work when there was a payoff of the

19   mortgage, correct?

20       A.    Correct.

21       Q.    Can you explain to me why it was

22   necessary to allow CUMANET to hold original

23   notes in order to facilitate payoffs, rather

24   than simply delivering them the original

25   notes by overnight mail?

1          MR. FORTE:  Just note my

2     objection.  This witness wasn't designated to

3     testify on that issue and wasn't even with

4     the company at the time CUMANET was doing the

5     servicing.

6          MR. KRAUS:  Okay.  Then his

7     answer may or may not be, I don't know.

8      A.     I believe it made it easier for

9     CUMANET to -- to manage the day-to-day

10    servicing operations for the credit union to

11    have the original notes, so that they could

12    return the paid notes to the borrowers when

13    the loan was paid.

14     Q.     But why couldn't they return the

15    paid notes after getting them by overnight

16    mail from Picatinny?

17     A.     I don't know why.

18     Q.     They certainly could have,

19    couldn't they?

20     A.     I don't know why.  I believe it

21    -- it was just easier for them to do it.  We

22    weren't set up to do it at the credit union

23    and we relied on them to do it.

24     Q.     Does the credit union have

25    fireproof filing cabinets?

1      A.    Yes.

2      Q.    Does the credit union have a

3   safe?

4      A.    Yes.

5      Q.    Why couldn't the credit union

6   keep these notes in a fireproof cabinet

7   inside a safe?

8      A.    We didn't -- we didn't have the

9   infrastructure set up to service --

10     Q.    I am not asking about servicing.

11   I am only asking about the possession and

12   custody of the original notes.  Would you

13   agree with me that Picatinny at all times

14   between 1999 and 2009 had the physical

15   capability of maintaining the original notes

16   in fireproof cabinets inside a safe?

17         MR. FORTE:  I object to the form

18   of the question, but you can answer it.

19     A.    I don't think so.

20     Q.    Why not?

21     A.    I don't think we had the room for

22   it.

23     Q.    What's -- what do you mean, you

24   didn't have the room for it?

25     A.    The safe that we have in Rockaway

1    is -- and in building 30 is for maintaining

2    currency and coin and the teller cash boxes.

3    So, there is no room there.  The other

4    fireproof safes are filled to capacity.

5        Q.    And they have been filled to

6    capacity at all times between 1999 and 2009?

7        A.    To the best of my knowledge.

8        Q.    How many notes are we talking

9    about; do you know?

10        MR. FORTE:  Note my objection.

11    Notes, in what context?

12        Q.    Original mortgage notes.  At any

13    one time, how many original mortgage notes

14    did Picatinny have outstanding?

15        A.    How many original mortgage notes

16    did we have outstanding?

17        Q.    Right.

18        A.    Mortgage notes in our portfolio?

19        Q.    Right.

20        A.    Over 100.

21        Q.    And if they are four or five

22    pages each, are you telling me that you never

23    had space in a secure place to hold 500

24    pages?

25        A.    The credit union maintained in

1      A.      I don't know that that was an

2      important fact to enter into the agreement

3      with CU National.

4          Q.      Do you know -- do you know after

5      the agreement was entered into whether it was

6      important to Picatinny that US Mortgage, CU

7      National's affiliate, had the ability to sell

8      loans to Fannie Mae?

9      A.      I know that now.

10         Q.      And it was important, correct?

11     A.      I don't know that it was

12     important in negotiating a contract, but I

13     know that now.

14         MR. FORTE:  He is only saying he

15     has the knowledge of that today.

16         MR. KRAUS:  I understand that,

17     but that is not my question.

18         Q.      Let me try my question again.

19     Today, do you know that it was at some point

20     in time important to Picatinny that CU

21     National's affiliate, US Mortgage, had

22     ability to sell loans to Fannie Mae?

23     A.      Yes.

24         Q.      And would you agree that it was

25     important?

1    A.    Yes.

2    Q.    And would you agree that at least

3    as far back as 2003 it was important?

4    A.    Yes.

5          MR. FORTE:  I think that's been

6    established.

7    Q.    Do you know who prepared the

8    first draft of this agreement?

9    A.    I do not.

10         MR. FORTE:  Just note my

11   objection.  It lacks foundation.

12         MR. KRAUS:  Somebody prepared a

13   first draft.

14         MR. FORTE:  No, it could have

15   been a final version.  There could have been

16   no drafts.

17         MR. KRAUS:  Then the first draft

18   and the final would be the same thing, Jim.

19   Q.    Do you know if there was any

20   negotiation and any changes made to any of

21   the terms of this agreement?

22   A.    Since?

23   Q.    No, before it was entered into.

24   A.    I do not.

25   Q.    Do you know if there have been

1    A.    That is correct.

2    Q.    So, you are not the person who

3    would be personally knowledgeable about what

4    the full scope of CU National's authority to

5    sign documents on behalf of Picatinny was;

6    fair to say?

7    A.    Correct.

8    Q.    Now, to go back to page five,

9    subparagraph F, as you understand the

10    practice and as it was described in this

11    agreement, CU National would handle the

12    closing on behalf of Picatinny, correct?

13    A.    Yes.

14    Q.    No representative of Picatinny,

15    other than a CU National employee, attended

16    closings; is that correct?

17    A.    Correct.

18    Q.    And any documents that needed to

19    be signed on behalf of Picatinny would be

20    signed by someone from CU National, correct?

21        MR. FORTE:  I don't know what

22    that means.

23        MR. KRAUS:  At the closing.

24    A.    That is correct.

25    Q.    The subparagraph ends by saying

1      Picatinny some cash flow, correct?

2          A.    I don't know.

3          Q.    Well, you didn't have the money

4      for however many days it was late, right?

5          A.    Correct.

6          Q.    And not having a million 300

7      thousand dollars for even a couple of days is

8      important to Picatinny; would you agree with

9      that?

10         A.    Yes.

11         Q.    So, this was a not insignificant

12     problem, in your judgment, when you became

13     aware of it; is that fair to say?

14         A.    I am sorry.  Say that again.

15         Q.    This was a material issue to you

16     when you became aware of it?

17         A.    Yes.

18         Q.    Is that fair to say?

19         A.    Yes.

20         Q.    Do you know how borrower payments

21     were supposed to be dealt with by CU

22     National?

23             MR. FORTE:  Object to the form of

24     the question, but you can answer.

25         A.    How borrowers' -- how borrowers'

1     payments were handled by CU National?

2     Q.   Sure.  Let me see if I can make

3     the question more precise to you.  I will

4     represent to you, and Mr. Forte can correct

5     me if I am wrong, that the typical mortgage

6     note issued on behalf of Picatinny through CU

7     National would provide that the borrower is

8     supposed to make monthly principal and

9     interest payments by cash or by check made

10    payable to Picatinny that would be delivered

11    to the office address of CU National.

12        And what I want to know is what

13    happened to the checks after they got

14    delivered to CU National, if you know?

15    A.   CU -- CU National deposited those

16    checks into their account.

17    Q.   So, even though it was a check

18    made payable to Picatinny, CU National would

19    endorse it on the back in the name of

20    Picatinny?

21    A.   I don't know how they would

22    endorse the back of the check.

23    Q.   Well, they couldn't endorse it in

24    the name of CU National and get it deposited

25    under good banking procedures; would you

1    agree with that?

2        A.    I would have to see the

3    endorsement on the back of the check.  I

4    don't know how they endorsed the back of the

5    check.

6        Q.    Are you aware of any instance

7    where under good banking procedures an

8    endorsement in the name of a different

9    company that was the payee of the check would

10   be acceptable?

11       MR. FORTE:  Note my objection as

12   to good bank procedures.

13       MR. KRAUS:  Well, he has got a

14   long career in banking.

15       MR. FORTE:  What does that mean,

16   good banking procedures?

17       A.    If the endorsement is not

18   endorsed as drawn, it is not normally

19   accepted.

20       Q.    That is all I wanted to know.

21   So, if it is drawn to the name of Picatinny,

22   ordinarily it would have to be endorsed in

23   the name of Picatinny?

24       A.    Correct.

25       Q.    And do you know if CU National

1    was authorized to endorse such checks -- that

2    is, borrower payment checks -- in the name of

3    Picatinny and then deposit them into a CU

4    National account?

5        A.    I don't know.

6            MR. KRAUS:  Let's mark as the

7    next exhibit in order a set of Picatinny's

8    Answers and Objections to Defendant's First

9    Set of Interrogatories.

10           (Whereupon, Exhibit 9 was marked

11   for identification.)

12       Q.    I am handing you what we marked

13   as Exhibit 9.  Have you ever seen those

14   answers and objections before?

15       A.    Yes.

16       Q.    When did you see them before

17   this?

18       A.    Back in June of 2009.

19           MR. FORTE:  Just so the record is

20   clear, there is also a cover letter attached,

21   and I guess supplementing -- more than a

22   cover letter.  Two letters attached

23   supplementing Answers to Interrogatories

24   within P-9 -- or D-9, I should say.

25           MR. KRAUS:  That is correct.  It

1   is not that there is a cover letter attached,

2   Jim.  I believe there are two supplementation

3   letters.

4         MR. FORTE:  Right.

5     Q.    And when you looked at a page of

6   the Interrogatory responses to say that you

7   have seen them at least in June -- on my

8   birthday, by the way -- you were looking at

9   the page where you verified the answers; is

10   that correct?

11     A.    Where I signed, yes.

12     Q.    And you verified the answers

13   under oath?

14     A.    Yes.

15     Q.    And your verification says in the

16   second paragraph that you verified those

17   answers based on your personal knowledge of

18   some of the matters; and for those matters

19   where you didn't have personal knowledge you

20   believed them to be true, based upon, among

21   other things, documents that Picatinny

22   maintained; is that right?

23     A.    Correct.

24     Q.    Now let me direct your attention

25   to the response to Interrogatory three, which

1      appears on pages four and five.  Could you

2      read that to yourself and let me know when

3      you are done.  Let me direct --

4          A.    Okay.

5          Q.    Does that refresh your

6      recollection that the way that the process

7      worked was that checks issued by its members

8      to the order of Picatinny in payment of their

9      first mortgage loans were endorsed by CU

10     National in Picatinny's name?

11         A.    Yes.

12         Q.    And what documents -- was this

13     something you knew as of your personal

14     knowledge when you signed your verification

15     to the Interrogatories?

16            MR. FORTE:  Do you understand

17     what he means by personal knowledge, because

18     we have had this issue before?

19            THE WITNESS:  I don't think so.

20         Q.    Well, from -- going forward --

21     and, in fact, even looking backward -- what I

22     mean by personal knowledge is that something

23     you know, based upon your own personal

24     observation or what you learned in the

25     ordinary course of your duties for Picatinny

1      during the period from when you joined

2      Picatinny through February, 2009.  Things

3      that you learned only in order to prepare

4      yourself to testify as a corporate

5      representative would fall outside the scope

6      of what I mean by personal knowledge.  Do you

7      understand that?

8          A.    Not completely, no.

9          Q.    What is it you don't understand?

10         A.    Can you ask me the question

11     again.  I am sorry.

12         Q.    Sure.  With respect to the way in

13     which borrower payment checks that were

14     payable to Picatinny were dealt with by CU

15     National.

16         A.    Right.

17         Q.    Was that something that you knew

18     based upon your personal knowledge or was it

19     something that you learned by reviewing

20     documents or talking to others?

21         A.    I learned it in talking to

22     others.

23         Q.    Who?

24         A.    In talking to Bob Squillante and

25     Jim Forte.

1           MR. FORTE:  We don't want to get

2      into that.  We don't want to get into what

3      you knew from your discussions with lawyers.

4      That we don't want to get into.

5           Q.    Did you learn it from anybody

6      else?

7           A.    I learned it from reading the

8      agreement.

9           Q.    What did you rely upon in the

10     agreement?

11          A.    I relied upon in the agreement

12     where it -- it has loan production services

13     and associated services.

14          Q.    Can you tell me what words in the

15     agreement you are relying upon as support for

16     your understanding of how payments were dealt

17     with?

18          A.    I don't see it specifically, but

19     I drew that conclusion by reading the

20     associated program services that outlined

21     everything that they were doing for us.

22          Q.    Okay.  Are you familiar with what

23     the term negotiable instrument means?

24          A.    Yes.

25          Q.    What is your understanding of

1     what that term means?

2        A.     A negotiable instrument is a --

3     can be in the form of a check.  It can be in

4     the form of currency.  And if it is in the

5     form of currency, it is legal tender owned by

6     the bearer; and if it is in the form of a

7     check, it is normally paid to a party for

8     whatever purpose it was intended.

9        Q.     Do you understand that a

10    promissory note is also a negotiable

11    instrument?

12           MR. FORTE:  Note my objection.

13    That is a mischaracterization.  It can be a

14    negotiable.

15       Q.     Do you understand that a mortgage

16    note can be a negotiable instrument?

17       A.     Yes.

18       Q.     Do you understand that the

19    standard form of promissory note used by

20    Picatinny for its first mortgages was a

21    negotiable instrument?

22       A.     Yes.

23       Q.     Let's go back to the checks for a

24    second.  Is it correct that your

25    understanding was that CU National would

1    endorse the checks that were made payable to

2    Picatinny and then deposit them into a CU

3    National account?

4        A.    It was my understanding that they

5    would collect the payments, as any mortgage

6    servicer would do.  I think CUMANET did the

7    same thing for us when we left CUMANET to go

8    to CU National, and I believe CUMANET is

9    doing that today when we left CU National.

10   So, that is my understanding of the servicing

11   industry and that's the way they practice.

12       Q.    But that's not the question I

13   asked you.  Could you read back the question

14   I asked you and then could you try to answer

15   that question?

16          MR. FORTE:  I think he did.

17          MR. KRAUS:  Actually, not even

18   close.

19          MR. FORTE:  Well, that's your

20   view.

21          MR. KRAUS:  Listen to the

22   question.

23          (Whereupon, the reporter read

24   back the requested question.)

25          MR. FORTE:  Referring to members'

1    checks in payment of loans?

2         MR. KRAUS:  Yes.  It is a simple

3    yes-or-no question.

4         MR. FORTE:  Well, there were

5    things left out in the question.

6         MR. KRAUS:  That's okay.  You

7    don't get to put them in.  I get to ask the

8    question.

9         MR. FORTE:  No, you get to ask

10   proper questions.

11        MR. KRAUS:  It is a perfectly

12   proper question.  I will rephrase it because

13   I live to make Mr. Forte happy.

14    Q.    Is it correct to say that it is

15   your understanding that members' checks in

16   payment of their principal and interest

17   obligations on their mortgages that were made

18   payable to Picatinny were endorsed by CU

19   National and then deposited into a CU

20   National bank account?

21    A.    I don't know what bank account it

22   was deposited into, but yes.

23    Q.    I understand you don't know

24   precisely where the bank account was located,

25   but the bank account was in the name of CU

1    National, correct?

2        A.    I don't know that the bank

3    account was in the name of CU National.

4        Q.    Well, it wasn't in the name of

5    Picatinny; is that correct?

6        A.    Correct.

7        Q.    And would it be consistent with

8    your experience that in order for that to

9    happen with a check that was made payable to

10   Picatinny that CU National would have to

11   endorse it on the back in the name of

12   Picatinny and make it payable to the order of

13   whose ever bank account it was being

14   deposited into?

15       A.    Yes.

16       Q.    And if we assume for the moment

17   that it was deposited into a CU National bank

18   account, during the period of time that it

19   was in a CU National bank account, it was

20   outside of Picatinny's control, correct?

21       MR. FORTE:  Wait.  That is such

22   an improper question.  I mean, it all depends

23   on where the account is maintained.

24       MR. KRAUS:  Well, we have already

25   decided it is not in a Picatinny account.

1             MR. FORTE:  If it is a CU

2    National account at Picatinny.

3             MR. KRAUS:  It is not.  He just

4    said it wasn't.

5             MR. FORTE:  I didn't hear that.

6    I am sorry.

7             MR. KRAUS:  He did.  He did.  It

8    is not at Picatinny.

9             MR. FORTE:  I am sorry.  I did

10   not hear that.

11            MR. KRAUS:  Then you withdraw

12   your objection?

13            MR. FORTE:  If that is what the

14   witness said.

15            MR. KRAUS:  Yes, he did.

16      A.    You didn't ask me where the

17   account was.

18      Q.    No, actually, I did.

19      A.    No, you didn't.

20            MR. FORTE:  No, you said it

21   didn't matter where the account was.

22      Q.    You know that the account was not

23   at Picatinny, right?

24      A.    Which account?  I know that there

25   is an account at Picatinny.

1       Q.     You know that they weren't

2    depositing borrowers' principal and interest

3    payment into an account at Picatinny?

4            MR. FORTE:  I object to that.  I

5    think that is a complete mischaracterization.

6    If he knows.

7       A.     I don't believe so.

8       Q.     Okay.  So, let's assume,

9    consistent with your belief, that the monies

10   were being deposited into an account that was

11   not at Picatinny and that was not in -- well,

12   let me rephrase that.

13          It is also true that whatever

14   account they were depositing these monthly

15   principal and interest payments into wasn't

16   in the name of Picatinny, wherever it was

17   located, correct?

18      A.     Correct.

19      Q.     So, they are depositing all this

20   money, more than a million dollars a month,

21   into an account somewhere that is not under

22   the control of Picatinny, correct?

23      A.     Correct.

24      Q.     Why didn't you require that they

25   deposit it into an account at Picatinny?

1      Q.    Section three entitled Secondary

2    Market Sales Services.

3      A.    Okay.

4      Q.    Now, you told me earlier that

5    until this litigation started you didn't

6    personally know that such sales would

7    actually be handled by CU National's

8    affiliate, US Mortgage.  Do you remember that

9    testimony?

10     A.    Yes.

11     Q.    Do you now know that others at

12   Picatinny knew at least as far back as 2003

13   that US Mortgage was going to handle the

14   actual sales?

15     A.    Yes.

16     Q.    Do you know how early anybody at

17   Picatinny knew that US Mortgage would handle

18   the actual sales?

19     A.    As early as the bulk sale in

20   2003.  That's -- that's the timeframe that I

21   know.

22     Q.    Okay.  Do you know if anybody

23   knew that before 2003, before the bulk sale

24   in 2003?

25     A.    I do not know that.

1      Q.    Did you ask Mr. Lardiere that

2    question?

3      A.    Specifically before the bulk

4    sale, no.

5      Q.    Do you know when the first time

6    Picatinny sold loans to the secondary market

7    through US Mortgage was?

8      A.    The specific date, no.

9      Q.    Do you know that there were sales

10   that preceded the bulk sale in August and

11   September of 2003?

12     A.    Yes.

13     Q.    Did you discuss those with

14   Mr. Lardiere?

15     A.    No, I did not.

16     Q.    Do you know who endorsed those

17   notes on behalf of Picatinny?

18     A.    Yes, I do.

19     Q.    Who did?

20     A.    Steve Lardiere.

21     Q.    All of them?

22     A.    There may have been one or two

23   that was signed by Dan or myself in his

24   absence.

25     Q.    Do you know how the endorsements

1        MR. FORTE:  Note my objection.

2    You asked that this morning.

3        MR. KRAUS:  That is just a

4    preamble to a question I didn't ask this

5    morning.

6        A.    Can you ask it again, please.

7        Q.    Sure.  Generally speaking, do you

8    understand how the process worked when

9    Picatinny would sell a loan to Fannie Mae

10   through CU National or US Mortgage?

11       A.    Generally, yes.

12       Q.    Did CU National or US Mortgage

13   pay money to Picatinny for loans that were

14   going to be sold at the moment that they were

15   instructed to sell them?  Maybe that is

16   unclear.  Let me try it again.  Let's try it

17   this way.

18       As I understand the process as it

19   was supposed to work, if Picatinny decided to

20   sell a loan, in most instances it would

21   provide an alonge to CU National or US

22   Mortgage that would endorse the note over to

23   US Mortgage, correct?

24       A.    Correct.

25       Q.    At the point in time when you

1    delivered that alonge, had US Mortgage paid

2    you any money?

3        A.    I don't believe so.

4        Q.    Whatever money you were going to

5    get from the sale of that particular note

6    would come after Fannie Mae paid US Mortgage?

7    Is that the way it normally worked?

8        A.    I don't know.

9        Q.    Do you know when Picatinny was

10   supposed to get paid?

11       A.    Not specifically.

12       Q.    You do know that you endorsed the

13   note to US Mortgage before you got any money?

14       A.    Correct.

15       Q.    So, at that point in time US

16   Mortgage has the ability to sell your loan,

17   but you haven't gotten any money?

18       A.    Yes.

19       Q.    And they in the ordinary course

20   would sell that loan to Fannie Mae and

21   eventually get paid by Fannie Mae?  Is that

22   your understanding?

23            MR. FORTE:  Object to the form of

24   the question.  It is without foundation.  But

25   you can answer.

1    A.    Yes.

2    Q.    And did you ever get your money

3    before US Mortgage got its money from Fannie

4    Mae?

5    A.    I have no way of knowing that.  I

6    do not know.

7    Q.    In any event, when you delivered

8    the endorsement to US Mortgage, you were

9    trusting upon them to eventually pay you for

10    that note, correct?

11    A.    Yes.

12    Q.    But you had turned over to them

13    the ability to sell the note to others

14    without getting paid?

15    A.    Yes, I did.  Also they had over

16    $2 million in their accounts, though, so if I

17    needed to offset, I could have.  At any given

18    time I had well over $2 million in their

19    accounts.

20    Q.    Did you have any agreement with

21    them that gave you the right to offset

22    against those accounts?

23    A.    No.

24    Q.    Why did they maintain accounts

25    with $2 million at Picatinny?

# EXHIBIT C

**From:**          Phil Scialabba [PScialabba@usmtg.com]
**Sent:**          Monday, March 05, 2007 4:32 PM
**To:**            Andrew Lowe
**Cc:**            Claudia Ferrone; Keith B. McCarthy; Dan Mathews; Jill Peterson; National Sales
                   Team
**Subject:**       RE: Pipeline from CU National

Andrew,

   Do you have a PDF version of last Wednesday's pipeline report for Picatinny (2/28)? If so, can you email it to everyone on this email. If not, can you scan the paper version of that report and then email the scan to everyone on this email. Thanks Drew.

   Phil

     -----Original Message-----
     **From:** Dan Mathews [mailto:DMathews@picacreditunion.com]
     **Sent:** Monday, March 05, 2007 4:02 PM
     **To:** Jill Peterson; Phil Scialabba
     **Cc:** Claudia Ferrone; Keith B. McCarthy
     **Subject:** FW: Pipeline from CU National

     Jill/Phil, can someone email the pipeline report as of the end of Feb as Claudia needs it for her reports. I tried to access the C.U. Nat'l website but I could not get on after I put in my username and password. Jill, not sure if you sent Keith a username and password but maybe you can and Claudia as well so they can access reports when they are available

     **From:** Claudia Ferrone
     **Sent:** Monday, March 05, 2007 3:23 PM
     **To:** Dan Mathews
     **Subject:** RE: Pipeline from CU National

     I receive faxes from CU national!


     **From:** Dan Mathews
     **Sent:** Monday, March 05, 2007 3:22 PM
     **To:** Claudia Ferrone
     **Subject:** RE: Pipeline from CU National

     I didn't get anything. Who gives this info to you each month?


     **From:** Claudia Ferrone
     **Sent:** Monday, March 05, 2007 3:12 PM
     **To:** Dan Mathews
     **Subject:** Pipeline from CU National

     Dan: Did you receive an End of month Pipeline from CU national?
     I did not and I need a Number from it for the February financial statements.
     Can you please let me know if you have this, and if not who I can get this from?
     Thanks, Claudia


**Disclaimer:**

This message is intended only for the use of the individual or entity to which it is addressed, and may contain information not designed for dissemination to the general public. If you have received this communication in error, please delete it and notify us immediately. The information contained in this e-mail may be proprietary, confidential, privileged or exempt from disclosure under law. If the reader is not the intended recipient, please reply and delete your copy of this message. This email transmission has undergone a strict content analysis for Spam, HTML threats, malicious code, email exploits, and virus/worm activity by GFI MailSecurity/GFI Mail Essentials according to our Corporate Email Security Policy before being released.

# SEPARATOR

**From:**        Michael McGrath [mmcgrathjr@usmtg.com]
**Sent:**        Friday, March 21, 2008 12:21 PM
**To:**         Claudia Ferrone

icestona@JHCohn.com Michael@usmtg.com ghedges@usmtg.com

Michael J. McGrath Jr.
President
US Mortgage Corp.
CU National Mortgage LLC
19 D Chapin Road
Pine Brook, NJ 07058
973.244.7100 x 1106
973.244.9062 fax


Disclaimer:
This message is intended only for the use of the individual or entity to which it
is addressed, and may contain information not designed for dissemination to the
general public. If you have received this communication in error, please delete it
and notify us immediately. The information contained in this e-mail may be
proprietary, confidential, privileged or exempt from disclosure under law. If the
reader is not the intended recipient, please reply and delete your copy of this
message. This email transmission has undergone a strict content analysis for Spam,
HTML threats, malicious code, email exploits, and virus/worm activity by GFI
MailSecurity/GFI Mail Essentials before being released.

PICA0001498

# SEPARATOR

| | |
|---|---|
| **From:** | Michael McGrath [mmcgrathjr@usmtg.com] |
| **Sent:** | Friday, March 21, 2008 10:58 AM |
| **To:** | Claudia Ferrone |
| **Cc:** | Iveth Cestona; Glenn Hedges |
| **Attachments:** | Picatinny FCU Confirm.pdf |

Claudia;

In conjunction with the certification of our year end audit we have been asked to confirm the servicing portfolio currently being serviced on behalf of Picatinny. Could you please review this documentation and execute the confirmation. If you are able to scan this document please reply to all on this email. All balances are as of 12/31/07. If you have any questions feel free to call me.

Michael J. McGrath Jr.
President
US Mortgage Corp.
CU National Mortgage LLC
19 D Chapin Road
Pine Brook, NJ 07058
973.244.7100 x 1106
973.244.9062 fax

**Disclaimer:**
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information not designed for dissemination to the general public. If you have received this communication in error, please delete it and notify us immediately. The information contained in this e-mail may be proprietary, confidential, privileged or exempt from disclosure under law. If the reader is not the intended recipient, please reply and delete your copy of this message. This email transmission has undergone a strict content analysis for Spam, HTML threats, malicious code, email exploits, and virus/worm activity by GFI MailSecurity/GFI Mail Essentials before being released.

PICA0001499

# SEPARATOR

| From: | Richard Barrett [rbarrett@usmtg.com] |
|---|---|
| Sent: | Tuesday, June 27, 2006 12:02 PM |
| To: | Claudia Ferrone |
| Cc: | Ronald Carti |
| Subject: | CU NATIONAL LLC-WIRE-2 LOANS-6/27/06 |
| Attachments: | PICATINNY-Zatorski 301310156.xls; PICATINNY-Jones 301309509.xls |

<<PICATINNY-Zatorski 301310156.xls>> <<PICATINNY-Jones 301309509.xls>>

**Disclaimer:**
This message is intended only for the use of the individual or entity to which it
is addressed, and may contain information not designed for dissemination to the
general public. If you have received this communication in error, please delete it
and notify us immediately. The information contained in this e-mail may be
proprietary, confidential, privileged or exempt from disclosure under law. If the
reader is not the intended recipient, please reply and delete your copy of this
message. This email transmission has undergone a strict content analysis for Spam,
HTML threats, malicious code, email exploits, and virus/worm activity by GFI
MailSecurity/GFI Mail Essentials according to our Corporate Email Security Policy
before being released.

# SEPARATOR

| | |
|---|---|
| **From:** | Richard Barrett [rbarrett@usmtg.com] |
| **Sent:** | Tuesday, March 13, 2007 10:55 AM |
| **To:** | Claudia Ferrone |
| **Cc:** | Ronald Carti |
| **Subject:** | CU National Mortgage LLC - Wire - 3 Loans |
| **Attachments:** | SMURLA, M. 3330001358.xls; LLEWELLYN, R. 3330001221.xls; HOLMES, C. 3330001412.xls |

**Disclaimer:**
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information not designed for dissemination to the general public. If you have received this communication in error, please delete it and notify us immediately. The information contained in this e-mail may be proprietary, confidential, privileged or exempt from disclosure under law. If the reader is not the intended recipient, please reply and delete your copy of this message. This email transmission has undergone a strict content analysis for Spam, HTML threats, malicious code, email exploits, and virus/worm activity by GFI MailSecurity/GFI Mail Essentials according to our Corporate Email Security Policy before being released.

PICA0001505

# SEPARATOR

| From: | Swapan Roy [sroy@usmtg.com] |
|---|---|
| Sent: | Tuesday, April 01, 2008 4:25 PM |
| To: | Claudia Ferrone |
| Cc: | Leroy Hayden; Keith B. McCarthy |
| Subject: | Monthend report for March 31,2008 |
| Attachments: | PICATINNY FCU-MONTHEND REPORT MARCH 08.xls |

Hi claudia,
Please find the following attachment for the subject report. If you have any question, please call me at my phone # 973-244-7100 , ext 1450

Thank you
Have a great day
<<PICATINNY FCU-MONTHEND REPORT MARCH 08.xls>>

Disclaimer:
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information not designed for dissemination to the general public. If you have received this communication in error, please delete it and notify us immediately. The information contained in this e-mail may be proprietary, confidential, privileged or exempt from disclosure under law. If the reader is not the intended recipient, please reply and delete your copy of this message. This email transmission has undergone a strict content analysis for Spam, HTML threats, malicious code, email exploits, and virus/worm activity by GFI MailSecurity/GFI Mail Essentials before being released.

PICA0001531

# SEPARATOR

Email from Phil Scialabba 8 23 2006 RE FASB 91 Accounting.txt
From:    Phil Scialabba [PScialabba@usmtg.com]
Sent:    Wednesday, August 23, 2006 10:05 AM
To:      Leroy Hayden
Cc:      Claudia Ferrone; Dan Mathews; Bill Darling; Keith B. McCarthy; Veronica
Cassidy; National Sales Team
Subject:      RE: FASB 91 Accounting

Leroy,

        Can you please check this out with FICS.  It sounds like this is
something that, if it does exist, would exist in mortgage accountant, not in
the mortgage servicer itself.  I think Keith is talking about amortizing the
discount points.  The only problem is that the only time we put discount
points into FICS is when they can be considered "tax deductible" by the
Member, so that they show up on the 1098 form.  Please check this out with
FICS and let me know so that I can get back to Keith.

        Thanks,
              Phil

-----Original Message-----
From: Keith B. McCarthy [mailto:KMcCarthy@picacreditunion.com]
Sent: Wednesday, August 23, 2006 9:57 AM
To: Phil Scialabba
Cc: Claudia Ferrone; Dan Mathews; Bill Darling
Subject: FASB 91 Accounting


Phil

Does FICS ahve a module that does the FASB 91 amortization for fees and
charges on mortgages loans. We are currently doing this manually and it is
time consuming. It would be great if we could automate this. Most core service
providers offer this as part of their loan systems. Could you find out. Thanks


Keith


Disclaimer:
This message is intended only for the use of the individual or entity to which
it is addressed, and may contain information not designed for dissemination to
the general public. If you have received this communication in error, please
delete it and notify us immediately. The information contained in this e-mail
may be proprietary, confidential, privileged or exempt from disclosure under
law. If the reader is not the intended recipient, please reply and delete your
copy of this message. This email transmission has undergone a strict content
analysis for Spam, HTML threats, malicious code, email exploits, and
virus/worm activity by GFI MailSecurity/GFI Mail Essentials according to our
Corporate Email Security Policy before being released.

PICA0001503

# EXHIBIT D

1      UNITED STATES DISTRICT COURT

2      DISTRICT OF NEW JERSEY

3      CIVIL ACTION NO. 09-01295 (JAG)

4

5    PICATINNY FEDERAL CREDIT UNION,      :

6         Plaintiff,            :

7         vs.                :

8    FEDERAL NATIONAL MORTGAGE          :

9    ASSOCIATION,                :

10        Defendant.            :

11

12

13      VIDEOTAPE DEPOSITION OF:  STEPHEN J. LARDIERE

14          WEDNESDAY, APRIL 7, 2010

15

16

17

18

19

20        ROSENBERG & ASSOCIATES, INC.

21      Certified Court Reporters & Videographers

22    425 Eagle Rock Ave., Suite 201     575 Madison Ave.

23    Roseland, NJ 07068          New York, NY 10022

24    (973) 228-9100   1-800-662-6878   (212) 868-1936

25        www.rosenbergandassociates.com

1    note, it would be reasonable to expect that the

2    practice was the same while CUMAnet was the third

3    party vendor?

4        MR. LORELL:  Objection to form; calls

5    for speculation.

6    Q.    Is that correct?

7    A.    Are you asking it backwards?

8    Q.    Well, what I'm asking is the

9    following:  You just told me that you didn't

10   believe there was a change in the practice with

11   respect to receiving a copy of the mortgage note

12   when the third party vendor changed to CU

13   National, right?

14   A.    Right.

15   Q.    And I am representing to you that

16   when CU National was the third party vendor,

17   Picatinny did not receive a copy of the signed

18   mortgage note, so my question is, would it be

19   reasonable then to conclude that the same thing

20   was true while CUMAnet was the third party vendor?

21   A.    I do not believe anything changed in

22   that respect between the two vendors.

23   Q.    If nobody from Picatinny attended the

24   closing and if you didn't get a copy of the signed

25   mortgage note, how did you know that the mortgage

1    note had been signed at all?

2    A.    I don't know.

3    Q.    While CUMAnet was your third party

4    vendor, were they responsible for servicing the

5    mortgage loans after they were issued?

6    A.    Yes.

7    Q.    Did that involve them collecting

8    monthly principal and interest payments from the

9    borrowers?

10    A.    Yes.

11    Q.    In communicating with the borrowers

12    post-closing, did they do so in the name of

13    Picatinny?

14    A.    Yes.

15    Q.    Was it your goal that the member who

16    was the borrower on the mortgage loan would never

17    know that they were dealing with an outside vendor

18    rather than directly with Picatinny?

19    A.    That was our intent.

20    Q.    When the borrower had a phone call,

21    you know, a question that they wanted to raise,

22    did they call CUMAnet or did they call Picatinny?

23    A.    They called a number that we -- a

24    phone number that we provided, which rang at

25    CUMAnet with our name on it and the CUMAnet

1    Q.    Do --

2          MR. LORELL:  Let him finish.

3    A.    -- this section of page 5 is the

4    agreement that they would hold the originals.  It

5    was our intent -- since we signed it, it was our

6    intent for them to hold the originals.  Should we

7    need copies for any reason, of any document at

8    all, any and all documents, they will provide it

9    in a timely manner.

10   Q.    Do you know what particular types of

11   documents Picatinny received copies of?

12   A.    No, I don't.  I don't recall.

13   Q.    At any time while you were still

14   employed by Picatinny, did you or anybody else, to

15   your knowledge, ever ask CU National whether they

16   would return the originals to you?

17   A.    I don't recall ever asking that.

18   Q.    Did you or anyone else on behalf of

19   Picatinny ever ask CU National if they would be

20   willing to continue to provide services to

21   Picatinny even if Picatinny insisted on

22   maintaining the original notes?

23   A.    I don't recall any conversation like

24   that happening.

25   Q.    So would it be fair to say that you

1    actually don't know that CU National would have

2    refused to provide services if Picatinny wanted to

3    keep its own originals?

4         MR. LORELL:  I object to the form of

5    the question; calls for speculation.

6         MR. KRAUS:  I think that's the point.

7    Q.    You don't know that, because no one

8    ever asked; is that fair to say?

9    A.    That's fair to say.

10   Q.    Why didn't Picatinny demand complete

11   copies of every single loan file, including the

12   note?

13   A.    Well, we felt -- first of all, it's a

14   federal offense to alter them, and we have

15   auditing firms that audit the third -- all of the

16   third parties, but especially ones that hold

17   member information.  There's National Credit Union

18   Administration that comes in periodically to

19   audit, and part of the audit is the entire loan

20   portfolio.  We had external auditors who performed

21   audits of our loan portfolio, including mortgages,

22   first and second.  We have internal -- we have a

23   Supervisory Committee who from time to time might

24   or might not hire an internal auditor, that's up

25   to them, that's not hired by me, it's by them.

1    They perform these audits.  We know that there's

2    audits done periodically by the regulators that

3    regulate the mortgage companies.  So we had no

4    reason to believe that there would be any problem

5    with them holding the original notes.  One of

6    those regulators probably would have pointed that

7    out if it was going to be a problem.

8       Q.    But as we've already established,

9    you're not aware of anybody who ever actually went

10   to CU National to verify that the original notes

11   were still there, correct?

12      A.    That's correct.

13      Q.    You're not aware that anybody from

14   NCUA ever did that either, are you?

15      A.    No, I only know that NCUA went there.

16      Q.    So as you sit here today, you can't

17   point to any evidence that anybody ever verified

18   that CU National still had all of Picatinny's

19   original notes, correct?

20      A.    I can't, right.  Not being there and

21   seeing what they did, I can't say that they looked

22   at the original notes.

23      Q.    Under the procedure for -- back up.

24          While CU National was your third

25   party vendor for your first mortgage loan

1            MR. KRAUS:  On the mortgage loans.

2      A.    No, I don't believe so.

3      Q.    And do you have any recollection of

4   whether or not anybody from Picatinny ever got

5   copies of the signed mortgage notes?

6      A.    I don't recall.

7      Q.    After the loan was issued and closed,

8   the borrower would send monthly principal and

9   interest checks, correct?

10     A.    Correct.

11     Q.    Actually, one check that included

12  both?

13     A.    One check.  I understood what your

14  question was.

15     Q.    Those checks were sent to a lockbox

16  maintained by CU National; is that correct?

17     A.    Yes.

18     Q.    Do you know what CU National did with

19  those checks after they received them?

20     A.    No.

21     Q.    Those checks were made out to

22  Picatinny, correct?

23     A.    That is correct.

24     Q.    Because, again, you didn't want the

25  members to know they were dealing with any entity

1    other than Picatinny, correct?

2    A.    That's correct.

3    Q.    Was CU National authorized to endorse

4    and deposit those checks, endorsing them in the

5    name of Picatinny?

6         MR. LORELL:  Objection to form.  It's

7    a compound question.

8         MR. KRAUS:  Sure.  I'll rephrase it.

9    Q.    Was CU National authorized to endorse

10   those monthly checks on behalf of Picatinny?

11   A.    I don't recall.

12   Q.    You do know that Picatinny did not

13   receive each and every monthly check, right?

14   A.    True.

15        You mean the individual checks?

16   Q.    Right.

17   A.    Correct.

18   Q.    You would get, every month, a lump

19   assume payment from CU National, correct?

20   A.    Not entirely true.  If a member

21   wanted to come into one of our branches and make a

22   payment at one of our branches, we did have a way

23   of doing that.

24   Q.    Okay.

25   A.    We would take that check, we would

1   endorse it and we would tell CU National all the

2   particulars so they would adjust their records on

3   their end to make sure the payment was effective.

4          Those that did not come into our

5   branch and sent the check to the P.O. box which CU

6   National maintained, we would then get an

7   aggregate check from -- or a check from CU

8   National equal to the aggregate of all of those

9   payments.

10   Q.    Did CU National ever do home equity

11  lending for Picatinny?

12   A.    No.

13   Q.    Did it ever do corresponding lending,

14  as described in the agreement?

15   A.    I'm not sure what you mean by

16  corresponding lending.

17   Q.    Correspondent lending is described, I

18  think, at pages 11 and 12 of the agreement.

19   A.    Can I answer it this way:  The only

20  thing they did was first mortgages.  Now, if

21  corresponding lending is part of first mortgages,

22  then I have to briefed on what corresponding first

23  mortgage is.

24   Q.    Well, you ought to take a look at

25  pages 11 and 12.

1    A.    The one that starts, "After the

2    closing..."?

3    Q.    No, the one that starts, "Item #2,"

4    the second and third paragraphs.

5    A.    Okay.

6    Q.    And would you read those to yourself?

7          Let me know when you're finished.

8    A.    Okay, I'm finished.

9    Q.    Your first mortgage department was

10   the way in which you referred to CU National?

11   A.    Yes.

12   Q.    And FNMA, you were aware, is Fannie

13   Mae?

14   A.    Yes.

15   Q.    This letter says, in describing loans

16   available for sale, "We fund the loan at closing

17   and assign the loan to our first mortgage

18   department who, in turn, sells it to the secondary

19   market through FNMA."  And then it has a sentence

20   about retaining the servicing.

21         In the next paragraph it starts,

22   "After the closing, the loan documents are

23   packaged and delivered to FNMA for processing into

24   the secondary market.  Upon acceptance from FNMA,

25   we are sent a check for the balance of the loan,

1    plus interest, from the date of closing and those

2    funds are put back into our operating account."

3    And then it goes on.

4         Does that refresh your recollection

5    that you knew that CU National was selling your

6    loans to Fannie Mae?

7    A.    It does, yes.

8    Q.    Thank you.

9         How did CU National get paid when it

10   sold your loans to the secondary market at Fannie

11   Mae?

12   A.    How did they get paid?

13   Q.    Right.

14   A.    I don't know.  I don't know how they

15   got paid.

16   Q.    Well, if you could take a look at the

17   agreement at page 18 and let me know if that

18   refreshes your recollection, I would appreciate

19   it.

20   A.    Okay.

21   Q.    I'm specifically referring to

22   subparagraph f?

23   A.    Oh, okay, yeah.

24   Q.    Can you explain that to me?

25   A.    Sure.  If we instruct CU National

# EXHIBIT E

CONFIDENTIAL

| 57972958 | | FMAD |
|---|---|---|

Lender Loan No.    26248906
FNMA Loan No.     4005648150
DDF No.            7399718
Borrower Name      BONTE
Property Address

Servicer Name
Servicer No.       7400

REDACTED

57972958

**5 7 9 7 2 9 5 8**

BONTE

Customer Code:    FMAD

Lender Loan No.    26248906
FNMA Loan No.     4005648150
DDF No.            7399718
Borrower Name      BONTE
Servicer Name
Servicer No.       7400

CONFIDENTIAL

Region                                                        2
                                    DDF0000007399718

Product Type
Seller Name                        U. S. MORTGAGE CORP.
Seller No.                               23884-000-7
Contract No.- Expiration Date      347277-11/19/07
Batch ID                                    31729089
Payee Code                                 055014614
Lender Loan ID                            3330002804
Servicer Name                      U. S. MORTGAGE CORP.
Servicer No.                             23884-000-7
Address
Property City
Property State                            REDACTED
Property Zip Code
Original Ln Amt/Line Amt                  244000.00
Original Note Rate                            6.625
First Paymnt Due                       Aug 1, 2007
Loan Term                                       360
Loan P&I Amt(monthly)                       1562.36
Submission Type/Lien                   Whole/First
Amortization Type                       Fixed Rate
Loan Type                                         3
Certification Priority                          080
FNMA Loan No.                            4005648150
Mortgage Type                                 Other

CSC FYI Comments:
Delivers notes and assignments separately.  Accept endorsements from subsidiaries: Skyline Mo
rtgage, Datek Mortgage, and DBA Lending Solutions.

Variance:
No Variances



FNMA-USM0003036

Received: 11/13/2007
Printed : 11/13/2007

**ORIGINAL**

# NOTE

June 19, 2007
[Date]

**REDACTED**

New Jersery
[State]

[Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $244,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Picatinny Federal Credit Union, A Federal Credit Union**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      **6.6250%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.   PAYMENTS**

(A)  **Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the      **1st**      day of each month beginning on      **August 01, 2007** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **July 01, 2037**      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **PO Box 682, Pine Brook, NJ  07058**

or at a different place if required by the Note Holder.

(B)  **Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. **$1,562.36**

**4.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE—Single Family—-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1846L1 (0809)

Form 3200 1/01
GreatDocs ™
(Page 1 of 3)

**MFCD3002**

3330002804

CONFIDENTIAL

FNMA-USMW0003036

CONFIDENTIAL

**5.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of        **Fifteen**        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        **5.0000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in

---

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1846L2 (0609)
**MFCD3002**

Form 3200 1/01
GreatDocs™
(Page 2 of 3)
3330002804

FNMA-USM0003036

CONFIDENTIAL

this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_______________ (Seal) -Borrower    _______________ (Seal) -Borrower

_______________ (Seal) -Borrower    _______________ (Seal) -Borrower

_______________ (Seal) -Borrower    _______________ (Seal) -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE
U.S. MORTGAGE CORPORATION

JOHN RUSKIN
WAREHOUSE COORDINATOR

*[Sign Original Only]*

**MULTISTATE FIXED RATE NOTE**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

**Form 3200 1/01**

ITEM 1848L3 (0609)
**MFCD3002**

GreatDocs™
*(Page 3 of 3)*
**3330002804**

FNMA-USM0003036

CONFIDENTIAL

**ALLONGE TO PROMISSORY NOTE**

LOAN INFORMATION

Loan Number:  3330002804

Borrower(s)                                                            :

# REDACTED

Property Address:

Note Amount:  244,000.00

Note Date:     June 19, 2007

Pay to the order of:

U.S. MORTGAGE CORPORATION

_____

Without Recourse

Picatinny Federal Credit Union

Name  Michael McGrath Jr.

Title    AVP

US4057

FNMA-USMC003036

CONFIDENTIAL

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

**Recording RequestedBy/ReturnTo:**   MORTGAGE DEPT
19D CHAPIN ROAD, PO BOX 2014, PINE BROOK, NJ 07058

Loan Number:  3330002804

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is

**100 MINERAL SPRINGS ROAD, DOVER, 07801**

does hereby grant, sell, assign, transfer and convey, unto   **US MORTGAGE CORP.**

, a corporation organized and

existing under the laws of          **New Jersey**          (herein "Assignee"), whose address is

**19D CHAPIN ROAD, PINE BROOK, NJ 07058**

a certain Mortgage dated  **June 19, 2007**          , made and executed by

# REDACTED

to and in favor of   **PICATINNY FEDERAL CREDIT UNION**          and given to secure

payment of   ,  (  **244,000.00**          )  **Two Hundred Forty Four Thousand**
(Include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.    **8201**          , at page  **35**          (or as

No.  **00018632**     ) of the          Records of  **SUSSEX**

County, State of   **NJ**          , recorded on     **6/22/2007**          , together with the note(s) and obligations
therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

**TO HAVE AND TO HOLD** the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
**IN WITNESS WHEREOF,** the undersigned Assignor has executed this Assignment of Mortgage on  **November 12, 2007**

PICATINNY FEDERAL CREDIT UNION
BY: _____
Michael McGrath Jr.
AVP

_____
Witness

_____
Witness

Attest

Seal:

This Instrument Prepared By:  **PICATINNY FEDERAL CREDIT UNION**
address: **100 MINERAL SPRINGS ROAD, DOVER, 07801**
STATE OF _____, COUNTY OF _____
I CERTIFY THAT ON **November 12, 2007** _____  Michael J. McGrath
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)      WAS THE MAKER OF THIS INSTRUMENT
(B)      WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
AS _____ OF  **PICATINNY FEDERAL CREDIT UNION**
(C)      EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT.

_____
NOTARY

SUZANNE MARIA CAVALLUZZO
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 7/22/2008

US4289

FNMA-USM0003056

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

**Recording RequestedBy/ReturnTo:**   MORTGAGE DEPT
19D CHAPIN ROAD, PO BOX 2014, PINE BROOK, NJ 07058

Loan Number:  3330002804

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
**100 MINERAL SPRINGS ROAD, DOVER, 07801**
does hereby grant, sell, assign, transfer and convey, unto   **US MORTGAGE CORP.**

, a corporation organized and
existing under the laws of          **New Jersey**                    (herein "Assignee"), whose address is
**19D CHAPIN ROAD, PINE BROOK, NJ 07058**

a certain Mortgage dated  **June 19, 2007**                    , made and executed by

to and in favor of   **PICATINNY FEDERAL CREDIT UNION**                          and gi    t     cure

payment of   , (  **244,000.00**          )  **Two Hundred Forty Four Thousand**
(Include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.     **8201**            , at page   **35**         (or as

No.  **00018632**     ) of the                          Records of   **SUSSEX**

County, State of    **NJ**                  , recorded on    **6/22/2007**        , together with the note(s) and obligations
therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

**TO HAVE AND TO HOLD** the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
**IN WITNESS WHEREOF,** the undersigned Assignor has executed this Assignment of Mortgage on    **November 12, 2007**

PICATINNY FEDERAL CREDIT UNION
BY:
Michael McGrath Jr.
AVP

Witness

Witness

Attest

Seal:

This Instrument Prepared By:  **PICATINNY FEDERAL CREDIT UNION**
address:  **100 MINERAL SPRINGS ROAD, DOVER, 07801**

STATE OF _____, COUNTY OF _____

I CERTIFY THAT ON **November 12, 2007**                    Michael J. M'Gerts
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)     WAS THE MAKER OF THIS INSTRUMENT
(B)     WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
        AS _____ OF   **PICATINNY FEDERAL CREDIT UNION**

(C)     EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT.

NOTARY

US4289

SUZANNE MARIA CAVALLUZZO
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 7/22/2008

CONFIDENTIAL

FNMA-USM0000300369

CONFIDENTIAL

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

<u>Recording RequestedBy/ReturnTo:</u>   MORTGAGE DEPT
                                            19D CHAPIN ROAD, PO BOX 2014  PINE BROOK, NJ 07058

Loan Number:  3330002804

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
**19D Chapin Road, Pine Brook, New Jersey 07058**
does hereby grant, sell, assign, transfer and convey, unto

### Federal National Mortgage Association

                                                         , a corporation organized and
existing under the laws of                                        (herein "Assignee"), whose address is

**3900 Washington Avenue NW, Washington, DC 20016**

a certain Mortgage dated  **June 19, 2007**                    , made and executed by

# REDACTED

to and in favor of  **US Mortgage Corp.**                                            and given to secure

payment of  , ( **244,000.00**      ) Two Hundred Forty Four Thousand
                               (Include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.  **8201**     , at page  **35**        (or as

No.  **00018632**    ) of the                Records of  **SUSSEX**

County, State of  **NJ**             , recorded on    **08/22/2007**    , together with the note(s) and obligations therein
described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

     TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
     IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on  **November 12, 2007**

                                                 US Mortgage Corp.

                                                 BY:

Witness                                                   John Kuskin
                                                  AVP

Witness

Attest

Seal:

This Instrument Prepared By:
address:  19D Chapin Road, Pine Brook, NJ 07058

STATE OF NEW JERSEY,  COUNTY OF MORRIS

I CERTIFY THAT ON **November 12, 2007**           JOHN KUSKIN
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)       WAS THE MAKER OF THIS INSTRUMENT
(B)       WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
          AS    *AVP*               OF    US Mortgage Corp.
(C)       EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT

                                               NOTARY

                                               JEANNE MARIA CAVALLUZZO
                                               NOTARY PUBLIC OF NEW JERSEY
                                               Commission Expires 7/22/2008

US4290

FNMA-USM0000103

# EXHIBIT F

1        UNITED STATES DISTRICT COURT

2          DISTRICT OF NEW JERSEY

3        CASE NO.: 2:09-CV-01295-JAG-MCA

4     -----------------------------------x

5    PICATINNY FEDERAL CREDIT UNION,

6          Plaintiff,

7          vs.

8    FEDERAL NATIONAL MORTGAGE ASSOCIATION,

9          Defendant.

10    -----------------------------------x

11      Per Protective Order, Section 9, this transcript has a

12    temporary "Confidential" designation for a period of 15

13       days after the depostition is received

14       DEPOSITION OF ALEXANDER N. SAPHOS

15        Thursday, February 25, 2010

16          Newark, New Jersey

17

18

19

20

21

22    ATKINSON- BAKER, INC.

22    COURT REPORTERS

23    (800) 288-3376

23    www.depo.com

24

25    FILE NO.: A401C39

1   your job was to increase the loan originations?

2      A.   Yes, try to -- more specifically, to

3   try to develop and expand the sales staff and

4   territories in which they operated.

5      Q.   Just so that we're talking the same

6   language, when you're talking about sales,

7   you're talking about getting more borrowers to

8   borrow money from Avstar Mortgage.  Correct?

9      A.   Correct.

10      Q.   Where were they located?

11      A.   Blue Bell, Pennsylvania.

12      Q.   I'm sorry.  You did tell me that.

13         And how long did you stay with

14   them for?

15      A.   Two years.

16      Q.   When did you leave?

17      A.   I left to go back to Fannie Mae.  I

18   had gotten a phone call from Zach Oppenheimer

19   at Fannie Mae in -- I guess it would have been

20   March of '95, asked if he could meet with me.

21   We met, and he told me that the sales and

22   marketing area of Fannie Mae was being

23   reorganized again.  And as part of the

24   reorganization, what had been the senior

25   negotiator position and the account executive

1    position was being merged.  And the way the

2    position was being described, when he heard it,

3    he thought of me and wanted to know if I would

4    have interest in coming back on that

5    position -- in that position.  And I said I

6    would have interest, and I returned in July

7    of -- I believe it was July of '95.

8       Q.  And what is that position called?

9       A.  "Customer account manager."

10      Q.  Is that what is referred to as "CAM"?

11      A.  Yes.

12      Q.  Is that the position you hold today?

13      A.  It is.  It's now -- they've made a

14   little bit of a distinction.  I am now a senior

15   account manager, and the account associates are

16   called "customer account managers."  It's

17   essentially the same position.

18      Q.  Now, tell me your duties and

19   responsibilities when you started as a CAM.

20      A.  To represent Fannie Mae to lenders,

21   to try and buy mortgage product, either for

22   cash or through MBS, to negotiate contract

23   agreements.

24      Q.  Anything else?

25      A.  That's about it.

# EXHIBIT G

1    UNITED STATES DISTRICT COURT
     DISTRICT OF NEW JERSEY

2
                    2:09 cv 01295 GEB

3    PICATINNY FEDERAL CREDIT UNION
               Plaintiff,

4    v.
     FEDERAL NATIONAL MORTGAGE

5    ASSOCIATION,
               Defendants.

6    -----------------------------
     SPERRY ASSOCIATES FEDERAL

7    CREDIT UNION.
               Plaintiff       2:09 cv 04782 GEB

8    vs
     FEDERAL NATIONAL MORTGAGE

9    ASSOCIATION,
               Defendants.

10   -----------------------------
     FEDERAL NATIONAL MORTGAGE

11   ASSOCIATION,
               Plaintiff,      2:10 cv 00473 GEB

12   vs.

13   PROPONENT FEDERAL CREDIT
     UNION,

14             Defendant.
     -----------------------------

15             DEPOSITION OF BARBARA CUSHMAN
               WASHINGTON, DC.

16             MAY 12, 2010

17   (Per protective order section 9., this transcript has a
     temporary "Confidential" designation for a period of 15 days

18   after the deposition is received.)

19   Atkinson-Baker, Inc.
     Court Reporters.

20   Telephone: 1-800-288-3376.
     www.depo.com.

21   Reported By:  T. S. Hubbard, Jr.

22   FILE NO. JOB# A4047DA

1    Q.   Yes.

2    A.   If I visibly could read it and it

3    stood out that that is exactly what it said.

4    Q.   Yes, that is what I'm asking you.

5    A.   Then, yes, possibly I would have

6    failed that.

7    Q.   Not possibly.  Would you or would

8    you not?

9    A.   I possibly would have failed that

10    because I am not necessarily looking at what

11    they have written there.  I am looking for

12    that there's a signature there and that's it.

13    Q.   You would also be making sure that

14    the note was an original, would you not?

15    A.   That is correct.

16    Q.   You would also want to make sure

17    that the signatures were original signatures,

18    correct?

19    A.   That's correct.

20    Q.   Tell me how you were trained to

21    determine whether a signature was an original

22    signature?

1      Q.  No problem, but you also reviewed

2    the allonge to make sure it was the original?

3      A.  Yes.

4      Q.  Would you also review the allonge

5    to make sure that an original signature

6    appeared on it?

7      A.  Yes.

8      Q.  Would you also review the allonge

9    to make sure that the name of the person

10   signing the allonge was typed underneath that

11   signature?

12     A.  Yes.

13     Q.  Would you also review the allonge

14   to make sure that the title of the person who

15   signed the allonge was reflected on the

16   document?

17     A.  Yes.

18     Q.  Are you aware that Fannie Mae's

19   certification guides required that an allonge

20   contain the authorized signature of the

21   person signing the allonge?

22     A.  Yes.

# EXHIBIT H

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

**Recording RequestedBy/ReturnTo:**   MORTGAGE DEPT
19D CHAPIN ROAD, PO BOX 2014. PINE BROOK, NJ 07058

Loan Number: 3330000992

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is

**100 MINERAL SPRINGS ROAD, DOVER, 07801**

does hereby grant, sell, assign, transfer and convey, unto   US MORTGAGE CORP.

, a corporation organized and

existing under the laws of        **New Jersey**                (herein "Assignee"), whose address is

**19D CHAPIN ROAD, PINE BROOK, NJ 07058**

a certain Mortgage dated  **June 29, 2006**                      , made and executed by                   **REDACTED**

to and in favor of  **PICATINNY FEDERAL CREDIT UNION**                      and given to secure

payment of  ,  ( **365,000.00**          )  Three Hundred Sixty Five Thousand
(Include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.                   , at page            (or as

No. **00069583**      ) of the                          Records of

County, State of                        , recorded on      **7/11/2006**          , together with the note(s) and obligations
therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on  **August 13, 2008**

PICATINNY FEDERAL CREDIT UNION
BY:

Witness

Witness                                          **MICHAEL J. MCGRATH, JR.**
                                                 **AVP**

Attest

Seal:

This Instrument Prepared By:  **PICATINNY FEDERAL CREDIT UNION**
address: **100 MINERAL SPRINGS ROAD, DOVER, 07801**
STATE OF  New Jersey  , COUNTY OF  Morris
I CERTIFY THAT ON  **August 13, 2008**              , Michael J. McGrath
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)        WAS THE MAKER OF THIS INSTRUMENT
(B)        WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
           AS   AVP            OF   **PICATINNY FEDERAL CREDIT UNION**

(C)   EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT

NOTARY

US4289                                  SUZANNE MARIA CAVALLUZZO
                                        NOTARY PUBLIC OF NEW JERSEY
                                        Commission Expires 7-22-2013

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

**Recording RequestedBy/ReturnTo:**   MORTGAGE DEPT
19D CHAPIN ROAD, PO BOX 2014. PINE BROOK, NJ 07058

Loan Number:   3330000992

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is

**19D Chapin Road, Pine Brook, New Jersey 07058**

does hereby grant, sell, assign, transfer and convey, unto

**Federal National Mortgage Association**

, a corporation organized and
existing under the laws of                                        (herein "Assignee"), whose address is

**3900 Washington Avenue NW, Washington, DC 20016**

**REDACTED**

a certain Mortgage dated June 29, 2006          , made and executed by

to and in favor of  US Mortgage Corp.                                        and given to secure

payment of  , ( 365,000.00        ) Three Hundred Sixty Five Thousand
(Include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.                , at page              (or as

No. 00069583      ) of the                    Records of

County, State of                  , recorded on    07/11/2006        , together with the note(s) and obligations therein
described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

**TO HAVE AND TO HOLD** the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
**IN WITNESS WHEREOF,** the undersigned Assignor has executed this Assignment of Mortgage on August 13, 2008

Witness        LORA BRINK

**US Mortgage Corp.**

BY:
KIMBERLEE COLAIACOVO
VICE PRESIDENT

Witness

Attest

Seal:

This Instrument Prepared By:
address:  19D Chapin Road, Pine Brook, NJ 07058

STATE OF NEW JERSEY,   COUNTY OF MORRIS   ESSEX

I CERTIFY THAT ON August 13, 2008              , KIMBERLEE COLAIACOVO
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)    WAS THE MAKER OF THIS INSTRUMENT
(B)    WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
       AS VICE PRESIDENT       OF   US Mortgage Corp.
(C)    EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT.

NOTARY

US4290

DIANNA CORTES
NOTARY PUBLIC OF NEW JERSEY
COMMISSION EXPIRES 04/27/2010

FNMA-USM000000881

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

**Recording RequestedBy/ReturnTo:**   MORTGAGE DEPT
                                       19D CHAPIN ROAD, PO BOX 2014. PINE BROOK, NJ 07058

Loan Number:  3330001896

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
**100 MINERAL SPRINGS ROAD, DOVER, 07801**
does hereby grant, sell, assign, transfer and convey, unto   **US MORTGAGE CORP.**

                                                            , a corporation organized and
existing under the laws of          **New Jersey**          (herein "Assignee"), whose address is
                                    **19D CHAPIN ROAD, PINE BROOK, NJ 07058**

a certain Mortgage dated  **November 17, 2006**         , made and executed by

                                                                              **REDACTED**

to and in favor of   **PICATINNY FEDERAL CREDIT UNION**                 and given to secure

payment of   ,  (  **128,800.00**      )  **One Hundred Twenty Eight Thousand Eight Hundred**
                                          (Include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.              , at page         (or as

No.  **2006112957**      ) of the                        Records of

County, State of                    , recorded on     **11/29/2006**    , together with the note(s) and obligations
therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

      **TO HAVE AND TO HOLD** the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
      **IN WITNESS WHEREOF**, the undersigned Assignor has executed this Assignment of Mortgage on  **August 13, 2008**

                                          PICATINNY FEDERAL CREDIT UNION
_____          BY: _____
Witness

_____          **MICHAEL J. McGRATH, JR.**
Witness
                                          **AVP**
_____
Attest

Seal:

This Instrument Prepared By:  **PICATINNY FEDERAL CREDIT UNION**
address: **100 MINERAL SPRINGS ROAD, DOVER, 07801**
STATE OF _New Jersey_ , COUNTY OF _____ _Morris_
                                              _Michael J. McGrath_
I CERTIFY THAT ON **August 13, 2008**
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)    WAS THE MAKER OF THIS INSTRUMENT
(B)    WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
       AS _AVP_                       OF  **PICATINNY FEDERAL CREDIT UNION**

(C)    EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT
                                          _____
                                          NOTARY

US4289                                    SUZANNE MARIA CAVALLUZZO
                                          NOTARY PUBLIC OF NEW JERSEY
                                          Commission Expires 7-22-2013

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

**Recording RequestedBy/ReturnTo:**   MORTGAGE DEPT
19D CHAPIN ROAD, PO BOX 2014. PINE BROOK, NJ 07058

Loan Number:  3330001896

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
**19D Chapin Road, Pine Brook, New Jersey 07058**
does hereby grant, sell, assign, transfer and convey, unto

### Federal National Mortgage Association

, a corporation organized and
existing under the laws of                                                       (herein "Assignee"), whose address is

**3900 Washington Avenue NW, Washington, DC 20016**

a certain Mortgage dated **November 17, 2006** , made and executed by

**REDACTED**

to and in favor of  US Mortgage Corp.                                    and given to secure

payment of  , ( **128,800.00**            ) **One Hundred Twenty Eight Thousand Eight Hundred**
(Include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.                 , at page           (or as

No.  **2006112957**        ) of the                         Records of

County, State of                     , recorded on       **11/29/2006**      , together with the note(s) and obligations therein
described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on **August 13, 2008**

US Mortgage Corp.

Witness    LORA BRINK

BY:
KIMBERLEE COLAIACOVO
VICE PRESIDENT

Witness

Attest

Seal:

This Instrument Prepared By:
address: 19D Chapin Road, Pine Brook, NJ 07058   *Essex*

STATE OF NEW JERSEY,   COUNTY OF ~~MORRIS~~

I CERTIFY THAT ON **August 13, 2008**              , KIMBERLEE COLAIACOVO
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)    WAS THE MAKER OF THIS INSTRUMENT
(B)    WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
        AS **VICE PRESIDENT**            OF   US Mortgage Corp.
(C)    EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT.
                                              NOTARY

US4290

DIANNA CORTES
NOTARY PUBLIC OF NEW JERSEY
COMMISSION EXPIRES 04/27/2010

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

**Recording RequestedBy/ReturnTo:**   MORTGAGE DEPT
                                19D CHAPIN ROAD, PO BOX 2014. PINE BROOK, NJ 07058

Loan Number:  3330001919

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is

**190 MINERAL SPRINGS ROAD, DOVER, 07801**

does hereby grant, sell, assign, transfer and convey, unto   **US MORTGAGE CORP.**

**REDACTED**

, a corporation organized and

existing under the laws of          **New Jersey**                    (herein "Assignee"), whose address is

**19D CHAPIN ROAD, PINE BROOK, NJ 07058**

a certain Mortgage dated **January 9, 2007**                  , made and executed by

to and in favor of   **PICATINNY FEDERAL CREDIT UNION**                              and given to secure

payment of  , (  **141,000.00**         )  **One Hundred Forty One Thousand**
                                (Include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.                    , at page              (or as

No. **NA**          ) of the                    Records of

County, State of                    , recorded on      **1/15/2007**      , together with the note(s) and obligations
therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage

    **TO HAVE AND TO HOLD** the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
    **IN WITNESS WHEREOF,** the undersigned Assignor has executed this Assignment of Mortgage on **August 13, 2008**

Witness

PICATINNY FEDERAL CREDIT UNION
BY:

Witness

**MICHAEL J. MCGRATH, JR.**

Attest

**AVP**

Seal:

This Instrument Prepared By:  **PICATINNY FEDERAL CREDIT UNION**
address: **100 MINERAL SPRINGS ROAD, DOVER, 07801**
STATE OF _New Jersey_ , COUNTY OF _Morris_
I CERTIFY THAT ON **August 13, 2008**          , _Michael J. McGrath_
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)    WAS THE MAKER OF THIS INSTRUMENT
(B)    WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
      AS _AVP_                    OF  PICATINNY FEDERAL CREDIT UNION

(C)    EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT

NOTARY

US4289

Commission Expires 1-22-2013
NOTARY PUBLIC OF NEW JERSEY
SUZANNE MARIA CAMILLUZZO

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

**Recording RequestedBy/ReturnTo:**   MORTGAGE DEPT
19D CHAPIN ROAD, PO BOX 2014. PINE BROOK, NJ 07058

Loan Number:  3330001919

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
**19D Chapin Road, Pine Brook, New Jersey 07058**
does hereby grant, sell, assign, transfer and convey, unto

### Federal National Mortgage Association

, a corporation organized and
existing under the laws of                                              (herein "Assignee"), whose address is

### 3900 Washington Avenue NW, Washington, DC 20016

**REDACTED**

a certain Mortgage dated **January 9, 2007**                  , made and executed by

to and in favor  **US Mortgage Corp.**                                    and given to secure

payment of  , ( **141,000.00**          ) **One Hundred Forty One Thousand**
(Include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.                      , at page                  (or as

No. **NA**          ) of the                        Records of

County, State of                      , recorded on      **01/15/2007**      , together with the note(s) and obligations therein
described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage

**TO HAVE AND TO HOLD** the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
**IN WITNESS WHEREOF,** the undersigned Assignor has executed this Assignment of Mortgage on **August 13, 2008**

Witness      LORA BRINK

US Mortgage Corp.

BY
KIMBERLEE COLAIACOVO
VICE PRESIDENT

Witness

Attest

Seal:

This Instrument Prepared By:
address: 19D Chapin Road, Pine Brook, NJ 07058

STATE OF NEW JERSEY,   COUNTY OF MORRIS  *Essex*

I CERTIFY THAT ON **August 13, 2008**      , KIMBERLEE COLAIACOVO
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)     WAS THE MAKER OF THIS INSTRUMENT
(B)     WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
        AS VICE PRESIDENT      OF   US Mortgage Corp.
(C)     EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT.

NOTARY

US4290

DIANNA CORTES
NOTARY PUBLIC OF NEW JERSEY
COMMISSION EXPIRES 04/27/2010

FNMA-USM000000839

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

**Recording RequestedBy/ReturnTo:**   MORTGAGE DEPT
                                                              19D CHAPIN ROAD, PO BOX 2014. PINE BROOK, NJ 07058

Loan Number:  3330002397

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
                                          **100 MINERAL SPRINGS ROAD, DOVER, 07801**
does hereby grant, sell, assign, transfer and convey, unto   **US MORTGAGE CORP.**

                                                                                , a corporation organized and
existing under the laws of              **New Jersey**                    (herein "Assignee"), whose address is
                                          **19D CHAPIN ROAD, PINE BROOK, NJ 07058**

a certain Mortgage dated **February 28, 2007**              , made and executed by                         **REDACTED**

to and in favor of  **PICATINNY FEDERAL CREDIT UNION**                              and given to secure

payment of  ,  ( **156,000.00**         )  **One Hundred Fifty Six Thousand**
                                          (Include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.                 , at page              (or as

No. **2007023274**        ) of the                        Records of

County, State of                         , recorded on     **3/ 8/2007**         , together with the note(s) and obligations
therein described and the money due and to become due thereon with interest, and all rights acc         .o accrue under such Mortgage

   TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
   IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on **August 13, 2008**

                                                      **PICATINNY FEDERAL CREDIT UNION**
Witness                                               BY

Witness

                                                      MICHAEL J. MCGRATH, JR.
                                                      AVP
Attest

Seal:

This Instrument Prepared By:  **PICATINNY FEDERAL CREDIT UNION**
address: **100 MINERAL SPRINGS ROAD, DOVER, 07801**
STATE OF _New Jersey_ , COUNTY OF _Morris_
I CERTIFY THAT ON **August 13, 2008**                      , _Michael J. McGrath_
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)     WAS THE MAKER OF THIS INSTRUMENT
(B)     WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
        AS _AVP_                      OF  PICATINNY FEDERAL CREDIT UNION

(C)     EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT.

                                                      NOTARY

US4289                                    SUZANNE MARIA CAVALLUZZO
                                          NOTARY PUBLIC OF NEW JERSEY
                                          Commission Expires 7-23-2013

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

<u>Recording RequestedBy/ReturnTo:</u>   MORTGAGE DEPT
19D CHAPIN ROAD, PO BOX 2014. PINE BROOK, NJ 07058

Loan Number:  3330002397

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
**19D Chapin Road, Pine Brook, New Jersey 07058**
does hereby grant, sell, assign, transfer and convey, unto

**Federal National Mortgage Association**
, a corporation organized and
existing under the laws of                          (herein "Assignee"), whose address is

**3900 Washington Avenue NW, Washington, DC 20016**

**REDACTED**

a certain Mortgage dated **February 28, 2007**          , made and executed by

to and in favor of  US Mortgage Corp.                          and given to secure

payment of  ,  (  **156,000.00**        )  One Hundred Fifty Six Thousand
(Include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.            , at page          (or as

No. **2007023274**     ) of the                Records of

County, State of                  , recorded on     **03/08/2007**       , together with the note(s) and obligations therein
described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on **August 13, 2008**

Witness  LORA BRINK

US Mortgage Corp.

BY:
KIMBERLEE COLAIACOVO
VICE PRESIDENT

Witness

Attest

Seal:

This Instrument Prepared By:
address:  19D Chapin Road, Pine Brook, NJ 07058

STATE OF NEW JERSEY,  COUNTY OF MORRIS
I CERTIFY THAT ON **August 13, 2008**          , KIMBERLEE COLAIACOVO
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)    WAS THE MAKER OF THIS INSTRUMENT
(B)    WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
AS VICE PRESIDENT          OF US Mortgage Corp.
(C)    EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT.

NOTARY

US4290

DIANNA CORTES
NOTARY PUBLIC OF NEW JERSEY
COMMISSION EXPIRES 04/27/2010

FNMA-USM000000847

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

**Recording RequestedBy/ReturnTo:**   MORTGAGE DEPT
19D CHAPIN ROAD, PO BOX 2014. PINE BROOK, NJ 07058

Loan Number:  3330004404

## ASSIGNMENT OF MORTGAGE

**REDACTED**

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is

**100 MINERAL SPRINGS ROAD, DOVER, 07801**

does hereby grant, sell, assign, transfer and convey, unto   US MORTGAGE CORP.

, a corporation organized and

existing under the laws of          **New Jersey**          (herein "Assignee"), whose address is

**19D CHAPIN ROAD, PINE BROOK, NJ 07058**

a certain Mortgage dated **April 22, 2008**          , made and executed by

to and in favor of   **PICATINNY FEDERAL CREDIT UNION**          and given to secure

payment of  , ( **165,050.00**          ) **One Hundred Sixty Five Thousand Fifty**
(Include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.          , at page          (or as

No.          ) of the          Records of

County, State of          , recorded on          , together with the note(s) and obligations of

therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on **August 13, 2008**

_____          PICATINNY FEDERAL CREDIT UNION

Witness                                                    BY

_____          **MICHAEL J. MCGRATH, JR.**

Witness                                                    **AVP**

_____

Attest

Seal:

This Instrument Prepared By:  **PICATINNY FEDERAL CREDIT UNION**
address: **100 MINERAL SPRINGS ROAD, DOVER, 07801**

STATE OF _New Jersey_ , COUNTY OF _Morris_

I CERTIFY THAT ON **August 13, 2008** , _Michael J. McGrath_
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)     WAS THE MAKER OF THIS INSTRUMENT
(B)     WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
        AS _AVP_ OF  **PICATINNY FEDERAL CREDIT UNION**

(C)     EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT

NOTARY

SUZANNE [illegible]
NOTARY PUBLIC [illegible] NEW JERSEY
Commission Expires 7-22-2013

US4289

RPL 275- ASSIGNMENT OF MORTGAGE CLAUSE
The assignee is not acting as a nominee of the mortgagor and that the mortgage
continues to secure a bona fide obligation

**Recording RequestedBy/ReturnTo:**   MORTGAGE DEPT
19D CHAPIN ROAD, PO BOX 2014. PINE BROOK, NJ 07058

Loan Number:  3330004404

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
**19D Chapin Road, Pine Brook, New Jersey 07058**
does hereby grant, sell, assign, transfer and convey, unto

**Federal National Mortgage Association**

, a corporation organized and
existing under the laws of                                                (herein "Assignee"), whose address is

**3900 Washington Avenue NW, Washington, DC 20016**

a certain Mortgage dated **April 22, 2008**                      , made and executed by                **REDACTED**

to and in favor of  US Mortgage Corp.                                     and given to secure

payment of  ,  ( **165,050.00**          )  **One Hundred Sixty Five Thousand Fifty**
(Include the Original Principal Amount and Maturity Date of Note(s))
which Mortgage is of record in Book, Volume, or Liber No.                    , at page            (or as

No.               ) of the                    Records of

County, State of                  , recorded on              , together with the note(s) and obligations therein
described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such Mortgage.

**TO HAVE AND TO HOLD** the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of
the above-described Mortgage.
**IN WITNESS WHEREOF**, the undersigned Assignor has executed this Assignment of Mortgage on **August 13, 2008**

Witness   LORA BRINK

US Mortgage Corp.
BY:
KIMBERLEE COLAIACOVO
VICE PRESIDENT

Witness

Attest

Seal:

This Instrument Prepared By:
address:  19D Chapin Road, Pine Brook, NJ 07058

STATE OF NEW JERSEY,  COUNTY OF ~~MORRIS~~ ESSEX

I CERTIFY THAT ON **August 13, 2008**    ,    KIMBERLEE COLAIACOVO
PERSONALLY CAME BEFORE ME AND STATED TO MY SATISFACTION THAT THIS PERSON
(A)    WAS THE MAKER OF THIS INSTRUMENT
(B)    WAS AUTHORIZED TO AND DID EXECUTE THIS INSTRUMENT
       AS VICE PRESIDENT     OF   US Mortgage Corp.
(C)    EXECUTED THIS INSTRUMENT AS THE ACT OF THE ENTITY NAMED IN THIS INSTRUMENT.

NOTARY

US4290

DIANNA CORTES
NOTARY PUBLIC OF NEW JERSEY
COMMISSION EXPIRES 04/27/2010

# EXHIBIT I

Case 2:09-cv-01295-GEB -MCA   Document 100   Filed 02/01/11   Page 113 of 114 PageID: 2848

**From:**    Michael McGrath [mmcgrathjr@usmtg.com]
**Sent:**    Friday, March 21, 2008 12:21 PM
**To:**      Claudia Ferrone

icestona@JHCohn.com  Michael@usmtg.com  ghedges@usmtg.com

Michael J. McGrath Jr.
President
US Mortgage Corp.
CU National Mortgage LLC
19 D Chapin Road
Pine Brook, NJ 07058
973.244.7100 x 1106
973.244.9062 fax

Disclaimer:
This message is intended only for the use of the individual or entity to which it
is addressed, and may contain information not designed for dissemination to the
general public. If you have received this communication in error, please delete it
and notify us immediately. The information contained in this e-mail may be
proprietary, confidential, privileged or exempt from disclosure under law. If the
reader is not the intended recipient, please reply and delete your copy of this
message. This email transmission has undergone a strict content analysis for Spam,
HTML threats, malicious code, email exploits, and virus/worm activity by GFI
MailSecurity/GFI Mail Essentials before being released.

PICA0001498

| | |
|---|---|
| **From:** | Michael McGrath [mmcgrathjr@usmtg.com] |
| **Sent:** | Friday, March 21, 2008 10:58 AM |
| **To:** | Claudia Ferrone |
| **Cc:** | Iveth Cestona; Glenn Hedges |
| **Attachments:** | Picatinny FCU Confirm.pdf |

Claudia;

In conjunction with the certification of our year end audit we have been asked to confirm the servicing portfolio currently being serviced on behalf of Picatinny. Could you please review this documentation and execute the confirmation. If you are able to scan this document please reply to all on this email. All balances are as of 12/31/07. If you have any questions feel free to call me.

Michael J. McGrath Jr.
President
US Mortgage Corp.
CU National Mortgage LLC
19 D Chapin Road
Pine Brook, NJ 07058
973.244.7100 x 1106
973.244.9062 fax

Disclaimer:
This message is intended only for the use of the individual or entity to which it is addressed, and may contain information not designed for dissemination to the general public. If you have received this communication in error, please delete it and notify us immediately. The information contained in this e-mail may be proprietary, confidential, privileged or exempt from disclosure under law. If the reader is not the intended recipient, please reply and delete your copy of this message. This email transmission has undergone a strict content analysis for Spam, HTML threats, malicious code, email exploits, and virus/worm activity by GFI MailSecurity/GFI Mail Essentials before being released.

PICA0001499