# EXHIBIT dd

mortgage delivered to us). The *Loan Modification Agreement* may be used to document the modification of a balloon mortgage that has a conditional modification option or to modify the terms of the applicable documentation for an adjustable-rate mortgage that has been converted to a fixed-rate mortgage.

| State | Security Instrument | Form No. | Date |
|---|---|---|---|
| New York | Consolidation, Extension and Modification Agreement | 3172 | 1/01 (rev. 5/01) |
| All | Loan Modification Agreement | 3179 | 1/01 (rev. 8/01) |

Fannie Mae Single Family/2007 Selling Guide/Part IV: Mortgage Documents/IV, Chapter 2: Mortgage or Deed of Trust Notes (06/30/02)/IV, Chapter 2: Mortgage or Deed of Trust Notes (06/30/02)

## IV, Chapter 2: Mortgage or Deed of Trust Notes (06/30/02)

We publish mortgage or deed of trust notes for most conventional fixed-rate mortgages and some adjustable-rate mortgages jointly with Freddie Mac. We do not publish notes for government-insured or government-guaranteed mortgages.

A lender may reproduce any of our mortgage or deed of trust notes as individual letter-sized pages printed on one side only, as individual letter-sized pages printed on both sides, or as a legal-sized page. A lender also may alter the note to make any of our authorized changes. If the lender alters one of our notes in any other manner, the tagline identifying it as a Fannie Mae document or a Fannie Mae/Freddie Mac uniform document may be retained as long as the document includes a second tagline that indicates the name of the entity (the lender or a third party) that modified the document and the date of the modification. A lender that reproduces the mortgage or deed of trust notes is responsible for verifying their accuracy and for ensuring that any changes that are made are in full compliance with the statutes of the applicable jurisdictions.

Our requirements for specific provisions in (or added to) the mortgage or deed of trust notes are discussed below, as are our requirements for note signatures and endorsements.

Fannie Mae Single Family/2007 Selling Guide/Part IV: Mortgage Documents/IV, Chapter 2: Mortgage or Deed of Trust Notes (06/30/02)/IV, 201: Notes for Regularly Amortizing Mortgages (01/30/07)/IV, 201: Notes for Regularly Amortizing Mortgages (01/30/07)

## IV, 201: Notes for Regularly Amortizing Mortgages (01/30/07)

For regularly amortizing conventional mortgages—and for government mortgages that are closed on the Fannie Mae/Freddie Mac uniform security instruments—the lender should use the uniform mortgage or deed of trust note that is correct for the applicable mortgage type, lien type, property type, and product type. The multistate note can be used in most jurisdictions, unless the security property is located in a jurisdiction for which we publish a state-specific mortgage note. (However, we have developed a special note—the *Fannie Mae/Navajo Nation Fixed-Rate Note* (Form 3270)—for use in connection with negotiated conventional mortgages originated under our Native American Housing Pilot with the Navajo Nation.) Currently, we publish state-specific fixed-rate notes for Alaska, Florida, Maine, New Hampshire, New York, Puerto Rico, Vermont, Virginia, West Virginia, and Wisconsin (although they are not available for all mortgage products). We also publish state-specific adjustable-rate notes for these same jurisdictions (except for Maine and New York) for many ARM plans. For other ARM plans—especially for those that are Fannie Mae-specific plans—we only publish a multistate note, which must be adapted to meet the lender's needs or local jurisdictional requirements. In addition, we publish special state-specific notes for use with fixed-rate and adjustable-rate Texas Section 50(a)(6) mortgages, as well as both a multistate note and eight state-specific notes for fixed-rate mortgages with an interest-only feature. *Exhibits 1 and 2* provide information about the current versions of the various conventional mortgage or deed of trust notes and how to find authorized changes that may be made to them.

For second mortgages, the lender should use a mortgage or deed of trust note that is correct for the applicable mortgage type, lien type, property type, and transaction type. We no longer publish standard notes for second mortgages; therefore, a lender must use documents developed (or otherwise approved) by its attorneys.

Exhibit No. 10
Dft __ Plt __ Dpnt __
Date _____ Rptr. D.M Lewis
12-4-09

The lender should insert in the bottom, left-hand corner of the front of the mortgage or deed of trust note its loan identification number. If the mortgage is registered with MERS, the MIN that is used to identify the mortgage in MERS also should be shown on the note (unless the lender has a readily accessible cross-reference listing for its loan identification, the Fannie Mae loan number, and the MERS MIN or has another system for notifying the document custodian about the MERS' registration for a mortgage).

> Fannie Mae Single Family/2007 Selling Guide/Part IV: Mortgage Documents/IV, Chapter 2: Mortgage or Deed of Trust Notes (06/30/02)/IV, 201: Notes for Regularly Amortizing Mortgages (01/30/07)/IV, 201.01: Late Charge Provision (04/11/00)

## IV, 201.01: Late Charge Provision (04/11/00)

The note for a conventional first mortgage must provide for the borrower to pay a five percent late charge on any installment that is not received by the 15th day after it is due. If state law does not allow a charge that high, the maximum amount that is allowed should be used. If the mortgage has a late charge of more than five percent, it will be acceptable as long as the amount assessed during the time we hold the mortgage does not exceed five percent. The late charge should be computed on the principal and interest (P&I) installment only, not on the full monthly payment (PITI). This same late charge policy applies for an RHS-guaranteed mortgage that is closed on our conventional mortgage instruments.

When a VA-guaranteed mortgage is closed on our conventional mortgage instruments, the borrower must be required to pay a four percent late charge on any installment that is not received by the 15th of the month, rather than the late charge that would apply for conventional mortgages closed on our documents. If state law does not allow a four percent late charge, the maximum amount that is allowed should be used. The late charge should be computed on the principal and interest installment, not on the full monthly payment.

> Fannie Mae Single Family/2007 Selling Guide/Part IV: Mortgage Documents/IV, Chapter 2: Mortgage or Deed of Trust Notes (06/30/02)/IV, 201: Notes for Regularly Amortizing Mortgages (01/30/07)/IV, 201.02: Prepayment Provision (09/28/04)

## IV, 201.02: Prepayment Provision (09/28/04)

Because we do not require a prepayment premium for conventional mortgages, our notes do not provide for a prepayment provision. However, a borrower who wants a lower monthly payment or lower closing costs often will agree to accept a mortgage that includes a prepayment premium in connection with an early payoff of the mortgage. If a lender amends a mortgage note to add a prepayment premium, we will not purchase or securitize the mortgage unless the amendment (or an additional rider to the note) provides that the premium will not be enforced if the mortgage is sold to us—and the mortgage is delivered under a negotiated contract. We will not purchase or securitize a mortgage closed on documents that have a prepayment provision if the documents have not been amended in this manner—unless the mortgage is delivered under a specific negotiated contract that permits enforcement of the prepayment provision. When a lender delivers a mortgage with a prepayment premium under a negotiated contract that permits enforcement of the prepayment provision, we encourage the lender to waive all or part of the prepayment premium if the premium is required because the home is sold.

When considering whether to add a prepayment provision to a note, a lender should keep in mind that we will not enter into a negotiated contract to purchase or securitize a mortgage closed on such a document unless the following requirements are satisfied:

- The mortgage must provide some benefit to the borrower (such as a rate or fee reduction for accepting the prepayment premium), and the borrower must have been offered the choice of another mortgage product that did not require a prepayment premium.

- The terms of the prepayment provision should be adequately disclosed to the borrower.

- The term of the prepayment premium may not exceed three years.

- The prepayment premium may not be charged when the mortgage debt is accelerated as the result of the borrower's default in making his or her mortgage payments.

Fannie Mae Single Family/2007 Selling Guide/Part IV: Mortgage Documents/IV, Chapter 2: Mortgage or Deed of Trust Notes (06/30/02)/IV, 201: Notes for Regularly Amortizing Mortgages (01/30/07)/IV, 201.03: Mandatory Arbitration (10/31/04)

## IV, 201.03: Mandatory Arbitration (10/31/04)

As stated in *Section 102.01*, our standard security instruments do not include language that provides for arbitration, our authorized changes to those documents do not permit the addition of arbitration language, and a mortgage that is subject to arbitration—regardless of whether the arbitration language has been added to the security instrument or is part of a separate agreement—is not acceptable under our standard terms.

We recognize that arbitration potentially represents a more efficient, streamlined, and less costly process to borrowers for resolving disputes than litigation. We also recognize, however, that borrowers who would prefer to present their grievances in court may unknowingly agree to mandatory arbitration at the time they sign their mortgage documents. Mandatory arbitration provisions are loan provisions or an agreement accompanying the loan that require the borrower to submit to arbitration any disputes arising out of or relating in any way to the mortgage transaction. While Fannie Mae does not believe arbitration provisions are inherently abusive, we believe that mandatory arbitration can be used in an abusive fashion.

Therefore, mortgages that are subject to mandatory arbitration are ineligible for sale to, or securitization by, Fannie Mae. The only exception to this policy is when the mandatory arbitration provision also contains a waiver provision that provides that, in the event of a transfer or sale of the mortgage or an interest in the mortgage to Fannie Mae, the mandatory arbitration clause immediately and automatically becomes null and void and cannot be reinstated.

The lender may not require that the borrower submit to arbitration to resolve any dispute arising out of or relating in any way to the mortgage transaction. The lender will provide the borrower with written notice of the triggering of the waiver provision within 60 days of the transfer or sale of the mortgage or an interest in the mortgage to Fannie Mae, which notice will contain substantially the following language:

> Pursuant to your mortgage documents, we are hereby notifying you that an interest in your loan has been transferred or sold to Fannie Mae and therefore the mandatory arbitration clause of your loan, requiring that you submit to arbitration to resolve any dispute arising out of or relating in any way to your mortgage, is immediately null and void.

The lender and servicer shall maintain a copy of such notice in the mortgage file.

Lenders are reminded of their selling warranty that all loans delivered to Fannie Mae (regardless of documentation used) are enforceable in accordance with their terms. Further, loans sold to us that provide for mandatory arbitration and the waiver described above are nonstandard documents. Therefore, the lender makes our nonstandard document selling warranties when it delivers such loans. (See *Part I, Section 202.01, Subpart B.*)

Fannie Mae Single Family/2007 Selling Guide/Part IV: Mortgage Documents/IV, Chapter 2: Mortgage or Deed of Trust Notes (06/30/02)/IV, 202: Notes for Reverse Mortgages (06/29/07)

## IV, 202: Notes for Reverse Mortgages (06/29/07)

See *Section 507* for information concerning loan documents used for *Home Keeper* reverse mortgages that are intended for delivery to Fannie Mae.

Fannie Mae Single Family/2007 Selling Guide/Part IV: Mortgage Documents/IV, Chapter 2: Mortgage or Deed of Trust Notes (06/30/02)/IV, 203: Borrowers' Signatures on the Note (06/29/07)

## IV, 203: Borrowers' Signatures on the Note (06/29/07)

Generally, all borrowers who are named in the mortgage (or deed of trust) will sign the note. This is not always the case. For example, an individual who is a cosigner or guarantor but has no ownership interest in the property must sign the note, but is not named in (or required to sign) the security instrument. On the other hand, a borrower whose income is not used in qualifying for the mortgage but has an ownership interest in the property must be named in and sign the security instrument, but is not required to sign the note. A cosigner or guarantor that does have an ownership interest in the property must sign both the note and the security instrument.

If the borrower is not legally competent, a court-appointed guardian may sign for the borrower, provided that he or she has unlimited authority to conduct the ward's affairs, including the power to hold, convey, and give a lien against real property owned by the ward, to make payments from the ward's assets, and to permit inquiries concerning the ward's credit. The lender should obtain a copy of the documents making the appointment. If the guardian in some other capacity is a party to the loan or sale transaction, e.g. the seller of the property, the lender should ascertain that there are no material conflicts of interest.

We will accept a note for which an attorney-in-fact signs on a borrower's behalf, as long as the lender obtains a copy of the applicable power of attorney.

A borrower's signature should not contradict the name typed below the signature line on the note. However, we will not object to slight variations—a missing initial, the omission of a "Jr" or "Sr," or an over or undersigning (such as a borrower signing as William Thomas Smith when the typed name is William T. Smith, or vice versa). On the other hand, significant variations—such as William Smith signing as "Skip" Smith, signing with an "X," or signing under an "also known as" name—are not acceptable, unless the lender obtains a name affidavit from the borrower stating that he or she commonly uses the alternative signature.

When an *inter vivos* revocable trust is the borrower, the trustees must execute the note. See *Section 501* for more information about the documentation requirements for mortgages made to *inter vivos* revocable trust borrowers, including appropriate forms of signature for the note.

---

Fannie Mae Single Family/2007 Selling Guide/Part IV: Mortgage Documents/IV, Chapter 2: Mortgage or Deed of Trust Notes (06/30/02)/IV, 204: Endorsement of the Note (05/01/07)

## IV, 204: Endorsement of the Note (05/01/07)

The originating lender must be the original payee on the note (even when MERS is named as nominee for the beneficiary in the security instrument). There should be an endorsement to each subsequent owner of the mortgage (unless one or more of the owners endorsed the note in blank). The last endorsement on the mortgage note should be that of the mortgage seller. The mortgage seller must endorse the mortgage note "in blank" and without recourse. An example of an "in blank" endorsement follows:

PAY TO THE ORDER OF

WITHOUT RECOURSE
LENDER'S NAME

(Authorized Signature)
NAME OF AUTHORIZED SIGNER
TITLE OF AUTHORIZED SIGNER

The endorsement generally must appear on the note; however, an allonge may be used for the endorsement, as long as the form and content of the allonge used complies in form and content with all applicable state, local, and federal laws and results in a valid and enforceable endorsement to the note. When an allonge is used, the allonge must be permanently affixed to the related note and clearly identify the note by referencing at least the amount of the note, combined with either the name of the borrower(s), or the address of the security property. Any subsequent endorsements should be, but are not required to be, placed on the allonge. When a lender sells us a mortgage for which an allonge is used for the endorsement(s) to the note, it warrants that (1) the form and content of the allonge used comply with all applicable state, local, or federal law governing the use of allonges and result in an enforceable and proper endorsement to the note; (2) the allonge is permanently affixed to the related note and clearly

FNMA-USM000009653

identifies the note by referencing at least the name of the borrower(s), the date of the note, the amount of the note, and the address of the security property; (3) the note clearly references the attached allonge; and (4) Fannie Mae's status as a "holder in due course" will not be impaired. The lender must further agree to indemnify us from any loss or damage we may incur as a result of the use of an allonge for the note endorsement(s).

The endorsement should be signed only by those persons specifically authorized to execute documents in the lender's behalf. We will accept a lender's facsimile endorsement of notes for those jurisdictions in which the lender has determined that such endorsements are valid and enforceable. A lender that chooses to use facsimile signatures to endorse notes must warrant that the endorsement is valid and enforceable in the jurisdiction(s) in which the security properties are located and must retain in its corporate records the following specific documentation authorizing the use of facsimile signatures:

- legal opinions related to the legality and enforceability of facsimile signatures for each jurisdiction in which the lender uses them;

- a resolution from the lender's Board of Directors authorizing specific officers to use facsimile signatures; stating that facsimile signatures will be a valid and binding act on the lender's part; and authorizing the lender's corporate secretary to certify the validity of the resolution, the names of the officers authorized to execute documents by using facsimile signatures, and the authenticity of specimen forms of facsimile signatures;

- the corporate secretary's certification of the authenticity and validity of the Board of Directors' resolution; and

- a notarized "certification of facsimile signature," which includes both the facsimile and the original signatures of the signing officer(s) and each officer's certification that the facsimile is a true and correct copy of his or her original signature.

Fannie Mae Single Family/2007 Selling Guide/Part IV: Mortgage Documents/IV, Chapter 2: Mortgage or Deed of Trust Notes (06/30/02)/IV, Ch 2, Exhibit 1: Fixed-Rate First Mortgage or Deed of Trust Notes (01/30/07)

## IV, Ch 2, Exhibit 1: Fixed-Rate First Mortgage or Deed of Trust Notes (01/30/07)

Generally, a lender may use the *Multistate Fixed-Rate Note* (Form 3200). However, there are also ten state-specific versions of this note, as well as a Texas state-specific note that should be used only in connection with Texas Section 50(a)(6) mortgages. Our standard *Multistate Fixed-Rate Note* should be used for all other regularly amortizing first mortgage transactions in Texas. In addition, we publish a state-specific fixed-rate balloon note for New York, and both a multistate note and nine state-specific notes for fixed-rate mortgages with an interest-only feature. We also have developed the *Fannie Mae/Navajo Nation Fixed-Rate Note* for use in connection with negotiated conventional mortgages originated under our Native American Housing Pilot with the Navajo Nation. All of the fixed-rate notes that are currently available are listed below.

The various mortgage and deed of trust notes that are used for fixed-rate mortgages may be found on our Web site (www.efanniemae.com). Authorized changes that must or may be made to these documents are set out in the Summary Page that accompanies each document.

A lender that uses a state-specific version of the *Balloon Loan Refinancing Instrument* (see *Chapter 2, Exhibit 2*) to document the refinancing of a balloon mortgage that has a conditional refinance option does not need to use our note forms (because that document incorporates the terms of the note).

| State | Form No. | Date |
|---|---|---|
| • Multistate Fixed-Rate Note | 3200 | 1/01 |
| — Alaska Fixed-Rate Note | 3202 | 1/01 |
| — Florida Fixed-Rate Note | 3210 | 1/01 |
| — Maine Fixed-Rate Note | 3220 | 1/01 |
| — New Hampshire Fixed-Rate Note | 3230 | 1/01 |